UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| RHONDA ROE (a pseudonym), individually and on behalf of all others similar situated, | ) ) | |
| | ) | No: 1:21-cv-00305 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SURGICAL CARE AFFILIATES, LLC, SCAI HOLDINGS, LLC, UNITED HEALTHGROUP, INC., and JOHN DOES 1-10, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## UNITED STATES' MOTION TO INTERVENE AND STAY CIVIL PROCEEDINGS

The United States, by and through undersigned counsel, hereby respectfully seeks to intervene in the above-captioned matter under Federal Rule of Civil Procedure 24, for the limited purpose of moving for a stay.   The United States further moves for an initial nine-month stay of this case, and any cases consolidated with this case, to allow the indicted criminal case *United States v. Surgical Care Affiliates, LLC, et al.*, 3:21-cr-11-L, ECF No. 1 (N.D. Tex. Jan. 5, 2021), to proceed through trial, and to protect the United States' ongoing criminal investigation.   The United States further requests an immediate stay of proceedings while this motion is pending.

Prior to filing this motion, undersigned counsel conferred with counsel for the Plaintiffs and counsel for the named defendants, Surgical Care Affiliates, LLC, SCAI Holdings, LLC, and United HealthGroup, Inc. ("Defendants").   None of the parties object to the United States' motion to intervene.   The Defendants do not object to the stay sought in this motion; the Plaintiffs oppose.

1

As set forth below, a stay would promote judicial efficiency, protect the integrity of the criminal prosecution and investigation, and ensure that no party may use civil discovery to seek information regarding the pending prosecution and investigation.   An initial nine-month stay would allow the criminal case against defendants Surgical Care Affiliates, LLC and SCAI Holdings, LLC (collectively "SCA") to progress through its currently scheduled trial date of November 2, 2021.

## **BACKGROUND**

On January 5, 2021, a federal grand jury in the Northern District of Texas returned an indictment charging SCA with two counts of conspiring to restrain trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.   *See* Indictment, *United States v. Surgical Care Affiliates, LLC, et al.*, 3:21-cr-11-L, ECF No. 1 (N.D. Tex. Jan. 5, 2021).   The court in that matter has entered a scheduling order that requires motions to dismiss to be filed by March 26, 2021, with responses due by April 30, 2021.   *See id.* ECF No. 24 (Order Resetting Trial).   Trial is scheduled for November 2, 2021.   *Id.*   The grand jury is investigating unindicted conduct and subjects.[1]

Between January 19, 2021 and February 10, 2021, the Plaintiffs filed three civil actions before the Court: *Roe v. Surgical Care Affiliates, LLC, et al.*, 1:21-cv-305 (N.D. Ill. Jan. 19, 2021); *Smith v. Surgical Care Affiliates, LLC, et al.*, 1:21-cv-620 (N.D. Ill. Feb. 3, 2021); and *Keech v. Surgical Care Affiliates, LLC, et al.*, 1:21-cv-741 (N.D. Ill. Feb. 10, 2021) (collectively,

---

[1] The United States is unable to provide additional detail regarding the subject and scope of the grand jury investigation because of the grand jury secrecy requirements imposed by Federal Rule of Criminal Procedure 6(e)(2)(B)(vi) (matters "occurring before the grand jury" may not be disclosed by attorneys for the United States).   If the Court requires additional information, the United States can provide additional information to the Court *ex parte* for *in camera* review.

the "Civil Actions").[2]   Each of the Civil Actions relies heavily on the allegations made in the indictment returned against SCA.   *See Roe* Dkt. 1 ¶¶ 6, 18–28; *Smith* Dkt. 1 ¶¶ 6, 18–28; *Keech* Dkt. 1 ¶¶ 2, 15–31; *see also Roe* Dkt. 23, at 9 ("All three [cases] rely on the same factual allegations from the DOJ indictment to allege a conspiracy between SCA, Company A, and Company B to restrain competition over the recruitment and hiring of senior-level employees."). On March 4, 2021, the Plaintiffs filed an unopposed joint motion to consolidate related cases and appoint interim co-lead counsel and liaison counsel.   *Roe* Dkt. 23.   An initial status hearing is scheduled in *Roe* for March 25, 2021.   *Roe* Dkt. 20.   The United States understands that on March 11, 2021, the Plaintiffs served initial discovery requests on the Defendants.

## ARGUMENT

The Court should grant the United States' motion to intervene and motion to stay civil proceedings for an initial nine-month period.   The United States has a significant interest in protecting the integrity of its investigations and prosecutions, and a stay is critical to its ability to conduct the pending investigation without civil discovery that would reveal the scope or direction of the grand jury.   A stay for the discrete amount of time until the criminal trial date will enable the United States to prosecute its case without the complications presented by subjecting potential witnesses to civil discovery, and will promote judicial efficiency by reducing the potential for inconsistent legal rulings, as well as potentially narrowing the scope of the Civil Actions.

---

[2] On March 9, 2021, a fourth civil case that raised the same factual and legal issues was filed. *See Spradling v. Surgical Care Affiliates, LLC, et al.*, 1:21-cv-1324 (N.D. Ill. Mar. 9, 2021). This case was not part of the March 4, 2021 consolidation motion; however, the United States understands that there is a motion pending to transfer the case to this Court.

3

I.      **The United States Should Be Permitted to Intervene Under Fed. R. Civ. P. 24.**

Federal Rule of Civil Procedure 24(a)(2) provides for "intervention of right," under

which, "[o]n a timely motion, the court must permit anyone to intervene who . . . claims an

interest relating to the property or transaction that is the subject of the action, and is so situated

that disposing of the action may as a practical matter impair or impede the movant's ability to

protect its interest, unless existing parties adequately represent that interest."   Fed. R. Civ. P.

24(a)(2).   Rule 24(b)(1)(B) also allows for "permissive intervention," where, "[o]n a timely

motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with

the main action a common question of law or fact."   Fed. R. Civ. P. 24(b)(1)(B).   Under either

standard, the Court should permit the United States to intervene.

<u>Intervention of Right</u>:   The United States meets all of the requirements set forth under

Rule 24(a)(2) for intervention of right.   These requirements are construed "liberally" and doubts

are resolved "in favor of allowing intervention."   *Michigan v. U.S. Army Corps of Eng'rs*, No.

10-cv-4457, 2010 WL 3324698, at *2 (N.D. Ill. Aug. 20, 2010).

First, the motion to intervene is timely.   A timeliness determination should account for

the totality of the circumstances and consider such factors as "(1) the length of time the

intervenor knew or should have known of his interest in this case, (2) the prejudice to the original

parties caused by the delay, (3) the resulting prejudice to the intervenor if the motion is denied,

and (4) any unusual circumstances."   *South v. Rowe*, 759 F.2d 610, 612 (7th Cir. 1985); *see also*

*People Who Care v. Rockford Bd. of Educ.*, 68 F.3d 172, 175 (7th Cir. 1995) ("The timeliness

factor is essentially a reasonableness inquiry . . . .").   The United States' motion to intervene

here is timely.   The Civil Actions were filed in this court between January 19, 2021 and

February 10, 2021, with the motion to consolidate filed on March 4, 2021.   The United States is

filing this motion to intervene within weeks of the Civil Actions being filed, before any initial status hearing, and within eight days of the motion to consolidate the cases. The prompt filing of this motion supports a determination that the motion to intervene is timely. *See, e.g.*, *Jeffries v. Swank*, 317 F.R.D. 543, 552 (N.D. Ill. 2016) (one- to two-month delay "negligible"); *In re Flash Memory Antitrust Litig.*, No. C 07-0086 SBA, 2007 WL 3119612, at *1 (N.D. Cal. Oct. 23, 2007) (finding the Antitrust Division's motion to intervene timely where "[d]iscovery has not yet commenced, nor has there been an initial case management conference").

Likewise, the second and third timeliness considerations—prejudice to existing parties and prejudice to the intervenor—both favor permitting the United States to intervene. None of the parties have advanced an argument that they would be prejudiced by the timing of this motion to intervene, and they do not oppose intervention. By contrast, the trial and the grand jury investigation would be significantly prejudiced were this motion to intervene denied. Indeed, Plaintiffs have already served discovery requests that would reveal information about the scope and direction of the grand jury investigation. The discovery of this information risks undermining the integrity of both the investigation and trial by revealing the United States' current evidence, and the identities of subjects, witnesses, and unindicted persons or entities.

The United States has an interest in the subject matter of the Civil Actions, and disposition of the Civil Actions may impede the government's ability to protect that interest. *See In re Flash Memory Antitrust Litig.*, 2007 WL 3119612, at *1 ("[I]t appears well established that the government may intervene in a civil action for the purpose of limiting discovery when there is a parallel criminal proceeding involving a common question of law or fact."). The Antitrust Division often seeks to intervene in such situations where a criminal investigation is proceeding in parallel with a civil class action, and does so successfully. *See, e.g*, *In re Broiler*

*Chicken Antitrust Litig.*, 1:16-cv-8637, ECF No. 2302 (N.D. Ill. June 27, 2019); *In re Generic Digoxin & Doxycycline Antitrust Litig.*, No. 2:16-md-02724-CMR, ECF No. 108 (E.D. Pa. Jan. 6, 2017); *In re Flash Memory Antitrust Litig.*, 2007 WL 3119612, at *1; *In re TFT (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827-SI, ECF No. 217 (N.D. Cal. Jul. 10, 2007). Other Department of Justice components have done so when confronted with similar situations. *See, e.g.*, *SEC v. Fleming*, No. 1:17-cv-7049, ECF No. 32 (N.D. Ill. Nov. 20, 2017); *CFTC v. Zhao*, No. 1:18-cv-620, ECF No. 26 (N.D. Ill. Oct. 16, 2018); *Eastwood Enters., LLC v. Farha*, No. 8:07-cv-1940-T-33EAJ, ECF No. 220 (M.D. Fla. May 13, 2010).

Last, none of the parties to this litigation adequately represent the United States' interests. The Defendants clearly do not because their interest in defending the alleged conduct at issue is diametrically opposed to the United States' interest in investigating and prosecuting the same or similar conduct. Nor do the Plaintiffs; while their interests in monetary recovery for victims are laudable, they do not, and cannot, protect the United States' interest in criminal investigations and prosecutions. *See SEC v. Salis*, 2:16-cv-231, 2016 WL 7239916, at *1 (N.D. Ind. Dec. 14, 2016) (holding that even the SEC, another government agency, "can't be expected to protect the interest of the DOJ").

Permissive Intervention: In the alternative, the Court should permit the United States to intervene under Rule 24(b)(1)(B). Rule 24 allows for "permissive intervention" where an intervenor "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). As discussed above, the motion is timely. Moreover, the fact that the complaints in the Civil Actions refer to and quote extensively from the January 5, 2021 indictment of SCA, demonstrates that the Civil Actions share "common question[s] of law or fact," with the United States' prosecution.

II.     **A Temporary Stay of the Civil Actions Is Necessary to Promote Efficiency and Protect the Integrity of the United States' Investigation and Prosecution.**

The United States has a strong interest in protecting the pending investigation and "ensuring that the criminal process can proceed untainted by civil litigation." *Chagolla v. City of Chicago*, 529 F. Supp. 2d 941, 947 (N.D. Ill. 2008). This Court has the inherent power to stay civil proceedings pending the completion of a criminal proceeding "if the interests of justice require it." *Id.* at 945 (citing *United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970)); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort"). Particularly here, where the Civil Actions were filed after the criminal case, and where there is a timely and defined schedule for the criminal trial, it will promote efficiency and clarity for all parties to temporarily stay the Civil Actions.

The United States readily meets the factors that courts in the Seventh Circuit and elsewhere examine to determine whether a stay of civil proceedings is warranted. Though the factors vary in numbers and formulations from case to case, and are not exhaustive, they generally include the following:

> (1) the effect on the public interest of granting or denying a stay;
> (2) the effect on the trial court and the efficient use of judicial resources;
> (3) whether the civil and criminal matters overlap;
> (4) whether the governmental entity that has initiated the criminal case or investigation is also a party in the civil case;
> (5) the posture of the criminal proceeding;
> (6) the interest of the civil plaintiff in proceeding expeditiously, and the potential prejudice the plaintiff may suffer from a delay; and
> (7) the burden that any particular aspect of the civil case may impose on defendants if a stay is denied.

*See, e.g.*, *Cruz v. City of Chicago*, No. 08-cv-2087, 2011 WL 613561, at *2 (N.D. Ill. Feb. 15, 2011); *Glover v. Upmann*, No. 19 CV 03738, 2020 WL 1433801, at *1 (N.D. Ill. Mar. 24, 2020).

7

Public Interest:   The public's interest in effective criminal law enforcement—and hence the United States' interest in protecting the integrity of the grand jury investigation and subsequent charges—should be given "substantial weight."   *See Benevolence Int'l Found., Inc. v. Ashcroft*, 200 F. Supp. 2d 935, 941 (N.D. Ill. 2002) (quoting *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1062)).   Although the public also has an interest in the "prompt disposition of civil litigation," the public also has an interest in allowing the criminal proceeding to proceed unimpaired.   *Chagolla*, 529 F. Supp. 2d at 946–47; *see also Glover*, 2020 WL 1433801, at *4 (noting that allowing criminal proceedings to continue without civil interference is the "greatest interest"); *United States v. Borden Co.*, 347 U.S. 514, 518 (1954) (noting that civil enforcement actions "supplement[] Government enforcement of the antitrust laws; but it is the Attorney General and the United States district attorneys who are primarily charged by Congress with the duty of protecting the public interest under these laws").   In this case, the overlap of the allegations in the Civil Actions with the criminal case, as well as the risks to the grand jury investigation posed by simultaneous civil discovery is more than sufficient for the public-interest factor to favor a stay.   In particular, the United States anticipates that discovery requests would seek information that would reveal the scope and direction of the pending grand jury investigation, as well as the investigation that led to the charged case.   Moreover, civil discovery requests would likely identify potential witnesses who are anticipated to testify during the criminal trial.

Indeed, the initial discovery requests served on the Defendants highlight the risk inherent in proceeding without a temporary stay.   The very first document request served by the Plaintiffs seeks "[i]rrespective of time period, all documents and ESI (including all statements, affidavits, declarations or other factual material) submitted to, or seized by, the United States

8

Department of Justice . . . concerning any alleged agreements with competing employers relating to the recruiting, hiring or compensation of employees, including . . . any such documents and ESI which you submitted pursuant to a grand jury subpoena . . . ."  This request demonstrates that discovery will expose details of the criminal investigation related to the charged case, the pending grand jury investigation, and the identities of subjects, witnesses, and unindicted persons or entities.  *See SEC v. Mersky*, No. CIV. A. 93-5200, 1994 WL 22305, at *5 (E.D. Pa. Jan. 25, 1994) ("[T]he proper focus is not upon the discovering party's intent in seeking discovery, but rather, upon the effect of his obtaining such discovery.").  To the extent the Plaintiffs argue for a narrower stay—for example, of individual discovery requests—such an approach would not alleviate these concerns.  Not only would this approach increase the logistical burden on the parties, and potentially on the Court if disputes arise, a piecemeal negotiation of discovery requests would require the United States routinely to tip its hand in advance of its criminal trial against SCA, disclosing through its advocacy which pieces of evidence and which witnesses were the most important to its case.

Similarly, discovery by the Defendants would threaten the integrity of the United States' prosecution by "permit[ting] [defendants] in a criminal case to use liberal civil discovery procedures to gather evidence to which [they] might not be entitled under the more restrictive criminal rules."  *Benevolence Int'l Found.*, 200 F. Supp. 2d at 939; *see Campbell*, 307 F.2d at 487 ("In handling motions for a stay of a civil suit until the disposition of a criminal prosecution on related matters . . . a judge should be sensitive to the difference in the rules of discovery in civil and criminal cases.").  *Compare* Fed. R. Civ. P. 26(b) *with* Fed. R. Crim. P. 16. Expansive civil discovery by criminal defendants raises the specter that they will be able to use

this additional information to tailor their testimony and defenses to conform to the United States' evidence, including its anticipated witness testimony.

      <u>Judicial Resources and Overlap</u>: A stay will promote the Court's efficient use of time and judicial resources. Where, as here, there is substantial overlap between the civil and criminal matters, staying the civil matter promotes efficient use of judicial resources, because "resolution of the related criminal matter may eliminate much of the Court's work in the civil action by simplifying the issues" and prevents discovery from becoming "bogged down" with "a long series of Fifth Amendment assertions." *United States v. All Meat & Poultry Prods.*, No. 02-cv-5145, 2003 WL 22284318, at *5 (N.D. Ill. Oct. 2, 2003). Although in some circumstances the United States has sought stays of discovery, as opposed to a stay of all proceedings, where, as here, the defendant has already been indicted and a criminal trial date has been scheduled, a stay of all civil proceedings is appropriate. Such stays have been granted in similar circumstances. *See id.* at *6; *Benevolence Int'l Found.*, 200 F. Supp. 2d at 941; *United States v. Michelle's Lounge*, No. 91 C 5783, 1992 WL 194652, at *5 (N.D. Ill. Aug. 6, 1992); *Maloney v. Gordon*, 328 F. Supp. 2d 508, 514 (D. Del. 2004); *United States v. Hugo Key & Son, Inc.*, 672 F. Supp. 656, 659 (D.R.I. 1987); *Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1141 (S.D.N.Y. 1995).

      Although the requested stay may cause some short-term delay, granting the stay and allowing the criminal trial to proceed will streamline the Court's workload and significantly enhance judicial economy. *See Glover*, 2020 WL 1433801, at *4 (noting that "[p]arallel proceedings can cause a duplication of effort" and "staying the case until the completion of the criminal case may reduce the need for some discovery in the civil case"). That is especially true in the context of criminal antitrust enforcement, where a judgment against a defendant is

"prima facie evidence against such defendant in any action or proceeding brought by any other party." 15 U.S.C. § 16(a).

In particular, the United States anticipates that SCA will file motions to dismiss in both the criminal case and the Civil Actions on the same or substantially overlapping legal issues. Motions to dismiss will be fully briefed in the criminal case by April 30, 2021, *see* Order Resetting Trial, *United States v. Surgical Care Affiliates, LLC, et al.*, 3:21-cr-11-L, ECF No. 24 (N.D. Tex. Feb. 8, 2021); by contrast, the proposed consolidation order calls for a consolidated amended complaint to be filed within 30 days of entry of the proposed order, and any answer or motion to dismiss to be filed 45 days thereafter, *see Roe* Dkt. 23-5, at 5–6. A stay of the Civil Actions will allow the full litigation of these issues in such a manner that may narrow the issues presented to this Court. *See In re Grand Jury Proceedings*, 995 F.2d 1013, 1018 n.11 (11th Cir. 1993) ("Although stays delay civil proceedings, they may prove useful as the criminal process may determine and narrow the remaining civil issues."); *SEC v. Offill*, No. CIV.A.3:07-CV-1643-D, 2008 WL 958072, at *3 (N.D. Tex. Apr. 9, 2008) ("Resolution of the criminal case may increase prospects for settlement of the civil case. Due to differences in the standards of proof between civil and criminal prosecutions, the possibility always exists for a collateral estoppel or res judicata effect on some or all of the overlapping issues.").

Whether the Government Is a Party: Courts have considered whether the United States is a party to the civil action and, as a result, might "use the civil discovery process to circumvent limitations on discovery in criminal proceedings." *Hare v. Custable*, No. 07-cv-3742, 2008 WL 1995062, at *2 (N.D. Ill. May 6, 2008). In several cases, as here, where the United States is not a party to the civil action and therefore cannot use civil process to circumvent criminal discovery, courts have found that factor weighs against granting a stay. *See, e.g.*, *id.*

11

However, given the strong interest in protecting the criminal matter from discovery abuses by any party in the Civil Actions, the balance of factors nonetheless weighs in favor of a stay.

Posture of the Criminal Proceeding:   The pending indictment against SCA is one of the strongest factors that supports a stay of the Civil Actions.   *See Hollinger Int'l, Inc. v. Hollinger Inc.*, No. 04 C 698, 2008 WL 161683, at *2 (N.D. Ill. Jan. 16, 2008) ("The strongest case for granting a stay is where a party under criminal indictment is required to defend a civil proceeding involving the same matter."); *Salcedo v. City of Chicago*, No. 09-CV-05354, 2010 WL 2721864, at *3 (N.D. Ill. July 8, 2010) ("[O]nce an indictment is handed down, as is the case here, a stay is appropriate.").   Where, as here, an indictment has already issued "uncertainty is not the factor it might be under other circumstances."   *All Meat & Poultry Prods.*, 2003 WL 22284318, at *5.   In numerous cases, courts have granted discovery stays based on government investigations at much earlier stages—even before the grand jury has indicted anyone.   *See, e.g.*, *SEC v. Offill*, 2008 WL 958072, at *3; *Chao v. Fleming*, 498 F. Supp. 2d 1034, 1038–39 (W.D. Mich. 2007); *Jones v. City of Indianapolis*, 216 F.R.D. 440, 451–52 (S.D. Ind. 2003). Here, the United States is seeking a temporary stay, for a discrete period of time, to allow the pending criminal case against SCA to proceed to trial in November 2021.   *See, e.g.*, *All Meat & Poultry Prods.*, 2003 WL 22284318, at *5; *Am. Express Bus. Fin. Corp. v. RW Prof'l Leasing Servs. Corp.*, 225 F. Supp. 2d 263, 265 (E.D.N.Y. 2002) ("Granting a stay of discovery may be especially appropriate where a party under criminal indictment is also required to defend a civil suit involving the same matter.").

Plaintiffs' Interest in Proceeding Expeditiously:   As set forth above, resolution of the criminal case could narrow the scope of this civil litigation, which would benefit all parties, including the Plaintiffs, and therefore weighs in favor of a stay.   *See, e.g.*, *Emich Motors Corp.*

*v. Gen. Motors Corp.*, 340 U.S. 558, 568 (1951) ("It is well established that a prior criminal conviction may work an estoppel in favor of the [plaintiff] in a subsequent civil proceeding."); *In re Worldcom, Inc. Sec. Litig.*, No. 02-cv-3288, 2002 WL 31729501, at *8 (S.D.N.Y. Dec. 5, 2002) ("The conviction of a civil defendant as a result of the entry of a plea or following a trial can contribute significantly to the narrowing of issues in dispute in the overlapping civil cases and promote settlement of civil litigation."); *see also* 15 U.S.C. § 16(a).

The United States is aware of no significant burden that would be imposed on the Plaintiffs associated with a stay. *See In re Adelphia Commc'ns Sec. Litig.*, No. 02-1781, 2003 WL 22358819, at *4 (E.D. Pa. May 13, 2003) ("In evaluating the plaintiff's burden resulting from the stay, courts may insist that the plaintiff establish more prejudice than simply a delay in his right to expeditiously pursue his claim."). In discussions with the undersigned, Plaintiffs' counsel raised two principal concerns. First, they argued that, without discovery, they cannot amend their complaint to name as defendants two companies, which the indictment alleged as co-conspirators and identified by the pseudonyms Company A and Company B, and thus risk an adverse statute of limitations ruling. But in *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010), the Supreme Court held "that relation back under [Federal Rule of Civil Procedure] 15(c)(1)(C) depends on what the party to be added knew or should have known, not on the amending party's knowledge or its timeliness in seeking to amend the pleading," and thus, here, an amendment to the complaint identifying previously unknown defendants should relate back to the filing of the original complaint, obviating the statute of limitations concern. *See Joseph v. Elan Motorsports Techs. Racing Corp.*, 638 F.3d 555, 559–60 (7th Cir. 2011); *Herrera v. Cleveland*, No. 18 C 6846, 2020 WL 1548954, at *2 (N.D. Ill. Apr. 1, 2020).

13

Second, Plaintiffs' counsel has also suggested that the temporary stay sought in this case may result in the spoliation of evidence if discovery is not served quickly. As an initial matter, given the substantive overlap between the Civil Actions and the criminal investigation, the documents the Plaintiffs would seek are likely already being preserved. In any event, the Defendants already have a duty to preserve relevant information, *see* Fed. R. Civ. P. 37(e), which was reaffirmed in the proposed order on the consolidation motion, *see* Roe Dkt. 23-5, at 5 ("[E]ach party shall take reasonable steps to preserve all documents, data, and tangible things containing information potentially relevant to the subject matter of this litigation, consistent with their obligations under the Federal Rules of Civil Procedure."). Likewise, third parties "on notice of imminent litigation" have a "duty to preserve all information pertinent to this case." *Ervine v. S.B.*, No. 11 C 1187, 2011 WL 867336, at *2 (N.D. Ill. Mar. 10, 2011) (noting the "common law duty to preserve evidence once 'the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation'" (quoting *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001))). A preservation later, or a request that this Court order specified third parties to preserve relevant evidence, should sufficiently address this concern without endangering the criminal proceedings and investigation.

Burden on the Defendants:  The Defendants do not object to the requested stay and have not identified any burden on them associated with a stay.  To the contrary, denying a stay would impose a burden on SCA in at least two significant respects.  First, it would force SCA to defend two cases simultaneously.  *See White v. Mapco Gas Prod., Inc.*, 116 F.R.D. 498, 502 (E.D. Ark. 1987).  Second, denying a stay of discovery in this action would force witnesses to choose between invoking their Fifth Amendment right against self-incrimination and risking that

14

any such invocation would be used as a basis for an adverse inference in this civil case, or testifying or otherwise responding to civil discovery and having their responses used against them in the criminal case. *See Chagolla*, 529 F. Supp. 2d at 947 ("A civil defendant in this situation who is effectively backed into a corner in which he has no viable choice but to claim the privilege is forced to face a significant risk of unfair prejudice that may be virtually impossible to remedy."); *Hollinger*, 2008 WL 161683, at *3 ("Proceeding with discovery would force the Defendants into the uncomfortable position of having to choose between waiving their Fifth Amendment privilege or effectively forfeiting the civil suit."); *cf. Harris v. City of Chicago*, 266 F.3d 750, 753 (7th Cir. 2001) ("[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." (quoting *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976))). Granting the stay would mitigate that dilemma.

## CONCLUSION

For the foregoing reasons, the United States' motions should be granted.

Dated: March 12, 2021                          Respectfully submitted,

                                               /s/ *Anthony W. Mariano*
                                               ANTHONY W. MARIANO
                                               Trial Attorney
                                               United States Department of Justice
                                               Antitrust Division, Washington Criminal II Section
                                               450 5th Street NW
                                               Washington, DC 20530
                                               202-598-2737
                                               Anthony.Mariano@usdoj.gov

                                               COUNSEL FOR MOVANT-UNITED STATES

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on March 12, 2021, I electronically filed the foregoing with the

Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to

all counsel of record who have entered notices of appearance in this matter.


/s/ *Anthony W. Mariano*
ANTHONY W. MARIANO