## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| RHONDA ROE (a pseudonym), individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>SURGICAL CARE AFFILIATES, LLC, SCAI HOLDINGS, LLC, UNITEDHEALTH GROUP, INC., and JOHN DOES 1-10,<br><br>      Defendants. | Case No.: 1:21-cv-00305-ARW-SRH |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO UNITED STATES' MOTION TO INTERVENE AND STAY CIVIL PROCEEDINGS

## TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ................................................................................................ 1

II. ARGUMENT ................................................................................................... 2

    A.    DOJ's Sweeping Request For A Blanket Stay Is Unprecedented and Unnecessary
................................................................................................................... 2

    B.    The Individual Factors Support Plaintiffs' Contentions Against a Broad Stay ...... 8

        1.    Staying All Discovery Is Contrary to the Public Interest and Congressional Intent to Foster Private Enforcement of the Antitrust Laws. ............................................................................................ 8

        2.    Plaintiffs' Interest in Proceeding Expeditiously is Substantial. ................ 11

        3.    The Overlap Between the Two Cases Does Not Threaten Judicial Resources. ............................................................................ 12

        4.    DOJ is Not a Party to the Civil Proceedings. ............................................. 14

        5.    The Additional Burden on Defendants in Proceeding Promptly is Minimal. ............................................................................... 14

        6.    The Posture of the Criminal Proceeding is not Determinative. ................ 15

III. CONCLUSION .................................................................................................... 15

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Albee v. Korean Air Lines*, No. 07-CV-5107 (C.D. Cal. Oct. 24, 2008) ..........................6

*Alvin Independent School v. Sysco Food Services*, No. 90-3774 (S.D. Tex. Aug. 28, 1991) ........................................................................................................6

*American Seafood v. Magnolia Processing*, No. 92-1030 (E.D. Pa. May 7, 1992) ......................6

*In re Auction Houses Antitrust Litig.*, No. 00-648 (S.D.N.Y. July 31, 2000)................................6

*In re Automotive Parts Antitrust Litig.*, 12-MD-2311 (E.D. MI. 2012) ........................................5

*Bank of Am. v. Veluchamy*, No. 09 C 5109, 2010 WL 1693108 (N.D. Ill. Apr. 26, 2010) ........................................................................................................14

*Baxter v. Palmigiano*, 425 U.S. 308 (1976)................................................................................15

*Benevolence International Foundation, Inc. v. Ashcroft*, 200 F. Supp. 2d 935 (N.D. Ill. 2002)..........................................................................................10, 14

*In re Blood Reagents Antitrust Litig.*, 756 F. Supp. 2d 623 (E.D. Pa. 2010)..............................8, 9

*In re Broiler Chicken Antitrust Litig.*, No. 16-CV-8637 (N.D. Ill. 2016)..................................4, 6

*Campbell v. Eastland*, 307 F.2d 478 (5th Cir. 1962)....................................................................10

*Chicago Title Ins. Co. v. Sinikovic*, 125 F. Supp. 3d 769 (N.D. Ill. 2015) ...................................14

*Clinton v. Jones*, 520 U.S. 681 (1997)...........................................................................................2

*In re Credit Default Swaps Antitrust Litig.*, No. 13-md-2476 (S.D.N.Y. 2013).............................9

*Dean v. Douglas*, No. 5:12–CV–120, 2012 WL 6151137 (M.D. Ga. Dec. 11, 2012) ........................................................................................................14

*Emich Motors Corp. v. Gen. Motors Corp.*, 340 U.S. 558 (1951)................................................10

*In re Flat Glass Antitrust Litig.*, No. 97-mc-550 (W.D. Pa. 1997)................................................9

*FWK Holdings, LLC, et al. v. Actavis Elizabeth, LLC, et al.*, 16-cv-9901-JSR (S.D.N.Y. Feb. 28, 2017) ..................................................................................6

*In re Generic Digoxin & Doxycycline Antitrust Litig.*, No. 2:16-MD-2724 (E.D. Pa. 2016) ........................................................................................................4

ii

*Glover v. Upmann*, No. 19 CV 03738, 2020 WL 1433801 (N.D. Ill. March 24, 2020) ..................................................................................................10, 11, 12, 14

*In re Grand Jury Matter (Garden Court)*, 697 F.2d 511 (3d Cir. 1982) ....................................8, 9

*Grand Jury Proc. (Williams) v. United States*, 995 F.2d 1013 (11th Cir. 1993) ..........................14

*In re High Fructose Corn Syrup Antitrust Litig.*, Master Case No. 95-cv-1477 (C.D. Ill. 1995) ...................................................................................................................9

*Hinds Cty., Mississippi v. Wachovia Bank N.A. et al*, No. 08-CV-2516 (S.D.N.Y. May 27, 2010) ..................................................................................................................6

*Hollinger Int'l, Inc. v. Hollinger Inc.*, No. 04 C 698, 2008 WL 161683 (N.D. Ill. Jan 16, 2008) ................................................................................................................15

*Jacksonville Savings Bank v. Kovack*, 326 Ill.App.3d 1131 (2002) ...............................................12

*Keating v. Office of Thrift Supervision*, 45 F.3d 322 (9th Cir. 1995) ...........................................14

*In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 623-24 (E.D. Pa. 2004) ..........................9

*Maloney v. Gordon*, 328 F. Supp. 2d 508 (D. Del. 2004)..............................................................14

*In re Mid-Atl. Toyota Antitrust Litig.*, 92 F.R.D. 358 (D. Md. 1981)...........................................14

*Oberweis Dairy, Inc. v. Associated Milk Producers, Inc.*, 553 F. Supp. 962 (N.D. Ill. 1982)...................................................................................................................10

*In re Optical Disk Drive Products Antitrust Litig.*, No. 3:10-MD-02143-RS (N.D. Cal. 2011)...................................................................................................................5

*In re Plastics Additives Antitrust Litig.*, No. Civ.A. 03–2038, 2004 WL 2743591, at *8 (E.D. Pa. Nov. 29, 2004)...............................................................................8

*In re Residential Doors Antitrust Litig.*, 900 F. Supp. 749 (E.D. Pa. 1995).....................................8

*In re Resistors Antitrust Litig.,* No. 15-cv-03820-RMW (N.D. Cal. 2015) .....................................6

*S.E.C. v. Offill*, 3:07–CV–1643–D, 2008 WL 958072 (N.D. Tex. Apr. 9, 2008)...................13, 14

*In re Scrap Metal Antitrust Litig.*, No. 1:02–CV–0844, 2002 WL 31988168 (N.D. Ohio Nov. 7, 2002) ...............................................................................................6, 14

*SEC v. LeCroy*, No. 09-cv-02238 (N.D. Ala. Mar. 23, 2011) .........................................................6

*Sterling Nat. Bank v. A-1 Hotels Int'l, Inc.*, 175 F. Supp. 2d 573 (S.D.N.Y. 2001) .....................15

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 07-MD-01827 (N.D. Cal. 2007)..........................5, 7

*United States v. All Meat & Poultry Prod.*, No. 02 C 5145, 2003 WL 22284318 (N.D. Ill. Oct. 3, 2003) ........................................................................................13

*United States v. Certain Real Property, Commonly Known as 6250 Ledge Road*, 943 F.2d 721 (7th Cir. 1991) ........................................................................................2

*United States v. Hugo Key & Son, Inc*., 672 F. Supp. 656 (D.R.I. 1987) .....................13

*United States v. Michelle's Lounge*, No. 91 C 5783, 1992 WL 194652 (N.D. Ill. Aug. 6, 1992) ........................................................................................13

*United States v. Priv. Sanitation Indus. Ass'n of Nassau/Suffolk, Inc*., 811 F. Supp. 802 (E.D.N.Y. 1992) ........................................................................................12

*United States v. Smile Ctr. of Fam. Dentistry, P.C*., 02-CV-439-JM, 2005 WL 8170010 (N.D. Ind. Mar. 17, 2005) ........................................................................................12

*In re Urethane Antitrust Litig.*, No. 04-1616-JWL, 2016 WL 4060156 (D. Kan. July 29, 2016) ........................................................................................9

*In re Vitamins Antitrust Litig.*, No. 99-197, 2000 WL 1475705 (D.D.C. May 9, 2000) ........................................................................................10

*Wittgen v. Webb*, No. 1:09-cv-5352 (N.D. Ill. Sept. 13, 2011) ..................................12

**Federal Statutes**

Antitrust Criminal Penalty Enhancement Reform Act ....................................................7

**Rules**

Federal Rule of Civil Procedure § 1 ........................................................................................1

Federal Rule of Criminal Procedure § 6(e) ........................................................................8, 9

## I.   INTRODUCTION

The United States Department of Justice ("DOJ") seeks to intervene for the purpose of requesting a blanket stay of this action, and any cases consolidated with it, for "[a]n initial nine-month" period. ECF Nos. 30, at 2-3 ("DOJ Br."). While Plaintiffs do not oppose the request to intervene, they do oppose the requested stay.

The stay sought by DOJ would needlessly delay progress that can be made in this civil case without interfering in any way with DOJ's investigation. This would violate Rule 1 of the Federal Rules of Civil Procedure, is not supported by DOJ's motion, and is not consistent with the majority of decisions resolving requests for stays of civil litigation by DOJ. Plaintiffs met and conferred with DOJ and proposed several alternatives to a blanket stay, such as those that many other courts have entered in similar circumstances. Plaintiffs also explained to DOJ that discovery should be allowed to proceed with respect to documents and data that are irrelevant to the criminal proceedings but critical to Plaintiffs' claims, such as class member compensation data. Plaintiffs even provided DOJ with draft requests for production, so that it could identify any topics that would interfere with its criminal proceedings. DOJ simply maintained that all civil proceedings should be stayed. DOJ has refused to compromise and has failed to justify the overbroad relief it seeks. Plaintiffs propose that DOJ be granted a three-month stay, subject to renewal for good cause shown, with the following exceptions:

1.      Motion practice, such as the pending motion for consolidation;

2.      Initial disclosures and discovery planning, such as discussions regarding preservation and a protective order;

3.      Cooperation from any amnesty applicant required to be provided to civil plaintiffs under the Antitrust Criminal Penalty Enhancement Reform Act; and

4.     Limited discovery that would not prejudice the DOJ's criminal prosecution, such as class member wage and compensation data.

## II.    ARGUMENT

DOJ bears the burden of persuading the Court that a stay is necessary. *See Clinton v. Jones*, 520 U.S. 681, 708 (1997). *See also United States v. Certain Real Property, Commonly Known as 6250 Ledge Road*, 943 F.2d 721, 729 (7th Cir. 1991) (burden of demonstrating substantial prejudice rests squarely on the party seeking a stay). Furthermore, the moving party must demonstrate substantial prejudice with precision and the failure to do so is a factor that weighs in favor of denying that party's request to stay. *Id*. at 729-730.

"A stay contemplates 'special circumstances' and the need to avoid 'substantial and irreparable prejudice.' *Id*. The very fact of a parallel criminal proceeding, however, d[oes] not alone undercut [a defendant or claimant's] privilege against self-incrimination, even though the pendency of the criminal action 'force[s] him to choose between preserving his privilege against self-incrimination and losing the civil suit.'" *Id*. (citation omitted). *See also* Manual for Complex Litigation (Fourth) § 20.2 ("Suspending all pretrial activities in civil litigation until the end of the criminal proceeding … may be inadvisable, since it may be possible to conduct major portions of the civil case's discovery program without prejudice before completion of the criminal proceedings."); *id*. § 30.4 ("[A] general stay of all activities in the civil litigation pending completion of the criminal case will rarely be appropriate.").

DOJ's broad request is misplaced in the general sense. It is further misplaced as to the individual factors that courts generally consider in this context.

### A.  DOJ's Sweeping Request For A Blanket Stay Is Unprecedented and Unnecessary

The overbreadth of DOJ's motion is perhaps best exemplified by the unusual request for an immediate stay of proceedings while this motion is pending (DOJ Br., at 1)—a request that DOJ

does not even attempt to justify elsewhere in its submission. The progress that would be impeded if the Court were to grant that request, and the lack of justification for doing so, starkly illustrate the impact of what DOJ more broadly seeks. Two motions for reassignment and consolidation are currently pending before the Court. These motions seek to: establish a schedule for Plaintiffs' submission of a consolidated complaint, and Defendants' response thereto; establish a master docket; and make the proposed order applicable to any new cases filed by other plaintiffs. DOJ would not suffer any prejudice if the Court acts on those motions. DOJ's suggestion to the contrary, as embodied in its request for an immediate stay, does not pass the straight-face test.

Moreover, the parties and the Court can readily make progress far beyond what is contemplated in the pending motions without compromising DOJ's interests. By way of example, the parties could: meet and confer as to Plaintiffs' outstanding document requests that do not implicate DOJ interests, as well as document custodians and search terms; meet and confer as to Plaintiffs' proposed protective order and proposed protocol governing electronically stored information, again with proper deference to DOJ's interests; discuss the production of Defendants' structured data regarding their employees and their compensation, which has no bearing on DOJ's interests; and, perhaps most significantly, begin to identify non-parties with discoverable information, so that Plaintiffs might at a minimum promptly instruct them to preserve that information. Conversely, a blanket stay on all proceedings would confer a significant advantage on Defendants, who already have access to much of the relevant information, and can distill and master it, along with their case strategy, while Plaintiffs are precluded from doing anything remotely comparable. Further, third parties who have relevant information—such as payroll providers who may possess class member compensation data—may not initiate a suitable litigation hold, and possibly subject important evidence to ongoing document destruction practices. These

are the reasons that most courts have imposed limited, rather than blanket stays under circumstances similar to those now before this Court:

*In re Broiler Chicken Antitrust Litig.*, No. 16-CV-8637 (N.D. Ill. 2016) (cited in DOJ Br., at 5-6). DOJ sought what it termed as "an initial six-month, limited stay of discovery," including defendant "depositions and non-evidentiary written discovery." ECF No. 2268. The Court granted a three-month stay of defendant depositions and non-evidentiary written discovery. ECF No. 2302. DOJ then moved to extend the stay by six-months. ECF No. 3093. Noting "the Court's previously expressed reluctance to extend the stay," DOJ sought to stay only defendant depositions and production of documents responsive to two of plaintiffs' requests. *Id.* DOJ later requested an additional three month stay, for a total of nine months. ECF No. 3152. The Court granted the limited nine-month stay, allowing certain written discovery, depositions of plaintiffs, depositions of certain third parties, and 30(b)(6) depositions to proceed. *Id.* The Court noted that DOJ had filed ex parte declarations and met with the Court ex parte on several occasions and ordered DOJ to provide monthly ex parte written reports to the Court to allow it to monitor DOJ's investigation. *Id.* Ultimately, the Court lifted the limited stay after six months. ECF No. 3356.

*In re Generic Digoxin & Doxycycline Antitrust Litig.*, No. 2:16-MD-2724 (E.D. Pa. 2016) (cited in DOJ Br., at 6). This case is a study in the more tempered approach DOJ typically takes. DOJ only sought a brief stay of discovery until after the plaintiffs filed a consolidated amended complaint, at which point DOJ agreed to determine what measures, if any, were needed to protect the ongoing criminal investigation. ECF No. 279. Plaintiffs did not oppose DOJ's motion, and the Court granted it. ECF No. 347. Following the filing of the amended complaint, DOJ moved to stay all discovery for at least six months. ECF No. 516-1. The Court denied that motion, recognizing the important interests in allowing injured plaintiffs to promptly proceed with their claims. ECF No. 560. The Court instead allowed targeted discovery to proceed, including Rule 30(b)(6)

depositions, non-party subpoenas and depositions, and defendants' production of documents responsive to nearly 80 wide-ranging document requests. ECF No. 560.

*In re Automotive Parts Antitrust Litig.*, 12-MD-2311 (E.D. MI. 2012). DOJ requested a 12-month stay limited to certain specified document discovery and a subset of witness depositions. ECF No. 556. The Court shortened the proposed stay to six months and required DOJ to file a status update with the Court every six months thereafter. ECF No. 664. Plaintiffs were also provided with copies of any documents produced to DOJ by any defendant that pled guilty. ECF No. 201; *see also* ECF No. 664.

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 07-MD-01827 (N.D. Cal. 2007). The DOJ sought to stay discovery for 12 months and proposed staged discovery thereafter. ECF No. 232. The Court substantially denied DOJ's request, only staying discovery for an initial nine-month period. The Court ordered that the parties proceed with law and motion practice regarding the sufficiency of the pleadings and certain categories of document discovery, including the production of grand jury documents and transactional data. ECF No. 300.

*In re Optical Disk Drive Products Antitrust Litig.*, No. 3:10-MD-02143-RS (N.D. Cal. 2011). The Court ordered Defendants to produce their productions to DOJ before resolving their motions to dismiss (ECF Nos. 370, 379), and rejected DOJ's request for a blanket stay. *See, e.g.,* ECF No. 120 at 52:10-19 (". . . I think we should proceed with the civil litigation pretty much in the same manner and in the same order that we would proceed with the civil litigation in the absence of a pending grand jury proceeding . . . we have civil cases before us and its appropriate

5

to proceed with those as expeditiously and in as orderly a fashion as we can. So I am disinclined to grant the blanket kind of stay on discovery that the government seeks here.").[1]

If the Court is inclined to enter a stay, Plaintiffs respectfully request the stay to be limited in time and scope, consistent with a fair accommodation of the interests of DOJ and the parties to the litigation. In these circumstances, three months would be reasonable and at that time DOJ can come back and update the Court on the status of its investigation. DOJ should be required to make a particularized showing of need, based on the facts of the case. Where such a showing would require disclosure of confidential information regarding an ongoing criminal investigation, the showing may be made *in camera*.[2] *See In re Broiler Chicken Antitrust Litig.*, No. 16-CV-8637 (N.D. Ill.), ECF No. 3153 (conducting several ex parte meetings with DOJ regarding its investigation prior to granting a limited stay in the civil antitrust case); *In re Scrap Metal Antitrust Litig.*, No. 1:02–CV–0844, 2002 WL 31988168, at *1 (N.D. Ohio Nov. 7, 2002) (requiring *in camera* discussion with DOJ as to the nature and scope of its criminal investigation before denying

---

[1] *See also FWK Holdings, LLC, et al. v. Actavis Elizabeth, LLC, et al.*, 16-cv-9901-JSR, (S.D.N.Y. Feb. 28, 2017), ECF No. 107 (denying DOJ's third request for stay of civil proceedings after in camera review of ex parte submission, with the exception of depositions of two individuals who had pled guilty and entered into cooperation agreements with the Government); *In re Resistors Antitrust Litig.*, No. 15-cv-03820-RMW (N.D. Cal. 2015), ECF No. 96, 112, 120 (DOJ sought only stay of discovery, which court allowed for two-month period; parties thereafter stipulated to an extension that limited the scope of the stay); *SEC v. LeCroy*, No. 09-cv-02238 (N.D. Ala. Mar. 23, 2011), ECF No. 51 (DOJ sought and was granted six-month stay of only several depositions); *Hinds Cty., Mississippi v. Wachovia Bank N.A. et al,* No. 08-CV-2516 (S.D.N.Y. May 27, 2010), ECF No. 755 (court ordered stay of discovery only with respect to certain witnesses); *Albee v. Korean Air Lines*, No. 07-CV-5107 (C.D. Cal. Oct. 24, 2008) (DOJ sought and was granted six-month stay of discovery only); *In re Auction Houses Antitrust Litig.*, No. 00-648 (S.D.N.Y. July 31, 2000), ECF No. 103 (denying a request for a stay); *American Seafood v. Magnolia Processing*, No. 92-1030 (E.D. Pa. May 7, 1992), ECF No. 33 (denying the DOJ's motion for stay of discovery); *Alvin Independent School v. Sysco Food Services*, No. 90-3774 (S.D. Tex. Aug. 28, 1991) (rejecting the DOJ's motion to stay discovery).

[2] The DOJ recognizes this and has indicated that it is prepared to make such a showing. DOJ Br., at 2 n.1. Indeed, its failure to do so here appears to be inconsistent with DOJ's own internal practices and procedures. *See* Department of Justice, Justice Manual 9-5.100 (2020) ("Where it is unclear whether evidence or information should be disclosed, prosecutors are encouraged to reveal such information . . . to the court for inspection *in camera* and, where applicable, seek a protective order from the Court.").

DOJ's motion for a stay); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 07-md-01827 (N.D. Cal.), ECF No. 279 n.3 (noting that DOJ submitted certain materials *in camera* to which plaintiffs in the case were not privy).

With respect to substantive scope, the parties should be allowed to proceed with the following, which will not disclose confidential information or otherwise limit the ability of DOJ to prosecute the criminal case. In particular, Plaintiffs should be allowed:

1. <u>Motion practice</u>. Consolidation of related cases, reassigning related cases to this Court, appointment of interim lead class counsel, and Rule 12 motions.

2. <u>Rule 26.</u> Initial Disclosures and discovery planning, including discussion of preservation issues, confidential orders, and protocols governing electronically stored information.

3. <u>Antitrust Criminal Penalty Enhancement Reform Act ("ACPERA") Cooperation</u>. Pursuant to ACPERA, the "antitrust leniency applicant" may qualify for limited damages in a related civil lawsuit only if the applicant provides timely and satisfactory cooperation to the plaintiffs in such a suit. Pub. L. No. 108-237, § 213, 118 Stat. 665 (2004), amended by Pub. L. No. 111-190, § 3, 124 Stat. 1275 (2010), amended by Pub. L. No. 116-159, § 4303, 134 Stat. 709 (2020).

4. <u>Limited Discovery</u>. Including structured data concerning the defendants' identification of its employees, the compensation of such employees, and benefits provided to such employees, business records the defendants have produced to the grand jury (but not the grand jury subpoenas or related correspondence), and third-party discovery.

**B.  The Individual Factors Support Plaintiffs' Contentions Against a Broad Stay**

**1.  Staying All Discovery Is Contrary to the Public Interest and Congressional Intent to Foster Private Enforcement of the Antitrust Laws.**

DOJ acknowledges that the public has an interest in the "prompt disposition of civil litigation." DOJ Br., at 8. That interest is substantially multiplied in the case of a class action, including this one encompassing large numbers of class members who will be compensated for their long-standing losses resulting from Defendants' misconduct only upon the resolution of this case, and not the criminal case. As the court observed in *In re Plastics Additives Antitrust Litig.*, "[t]he public's interest in vigorously enforcing national antitrust laws through the expeditious resolution of a private antitrust litigation is particularly great. This interest is even greater when the nature of the litigation is a class action lawsuit, filed on behalf of [class members injured] over the course of more than a decade." No. Civ.A. 03–2038, 2004 WL 2743591, at *8 (E.D. Pa. Nov. 29, 2004).[3]

Despite that interest, DOJ cites just one of Plaintiffs' 57 outstanding document requests in support of its broad claim that "the United States anticipates that discovery requests would seek information that would reveal the scope and direction of the pending grand jury investigation, as well as the investigation that led to the charged case." DOJ Br., at 8. But Federal Rule of Criminal Procedure 6(e), which is the basis for the secrecy of grand jury proceedings generally, does not protect materials that are created independently of the grand jury process. *In re Grand Jury Matter (Garden Court)*, 697 F.2d 511, 513 (3d Cir. 1982). As the court explained in *Blood Reagents*, "to the extent that the documents in question were prepared antecedent to and independent of the grand

---

[3] *See also In re Blood Reagents Antitrust Litig.*, 756 F. Supp. 2d 623, 636 (E.D. Pa. 2010) ("[T]he public's interest in the enforcement of the antitrust laws is furthered by the expeditious resolution of this class-action lawsuit"); *In re Residential Doors Antitrust Litig.*, 900 F. Supp. 749, 756 (E.D. Pa. 1995) (refusing to stay discovery in part because public interest would be prejudiced by delay in discovery proceedings).

jury investigation, there is less likelihood that their production will reveal the essence of what is occurring in the grand jury room." *Id.*, 756 F. Supp. 2d at 635 (citing *In re Wirebound Boxes Antitrust Litig.,* 126 F.R.D. 554 (D. Minn. 1989)). Further, Plaintiffs provided the DOJ with its draft document requests before serving them, and asked the DOJ if it had any concerns or objections, so that these issues could be worked out prior to service of the discovery. The DOJ said it took no position on any particular request, and only wanted a total stay of the case by filing its instant motion.

DOJ's contentions as to how Defendants might use civil discovery to their advantage in the criminal case is devoid of detail. No discovery Defendants might direct at Plaintiffs could have any bearing on the criminal case. As to non-parties, both they and the parties might readily comply with Rule 6(e) by abiding by a protective order that precludes them from seeking or producing copies of DOJ subpoenas, grand jury transcripts, witness statements, or asking anything about the DOJ investigation in depositions.

DOJ otherwise relies on the broad premise that criminal antitrust investigations generally serve the public interest more than does civil antitrust litigation. In fact, civil actions often provide greater benefits and achieve more significant results than federal criminal prosecutions, which face higher burdens of proof.[4] Moreover, wide-ranging authority is contrary to DOJ's position. For

---

[4] *See, e.g., In re Urethane Antitrust Litig.*, No. 04-1616-JWL, 2016 WL 4060156 (D. Kan. July 29, 2016) (DOJ investigation led to no indictments; more than $970 million in total settlements were achieved in the private class action); *In re Credit Default Swaps Antitrust Litig.*, No. 13-md-2476 (S.D.N.Y. 2013) (DOJ investigation led to no indictments; nearly $2 billion in settlements were achieved in the private class action); *In re Flat Glass Antitrust Litig.*, No. 97-mc-550 (W.D. Pa. 1997) (DOJ investigation led to no indictments, but $120 million in total settlements were achieved); *In re High Fructose Corn Syrup Antitrust Litig.*, Master Case No. 95-cv-1477 (C.D. Ill. 1995) (DOJ investigation led to no indictments, but $530 million in total settlements were achieved); *In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568, 573-74 (E.D. Pa. 2003) and 321 F. Supp. 2d 619, 623-24 (E.D. Pa. 2004) (nearly $200 million in settlements achieved in a case where DOJ sued only one of the twelve defendants named in the class action). As these and many other cases demonstrate, criminal actions do not determine "the boundaries for civil litigation."

example, 15 U.S.C. § 16(a)—which DOJ cites in other contexts (*see* DOJ Br., at 11-1)—was intended to minimize the prosecutorial burdens on victims of antitrust violations and to encourage private enforcement. *Emich Motors Corp. v. Gen. Motors Corp.*, 340 U.S. 558, 568 (1951). It reflects a policy favoring civil antitrust actions, rather than a preference for criminal actions. *Oberweis Dairy, Inc. v. Associated Milk Producers, Inc.*, 553 F. Supp. 962, 969 (N.D. Ill. 1982). And civil litigants may take advantage of the benefits of the statute even as their claims proceed concurrent with related criminal proceedings.

None of the authority DOJ cites in this context dictates a different result. In *Borden*, the Supreme Court merely held that the government was not barred from seeking an injunction for conduct already enjoined by a decree in a private civil action. *Id*. at 518-519. Far from suggesting that private actions are subordinate, the Court noted in *Borden* that "[t]hese private and public actions were designed to be cumulative, not mutually exclusive … they may proceed simultaneously or in disregard of each other." *Id*. (cleaned up). *Benevolence International Foundation, Inc. v. Ashcroft*, is not comparable to this case, as the plaintiff in that case was itself the target of a criminal investigation for its support of international terrorism. 200 F. Supp. 2d 935 (N.D. Ill. 2002). The court held that "[e]specially in this case involving … international terrorism and matters of national security, the public interest in law enforcement outweighs BIF's right to a reasonably prompt determination of its civil claims." *Id*. at 941.[5] Finally, in *Glover v. Upmann*, DOJ requested (and was granted) a stay only related to deposition testimony. No. 19 CV 03738,

---

*In re Vitamins Antitrust Litig.*, No. 99-197, 2000 WL 1475705 at *18 (D.D.C. May 9, 2000) (noting plaintiffs may pursue a theory broader than the criminal matter).

[5] *See also Campbell v. Eastland*, 307 F.2d 478 (5th Cir. 1962), *cited in* DOJ Br., at 8 (civil plaintiff was criminal defendant).

2020 WL 1433801, at *4 (N.D. Ill. March 24, 2020). In short, there is no authority for DOJ's claim that the public interest in the criminal case supersedes its interest in this case.

Asking whether criminal enforcement is more important than civil enforcement is akin to asking whether a car's engine is more important than its wheels. The undersigned have many decades of collective experience working with the DOJ to enforce the antitrust laws efficiently for the benefit of consumers. As the most recent Assistant Attorney General for the DOJ's Antitrust Division put it, there are substantial benefits "that can be obtained efficiently for the American worker when public and private enforcement work in tandem."[6] Plaintiffs share this view.

### 2. Plaintiffs' Interest in Proceeding Expeditiously is Substantial.

DOJ asks the Court for a nine-month blanket stay of proceedings until what it now claims will be the conclusion of the criminal action. But that request is based on the assumption that the criminal action will in fact be resolved in nine months. As the DOJ acknowledges in its submission, the criminal indictment references two unidentified companies ("Company A" and "Company B"), as to whom the DOJ has already made public compelling evidence tending to incriminate them. *See* DOJ Br., at 3, 13. Neither Plaintiffs nor the Court can assume that: (1) the DOJ will *not* indict one or both of those companies in the next nine months; or (2) that any trial in the criminal case will not be delayed, either as a result of such indictments or otherwise. A stay of shorter duration will at a minimum allow the Court to reassess the potential compromise of Plaintiffs' interests promptly upon the occurrence of either of those events.

Ample case law is to similar effect. The court in *Glover* described plaintiff's interest as his "strongest argument against a stay." *Id.*, 2020 WL 1433801, at *3. It further observed that, as in this case, the moving party "fails to weigh legitimate interests that courts have recognized. Plaintiff

---

[6] DOJ Press Release (May 20, 2019), *available at* https://www.justice.gov/opa/pr/justice-department-seeks-intervene-private-class-action-enforce-prohibition-unlawful-no-poach.

has a significant interest in having her case resolved and obtaining compensation if she proves she

is entitled to it. [Movants] do not consider that if discovery is stayed, there is a risk that evidence

disappears and memories fade; plaintiffs' cases rarely grow stronger with delays beyond what is

necessary for their adequate preparation." *Id.* (cleaned up). As the court held in *Wittgen v. Webb*,

No. 1:09-cv-5352, ECF 64, at 3 (N.D. Ill. Sept. 13, 2011):

> Plaintiffs have an interest in timely conducting discovery, gathering
> evidence, and examining witnesses. They seek financial redress for
> their harm. If this Court were to grant the defendants' request, the
> plaintiffs' might have to endure a lengthy delay in receiving any
> financial redress that may be due to them. To grant the defendants'
> motion would be to effectively invalidate all those interests of the
> plaintiffs, burdening them and undermining fair and timely process.

*See also Jacksonville Savings Bank v. Kovack*, 326 Ill.App.3d 1131, 1136 (2002) (affirming denial

of stay: "It would be perverse if plaintiffs who claim to be the victims of criminal activity were

relegated to receive slower justice than other plaintiffs simply because the behavior they allege is

egregious enough to attract the attention of criminal authorities").

### 3. The Overlap Between the Two Cases Does Not Threaten Judicial Resources.

The overlap between the criminal and civil cases against SCA does not justify a blanket

nine-month stay of the latter. "[C]onvenience of the courts is best served when motions to stay

proceedings are discouraged. …a policy of issuing stays solely because a litigant is defending

simultaneous lawsuits would threaten to become a constant source of delay and an interference

with judicial administration." *United States v. Priv. Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*,

811 F. Supp. 802, 808 (E.D.N.Y. 1992) (cleaned up). Moreover, allowing discovery to

substantially proceed will not consume judicial resources, as "the discovery process in civil cases

is self-effectuating, and the parties are required to attempt to resolve all discovery disputes without

the intervention of the Court." *United States v. Smile Ctr. of Fam. Dentistry, P.C.*, 02-CV-439-JM,

2005 WL 8170010, at \*4 (N.D. Ind. Mar. 17, 2005).

DOJ's argument to the contrary overlooks important differences between the civil and criminal litigation. Indeed, issues relating to causation and damages, which will not arise in the criminal case, will occupy enormous resources and time in this case. *See* 6 Callmann on Unfair Comp., Tr. & Mono. § 23:5 (4th ed.) ("[T]he result of a prior governmental proceeding is applicable only to the issue of the defendant's guilt, *i.e.*, the finding that his conduct was in violation of the antitrust laws. In any subsequent private action, it is still the plaintiff's burden to establish injury to his own business or property and its causal relationship to the defendant's antitrust violation."). In this case, Defendants will be required to produce compensation data for large numbers of employees and documents relating to compensation, job categories and duties. Plaintiffs and their experts will be required to understand, process and analyze that information. That process will have no bearing on the criminal case. It should proceed apace.

The cases cited by DOJ in this context are readily distinguishable. For example, in a number of these cases, unlike the present case, DOJ was a party to the civil suit, a factor that weighs in favor of a stay. *See United States v. All Meat & Poultry Prod.*, No. 02 C 5145, 2003 WL 22284318, at *2 (N.D. Ill. Oct. 3, 2003) (noting fact that DOJ initiated both criminal and civil proceedings was "a factor that weighs toward granting a stay because of the danger that the government may use civil discovery to obtain evidence and information for use in its criminal prosecution, thereby circumventing the Fifth Amendment right against self-incrimination.").[7] In

---

[7] *See also United States v. Michelle's Lounge*, No. 91 C 5783, 1992 WL 194652, at *1 (N.D. Ill. Aug. 6, 1992) (government moved to stay its own civil forfeiture proceedings); *United States v. Hugo Key & Son, Inc.*, 672 F. Supp. 656, 657 (D.R.I. 1987) (civil action brought by DOJ); *S.E.C. v. Offill*, 3:07–CV–1643–D, 2008 WL 958072, at *1 (N.D. Tex. Apr. 9, 2008) (same).

addition, DOJ cites cases in which the plaintiffs did not oppose a stay, or requested the stay themselves.[8]

### 4. DOJ is Not a Party to the Civil Proceedings.

DOJ is not a party to these civil proceedings and it acknowledges this factor weighs against a stay. DOJ Br. at 11 (emphasis added). *See also Bank of Am. v. Veluchamy*, No. 09 C 5109, 2010 WL 1693108, at *5 (N.D. Ill. Apr. 26, 2010).

### 5. The Additional Burden on Defendants in Proceeding Promptly is Minimal.

The "mere existence of parallel criminal and civil proceedings does not compel a stay of the civil proceedings." *Dean v. Douglas*, No. 5:12–CV–120, 2012 WL 6151137, at *3 (M.D. Ga. Dec. 11, 2012). "A court may deny a stay so long as the privilege's invocation does not compel an adverse judgment against the claimant." *Id. See also Scrap Metal*, 2002 WL 31988168, at *5-*6 (rejecting defendants' argument as to simultaneous proceedings). While DOJ argues that denying the stay would force witnesses to choose between invoking the Fifth Amendment or incriminating themselves, DOJ Br., at 14, even "[a] defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege." *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 326 (9th Cir. 1995).[9] Witnesses subject to criminal sanction

---

[8] *See Offill*, 2008 WL 958072, at *1 ("[N]one of the parties opposes imposition of a stay of discovery in this case[.]"); *Maloney v. Gordon*, 328 F. Supp. 2d 508, 512 (D. Del. 2004) (plaintiffs' explicit request for stay weighed in favor of granting stay). The remaining cases DOJ cites are also distinguishable. *See Glover*, 2020 WL 1433801, at *1 (granting motion to stay only deposition discovery); *Benevolence Int'l*, 200 F. Supp.2d at 941 (defendant in criminal action was plaintiff in civil matter, and sought discovery in civil matter to which it would not be entitled in criminal case); *Grand Jury Proc. (Williams) v. United States*, 995 F.2d 1013 (11th Cir. 1993) (holding that protective order issued under the Federal Rules of Civil Procedure may not shield deposition given in civil suit from subsequent grand jury subpoena).

[9] *See also Chicago Title Ins. Co. v. Sinikovic*, 125 F. Supp. 3d 769, 776 (N.D. Ill. 2015) ("[T]he Fifth Amendment privilege is a personal one and does not attach to corporations."); *In re Mid-Atl. Toyota Antitrust Litig.*, 92 F.R.D. 358, 360 (D. Md. 1981) ("Fifth Amendment self-incrimination protections will in no way be adversely affected by denial of a stay, since corporate defendants are not entitled to those protections. There is no evidence, additionally, to suggest that each and every corporate employee of the civil defendants will be unable to respond to civil discovery.").

routinely testify in civil proceedings. *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) ("[T]the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them.").

### 6. The Posture of the Criminal Proceeding is not Determinative.

DOJ alleges that the pending trial date is an overriding factor weighing in its favor. DOJ Br., at 12 (citing *Hollinger Int'l, Inc. v. Hollinger Inc.,*, No. 04 C 698, 2008 WL 161683, at *2 (N.D. Ill. Jan 16, 2008)). But *Hollinger* further held that "the Constitution does not mandate a stay in such circumstances," and only justified the stay it imposed by reference to Fifth Amendment issues. *Hollinger*, 2008 WL 161683 at *2. Further, the trial date in the criminal case may change. *See supra* § III.B.2. If the Court were to adopt DOJ's reasoning that this case cannot proceed absent the completion of any criminal trial, "the delay imposed on [Plaintiffs] is potentially indefinite. There is no telling how complicated the government's investigation may be, whether the allegations of the particular civil plaintiff are merely the tip of an iceberg that will result in a lengthy and open-ended investigation, what priority the government assigns to the investigation…or how time-consuming the resulting criminal case will be." *Sterling Nat. Bank v. A-1 Hotels Int'l, Inc.*, 175 F. Supp. 2d 573, 577 (S.D.N.Y. 2001).[10]

## III. CONCLUSION

Plaintiffs respectfully request that the Court deny the United States' motion to the extent that it seeks to stay the pending civil proceedings.

---

[10] *See also id.* at 575 (denying stay, holding that "it would be perverse if plaintiffs who claim to be the victims of criminal activity were to receive slower justice than other plaintiffs because the behavior they allege is sufficiently egregious to have attracted the attention of the criminal authorities").

Dated:  March 23, 2021                    Respectfully submitted,


_/s/ Linda Nussbaum_ _____    _/s/ Joseph R. Saveri_ _____
Linda P. Nussbaum (admitted *pro hac vice*)    Joseph R. Saveri (admitted under L.R. 83.10)
Bart D. Cohen (*pro hac vice* forthcoming)    Steven N. Williams (*pro hac vice* forthcoming)
**NUSSBAUM LAW GROUP, P.C.**              Chris K.L. Young (admitted under L.R. 83.10)
1211 Avenue of the Americas, 40th Floor    Kyle P. Quackenbush (admitted under L.R. 83.10)
New York, NY 10036                        Anupama K. Reddy (admitted under L.R. 83.10)
Telephone: (917) 438-9102                 **JOSEPH SAVERI LAW FIRM, INC.**
csanchez@nussbaumpc.com                   601 California Street, Suite 1000
lnussbaum@nussbaumpc.com                  San Francisco, California 94108
bcohen@nussbaumpc.com                     Telephone: (415) 500-6800
                                          Facsimile: (415) 395-9940
                                          jsaveri@saverilawfirm.com
                                          swilliams@saverilawfirm.com
                                          cyoung@saverilawfirm.com
                                          kquackenbush@saverilawfirm.com
                                          areddy@saverilawfirm.com

16

/s/ Michael L. Roberts _____
Michael L. Roberts (*pro hac vice*)
Karen Halbert (*pro hac vice*)
**ROBERTS LAW FIRM US, PC**
1920 McKinney Ave., Suite 700
Dallas, TX 75204
Telephone: (501) 821-5575
mikeroberts@robertslawfirm.us
karenhalbert@robertslawfirm.us

/s/ Dean M. Harvey _____
Dean M. Harvey (*pro hac vice* forthcoming)
Nimish R. Desai (*pro hac vice* forthcoming)
Lin Y. Chan (*pro hac vice* forthcoming)
Yaman Salahi (*pro hac vice* forthcoming)
Michelle A. Lamy (*pro hac vice* forthcoming)
**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
dharvey@lchb.com
ndesai@lchb.com
lchan@lchb.com
ysalahi@lchb.com
mlamy@lchb.com

-and-

Jessica A. Moldovan (*pro hac vice* forthcoming)
**LIEFF CABRASER HEIMANN**
**&BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, New York 10013-1413
Telephone: (212) 355-9500
Facsimile: (212) 355-9592
jmoldovan@lchb.com

*Proposed Interim Co-Lead Counsel for Plaintiffs and the Proposed Class*

Jason A. Zweig
Ashley Keller
Travis Lenkner
**KELLER LENKNER LLC**
150 N. Riverside Plaza, Suite 4270
Chicago, IL 60606
Telephone: (312) 216-8667
jaz@kellerlenkner.com
ack@kellerlenkner.com
tdl@kellerlenkner.com

Douglas A. Millen
William H. London
Michael E. Moskovitz
**FREED KANNER LONDON & MILLEN LLC**
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500
Facsimile: (224) 632-4521
dmillen@fklmlaw.com
blondon@fklmlaw.com
mmoskovitz@fklmlaw.com

-and-

Kimberly A. Justice (*pro hac vice* forthcoming)
923 Fayette Street
Conshohocken, PA 19428
Telephone: (610) 234-6770
Facsimile: (224) 632-4521
kjustice@fklmlaw.com

*Counsel for Individual and Representative Plaintiff Allen Spradling*

Gary M. Klinger
Gary E. Mason
David K. Lietz
**MASON LIETZ & KLINGER LLP**
227 W. Monroe Street, Ste. 2100
Chicago, IL 60606
Telephone: (202) 429-2290
gklinger@masonllp.com
gmason@masonllp.com
dlietz@masonllp.com

*Counsel for Individual and Representative Plaintiff Rhonda Roe and Individual and Representative Plaintiff Scott Smith*

Stephanie A. Scharf (No. 6191616)
Sarah Marmor (No. 6216487)
**SCHARF BANKS MARMOR LLC**
333 West Wacker Drive, Suite 450
Chicago, IL 60606
Telephone: (312) 726-6000
sscharf@scharfbanks.com
smarmor@scharfbanks.com

Roberta D. Liebenberg (*pro hac vice*)
Gerard A. Dever (*pro hac vice*)
Mary L. Russell (*pro hac vice*)
**FINE, KAPLAN AND BLACK, R.P.C.**
One South Broad Street, 23rd Floor
Philadelphia, PA 19107
Telephone: (215) 567-6565
rliebenberg@finekaplan.com
gdever@finekaplan.com
mrussell@finekaplan.com

William E. Hoese
**KOHN, SWIFT & GRAF, P.C.**
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 238-1700
whoese@kohnswift.com

*Counsel for Individual and Representative Plaintiff Scott Smith*

Laurel G. Bellows
**THE BELLOWS LAW GROUP, P.C.**
209 S. LaSalle St., Suite 800
Chicago, IL 60604
Telephone: (312) 332-3340
lbellows@bellowslaw.com

Anthony Paronich
**PARONICH LAW, P.C.**
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018
Facsimile: (508) 318-8100
anthony@paronichlaw.com

Samuel J. Strauss
**TURKE & STRAUSS LLP**
613 Williamson St. #201
Madison, WI 53703
Telephone: (608) 237-1775
sam@turkestrauss.com

*Counsel for Individual and Representative Plaintiff Scott Keech*