**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| IN RE OUTPATIENT MEDICAL CENTER EMPLOYEE ANTITRUST LITIGATION | Civil Action No. 1:21-cv-00305<br><br>**Honorable Andrea R. Wood<br>Honorable Sunil R. Harjani** |

<u>**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND LACK OF STANDING**</u>

# TABLE OF CONTENTS

**Page**

**BACKGROUND** .................................................................................................. **4**

    I.     The Parties ................................................................................................ 4

    II.    The Purported Non-Solicitation Agreements ......................................... 4

**LEGAL STANDARD** ......................................................................................... **6**

**ARGUMENT** ....................................................................................................... **6**

    I.     The Complaint Fails to Plead a Violation of the Sherman Act ............................ 7

        A.    No Court Has Ever Held That A Non-Solicitation Agreement Is *Per Se* Illegal Under Section 1 of the Sherman Act .................................... 9

        B.    No Court Has Ever Found A Non-Solicitation Agreement to Have A "Pernicious Effect" on Competition. .................................... 11

        C.    The *Per Se* Rule Cannot Apply to the Agreements at Issue Because Non-Solicitation Agreements Have Redeeming Procompetitive Virtues—for Employers, Employees, and Consumers—That Are Well-Recognized .................................... 12

    II.    The Complaint Fails to Plead an Overarching Agreement. .................................. 15

    III.   Plaintiffs Lack Constitutional Standing and Statutory Authority to Bring this Action. .................................... 18

        A.    Plaintiffs Fail to Plausibly Allege A Personal and Concrete Injury. ........ 18

            1.    Plaintiffs Fail to Plausibly Allege A Threat of Future Injury That Would Provide Standing to Seek Injunctive Relief. ............. 19

            2.    Plaintiffs Fail to Plausibly Allege A Past Injury That Would Provide Standing to Seek Monetary Relief. ...................... 20

        B.    Plaintiffs Fail to Plausibly Allege an Injury That Is "Fairly Traceable" to the Alleged Non-Solicitation Agreements. ........................ 22

        C.    Plaintiffs Have Not Alleged Facts Showing Defendants' Conduct Was A "Proximate Cause" of Any Injury. ................................................. 23

**CONCLUSION** .................................................................................................. **24**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Access Living of Metro Chicago v. Uber Tech.*,
    958 F.3d 604 (7th Cir. 2020) ........................................................................20, 21

*Agnew v. Nat'l Collegiate Athletic Ass'n*,
    683 F.3d 328 (7th Cir. 2012) .................................................................................14

*Arizona v. Maricopa Cnty. Med. Soc.*,
    457 U.S. 332 (1982)................................................................................................8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................................6

*Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*,
    No. 20-55679, Dkt. 101-1 (9th Cir. Aug. 19, 2021) .............................................10

*Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*,
    No. 3:17-cv-00205-MMA-MDD, 2020 WL 2553181 (S.D. Cal. May 20,
    2020) ......................................................................................................................9

*Aydin Corp. v. Loral Corp.*,
    718 F.2d 897 (9th Cir. 1983) .................................................................................13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................................2, 6

*Bogan v. Hodgkins*,
    166 F.3d 509 (2d Cir. 1999)......................................................................10, 11, 12

*Brown v. Cty. of Cook*,
    549 F. Supp. 2d 1026 (N.D. Ill. 2008) ..............................................................19, 20

*CertainTeed Corp. v. Williams*,
    481 F.3d 528 (7th Cir. 2007) .................................................................................13

*Cesnik v. Chrysler Corp.*,
    490 F. Supp. 859 (M.D. Tenn. 1980)....................................................................24

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)..............................................................................................23

*Coleman v. Gen. Elec. Co.*,
    643 F. Supp. 1229 (E.D. Tenn. 1986), *aff'd* 822 F.2d 59 (6th Cir. 1987) ..............10

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Continental T.V., Inc. v. GTE Sylvania Inc.*,
   433 U.S. 36 (1977) ..............................................................................................8, 11

*Daimler Chrysler Corp. v. Cuno*,
   547 U.S. 332 (2006) .....................................................................................................3

*Deslandes v. McDonald's USA, LLC*,
   No. 17 C 4857, 2021 WL 3187668 (N.D. Ill. July 28, 2021) .................................14

*Eichorn v. AT&T Corp.*,
   248 F.3d 131 (3d Cir. 2001)...................................................................................10, 11

*Finkelman v. Nat'l Football League*,
   810 F.3d 187 (3d Cir. 2016)...........................................................................................23

*Fonseca v. Hewlett-Packard Co.*,
   No. 19CV1748-GPC-MSB, 2020 WL 6083448 (S.D. Cal. Feb. 3, 2020)...............................9

*Fuentes v. Royal Dutch Shell PLC*,
   No. 18-5174, 2019 WL 7584654 (E.D. Pa. Nov. 25, 2019) ........................................20

*Hangar v. Berkley Grp., Inc.*,
   No. 5:13-cv-113, 2015 WL 3439255 (W.D. Va. May 28, 2015)...................................13

*In re High-Tech Emp. Antitrust Litig.*,
   856 F. Supp. 2d 1103 (N.D. Cal. 2012) ...................................................................9, 17

*Hollingsworth v. Perry*,
   570 U.S. 693 (2013)...................................................................................................3

*Holmes v. Securities Inv. Prot. Corp.*,
   503 U.S. 258 (1992).................................................................................................23

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l., Inc.*,
   602 F.3d 237 (3d Cir. 2010)......................................................................................16

*In re Ins. Brokerage Antitrust Litig.*,
   618 F.3d 300 (3d. Cir. 2010)...................................................................................7, 14

*In re Iowa Ready-Mix Concrete Antitrust Litig.*,
   768 F. Supp. 2d 961 (N.D. Iowa 2011)......................................................... *passim*

*J.B. v. Woodard*,
   997 F.3d 714 (7th Cir. 2021) .......................................................................................6

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
   551 U.S. 877 (2007)..................................................................................................7, 8

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)................................................................20

*Malone v. Cort Furniture Corp.*,
    No. 02 C 1729, 2002 WL 1874819 (N.D. Ill. Aug. 13, 2002)................................13

*Marion Healthcare, LLC v. Becton Dickinson & Co.*,
    952 F.3d 832 (7th Cir. 2020) ................................................17

*McGarry & McGarry, LLC v. Bankr. Mgmt Sols., Inc.*,
    937 F.3d 1056 (7th Cir. 2019) ................................................18

*McNair v. Synapse Grp., Inc.*,
    672 F.3d 213 (3d Cir. 2012)................................................19, 20

*MM Steel, L.P.* v. *JSW Steel (USA) Inc.*,
    806 F.3d 835 (5th Cir. 2015) ................................................8

*Molinari v. Consol. Energy Inc.*,
    No. 12CV1085, 2012 WL 4928489 (W.D. Pa. Oct. 16, 2012)................................9, 14

*N. Pac. Ry. Co. v. United States*,
    356 U.S. 1 (1958)................................................8

*Nat'l Soc'y of Pro. Eng'rs v. United States*,
    435 U.S. 679 (1978)................................................8

*NCAA v. Alston*,
    141 S. Ct. 2141 (2021)................................................10

*Nichols v. Spencer Int'l Press, Inc.*,
    371 F.2d 332 (7th Cir. 1967) ................................................10, 11, 12

*O'Shea v. Littleton*,
    414 U.S. 488 (1974)................................................18

*Ogden v. Little Caesar Enterprises, Inc.*,
    393 F. Supp. 3d 622 (E.D. Mich. 2019)................................................21, 24

*In re Optical Disk Drive Antitrust Litig.*,
    No. 3:10-md-2143 RS, 3:13-cv-4991-RS, 2014 WL 3378336 (N.D. Cal. July
    10, 2014) ................................................18

*Palmer v. BRG of Georgia, Inc.*,
    498 U.S. 46 (1990)................................................8

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Polk Bros., Inc. v. Forest City Enters., Inc.*,
 776 F.2d 185 (7th Cir. 1985) ....................................................................................2, 13

*Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*,
 No. 08-cv-42 (JG)(VVP), 2011 WL 7053807 (E.D.N.Y. Jan. 4, 2011) ........................16, 17

*R.E. Davis Chem. Corp. v. Nalco Chem. Co.*,
 757 F. Supp. 1499 (N.D. Ill. 1990) .....................................................................................18

*Radovich v. NFL*,
 352 U.S. 445 (1957)..............................................................................................................10

*In re Railway Indus. Employee No-Poach Antitrust Litig.*,
 No. 18-798 (W.D. Pa.)..........................................................................................................22

*Roman v. Cessna Aircraft Co.*,
 55 F.3d 542 (10th Cir. 1995) ...............................................................................................24

*Scherr v. Marriot Int'l, Inc.*,
 703 F.3d 1069 (7th Cir. 2013) .............................................................................................19

*Schlesinger v. Reservists Comm. to Stop the War*,
 418 U.S. 208 (1974)..............................................................................................................18

*Somerville v. W. Town Bank & Tr.*,
 No. PJM 19-0490, 2019 WL 6131288 (D. Md. Nov. 19, 2019)............................................14

*Sow v. Fortville Police Dept.*,
 636 F.3d 293 (7th Cir. 2011) ...............................................................................................15

*Spokeo, Inc. v. Robins*,
 136 S. Ct. 1540 (2016)..........................................................................................................20

*State Oil Co. v. Khan*,
 522 U.S. 3 (1997)....................................................................................................................7

*In re Sulfuric Acid Antitrust Litig.*,
 703 F.3d 1004 (7th Cir. 2012) ......................................................................................10, 12

*Summers v. Earth Island Inst.*,
 555 U.S. 488 (2009)..............................................................................................................19

*Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.*,
 902 F.3d 735 (7th Cir. 2018) ...............................................................................................23

*Texaco Inc. v. Dagher*,
 547 U.S. 1 (2006)..........................................................................................................7, 8, 14

**TABLE OF AUTHORITIES (CONT'D)**

**Page(s)**

*Thole v. U.S. Bank, N.A.*,
    140 S. Ct. 1615 (2020) ...........................................................................................6

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) .........................................................................................19

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) (Roberts, C.J., concurring) ................................................22

*Ulrich v. Moody's Corp.*,
    No. 13 Civ. 0008 (VSB)(MHD), 2014 WL 12776746 (S.D.N.Y. Mar. 31,
    2014) .....................................................................................................................22

*United States v. Andreas*,
    216 F.3d 645 (7th Cir. 2000) ...............................................................................12

*United States v. Brighton Bldg. & Maint. Co.*,
    598 F.2d 1101 (7th Cir. 1979) ...............................................................................8

*United States v. DaVita, Inc.*,
    No. 21-cr-0229 (D. Colo. July 14, 2021) ECF No. 1 .............................................5

*United States v. eBay, Inc.*,
    968 F. Supp. 2d 1030 (N.D. Cal. 2013) .................................................................9

*United States v. Sertich*,
    95 F.3d 520 (7th Cir. 1996) .................................................................................15

*United States v. Students Challenging Regul. Agency Procedures*,
    412 U.S. 699 (1973) .............................................................................................22

*United States v. Surgical Care Affiliates, LLC*,
    No. 3:21-cr-00011 (N.D. Tex. July 8, 2021) ECF No. 48 ......................................5

*United States v. Topco Assocs., Inc.*,
    405 U.S. 596 (1972) ...............................................................................................8

*Warth v. Seldin*,
    422 U.S. 490 (1975) ........................................................................................21, 23

*Wilk v. Am. Med. Ass'n*,
    719 F.2d 207 (7th Cir. 1983) .................................................................................8

*Yi v. SK Bakeries, LLC*,
    No. 18-5627 RJB, 2018 WL 8918587 (W.D. Wash. Nov. 13, 2018) ......................9

### TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

**Statutes**

*Antitrust Law*, § 1909b (4th ed. 2020) ...................................................................................8

Clayton Act ........................................................................................................................3, 23

Sherman Act........................................................................................................... *passim*

**Rules**

FED. R. CIV. P. 12(b)(1) ........................................................................................................6

FED. R. CIV. P. 12(b)(6) ........................................................................................................6

FED. R. CIV. P. 23(b)(2) ......................................................................................................19

The Supreme Court has made clear that the notoriously imprecise Section 1 of the Sherman Act cannot be read literally to outlaw every "restraint of trade" without grinding commerce to a halt. Precisely because of that imprecision and potential breadth, the Supreme Court has held that only "unreasonable" restraints of trade violate the Sherman Act, and thus courts ordinarily must analyze restraints under the rule of reason. Only in an exceedingly small universe of cases involving conduct that has been recognized by courts as inherently and pervasively anticompetitive may courts depart from the rule of reason presumption. These principles compel the dismissal of the Plaintiffs' claim against the moving Defendants in the Consolidated Amended Class Action Complaint ("Complaint").[1]

In the Complaint, Plaintiffs allege a single violation of Section 1 of the Sherman Act. Their claim is based on a purported "overarching" or singular conspiracy alleging that Defendants agreed not to solicit each other's senior employees unless those employees advised their current employers that they were considering leaving. In doing so, Plaintiffs mistakenly assume that the alleged non-solicitation agreements fall within the limited, defined set of agreements that are considered illegal "*per se*" under the antitrust laws—meaning they are so inherently anticompetitive that a court need not even analyze whether they are reasonable. But in analyzing Section 1 claims, courts presumptively do the opposite. Courts apply the "rule of reason"— analyzing whether the anticompetitive effects outweigh the procompetitive benefits—unless the alleged conduct falls within the limited, defined category of agreements that are illegal *per se*.

After more than one hundred years of interpreting the Sherman Act, today the Supreme Court only deems three types of agreements illegal *per se*: price fixing, bid rigging, and market

---

[1]  For clarity, the moving Defendants are Surgical Care Affiliates, LLC ("SCA"), SCAI Holdings, LLC ("SCAI Holdings"), UnitedHealth Group Incorporated ("United"), DaVita, Inc. ("DaVita"), and Kent Thiry. SCA Holdings, LLC is an unaffiliated third party that has not been served in this case.

allocation. Further, the Supreme Court has held that courts cannot add to this list of agreements unless "extensive judicial experience" has revealed that the type of agreement is so inherently and pervasively anticompetitive that it is irredeemable, warranting *per se* treatment. Here, Plaintiffs do not allege that Defendants engaged in price fixing, bid rigging, or market allocation. They merely allege that Defendants agreed not to solicit certain senior employees under certain limited circumstances. The Supreme Court has never declared such an alleged agreement to be *per se* illegal. Indeed, no court has ever adjudicated the effects of a standalone employee non-solicitation agreement on any labor market, let alone declared such an agreement *per se* illegal. In fact, courts analyzing employee-employer agreements, such as non-competes, have found that such agreements have the *procompetitive* benefit of promoting employee longevity and investment in employee training and performance. *See Polk Bros., Inc. v. Forest City Enters., Inc.*, 776 F.2d 185, 189 (7th Cir. 1985) (rejecting antitrust challenge to a non-compete agreement: "Knowing that he is not cutting his own throat by doing so, the employer will train the employee, giving him skills, knowledge, and trade secrets that make the firm more productive"). Accordingly, Plaintiffs' *per se* claim fails as a matter of law. Because Plaintiffs do not even attempt to allege a rule of reason antitrust violation, the Court should dismiss the Complaint in its entirety.

The Complaint also fails to allege facts supporting an "overarching conspiracy" among Defendants. The Complaint alleges three separate bilateral agreements between (1) SCA and USPI (Complaint ("Compl.") ¶¶ 55–59); (2) SCA and DaVita (*id.* ¶¶ 60–66); and (3) DaVita and Doe 1 (*id.* ¶¶ 67–70). Plaintiffs do not allege any facts supporting a plausible single, continuing (or "overarching") conspiracy connecting the dots among these three separate alleged agreements. *Cf. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567–68 (2007). Plaintiffs use conclusory boilerplate jargon regarding the purpose of the supposed overarching agreement (to "fix" and "suppress"

employee compensation), but they do not allege the terms of any overarching agreement or facts supporting a meeting of the minds among Defendants with respect to an overarching agreement. Without such allegations, Plaintiffs' claim that this was a single, overarching conspiracy among all Defendants must fail. *See, e.g.*, *In re Iowa Ready-Mix Concrete Antitrust Litig.*, 768 F. Supp. 2d 961, 976 (N.D. Iowa 2011) (overarching agreement requires "allegations of facts plausibly suggesting a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement").

Finally, Plaintiffs' claim also must be dismissed because Plaintiffs lack standing to assert it. To invoke this Court's Article III jurisdiction, Plaintiffs must allege an individualized injury traceable to the "particular claim asserted" and for "each form of relief sought," *Daimler Chrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006), "a sufficiently concrete interest in the outcome of the issue in dispute," *Hollingsworth v. Perry*, 570 U.S. 693, 708–09 (2013). With respect to their request for injunctive relief, Plaintiffs—two former SCA employees—do not allege any plausible risk of future injury entitling them to that relief. Nor do Plaintiffs plead facts establishing their standing to seek monetary relief because the Complaint does not allege any facts that *Plaintiffs* suffered a "concrete" injury in a "personal and individual way" that is "fairly traceable" to the alleged non-solicitation agreements. *Id.* at 705. By extension, then, Plaintiffs also have not alleged facts demonstrating that Defendants' conduct proximately caused them any harm sufficient to bring a treble damages claim under the Clayton Act. For each of these reasons, the Court should dismiss Plaintiffs' claim.

# BACKGROUND

## I.     The Parties

SCA, DaVita, and USPI (collectively, along with their corporate affiliates, the "Entity Defendants") provide outpatient medical services across the United States.[2]  (Compl. ¶ 53.) Andrew Hayek was the Chief Executive Officer of SCA from May 2008 to March 2017.  (*Id.* ¶ 22.) Kent Thiry was the Chief Executive Officer of DaVita from 1999 to June 2019.  (*Id.* ¶ 44.)

Plaintiff Scott Keech was employed by Defendant SCA from approximately 2011 to March 2012 as a Regional Director of Operations and Clinical Services.  (*Id.* ¶17.)  Plaintiff Allen Spradling was employed by Defendant SCA from September 22, 2008 to April 26, 2013 as a Manager, Program Management Office and then as a Director of Information Technology. (*Id.* ¶ 18.)  Neither Plaintiff alleges that he (1) ever attempted to obtain employment with any of the other Entity Defendants while employed by SCA, or (2) was ever forced to disclose to SCA any interest in obtaining employment at another Entity Defendant.  Nor do they allege any facts demonstrating that their specific wages at SCA were negatively impacted by Defendants' purported non-solicitation agreements.

## II.    The Purported Non-Solicitation Agreements

According to the Complaint, Defendants agreed not to solicit "senior employees" from other Entity Defendants, and not to consider other Entity Defendants' employees for positions unless they had informed their current employers that they were seeking jobs at the other firm.[3]

---

[2]     For clarity, "Entity Defendants" refers to SCA, SCAI Holdings, United, DaVita, and United Surgical Partners Holding Company, Inc., United Surgical Partners International, Inc., and Tenet Healthcare Corporation (together "USPI").

[3]     The Complaint alleges that Doe 1 agreed not to solicit DaVita employees.  It does not allege a reciprocal agreement by DaVita not to solicit Doe 1's employees.  (*Id.* ¶¶ 67–70.)

(*Id.* ¶¶ 6, 53, 55–58, 61–62, 64, 66.)   As alleged by Plaintiffs, these agreements covered senior employees only; they did not apply to the recruitment of "junior people (below Director)." (*Id.* ¶¶ 6, 62.)

At most, Plaintiffs allege three, separate agreements not to solicit "senior employees" of other entities.[4]   Although the Complaint labels the alleged agreements interchangeably as "non-solicit," "no-hire," and "no-poach," the facts alleged do not match any of those labels.   For example, the Complaint never alleges that Defendants agreed not to hire each other's senior employees.   To the contrary, the Complaint admits that Defendants could freely hire each other's senior employees, provided only that the employee gave notice to the current employer.   (*Id.* ¶¶ 55–70.)

Plaintiffs' Complaint is a follow-on to cases brought by the DOJ against SCA and DaVita in federal courts in Texas and Colorado, respectively.   Indeed, Plaintiffs here copy their factual allegations from those criminal indictments, including the novel legal conclusion that the alleged conduct is *per se* illegal.   (*See* Exs. A and B, Superseding Indictment, *United States v. Surgical Care Affiliates, LLC*, No. 3:21-cr-00011 (N.D. Tex. July 8, 2021) ECF No. 48 and Indictment, *United States v. DaVita, Inc.*, No. 21-cr-0229 (D. Colo. July 14, 2021) ECF No. 1.)   One significant difference between the Complaint here and the DOJ indictments is that the DOJ has alleged three separate, two-party agreements between: (1) SCA and USPI; (2) SCA and DaVita; and (3) DaVita and Doe 1.   (*See* Compl. ¶¶ 55–59, 60–66, 67–70; Exs. A and B.)   Here, Plaintiffs make the bald

---

[4]     For purposes of this motion to dismiss only, Defendants use Plaintiffs' description of the agreements as "non-solicitation" agreements.   The alleged non-solicitation agreements here, however, are not truly agreements not to solicit because—as alleged—they permit solicitation once the employee has given notice of intent to seek other employment.   (*Id.* ¶¶ 6, 53, 55–58, 61–62, 64, 66.)

and conclusory allegation that all Defendants entered into one "overarching conspiracy." (Compl. ¶ 114.) Other than that, Plaintiffs allege no more than the same, three separate bilateral agreements.

Each of the defendants in the DOJ cases have filed motions to dismiss on the grounds that the alleged conduct is not *per se* illegal as a matter of law and that the criminal prosecutions violate the Constitution's Due Process Clause. Those motions are pending.

## LEGAL STANDARD

A complaint must be dismissed if it fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). A complaint fails to state a claim where, as here, it does not contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is only plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[L]abels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

A claim also must be dismissed if the Court lacks subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). "[A]ny person invoking the power of a federal court must demonstrate standing to do so." *J.B. v. Woodard*, 997 F.3d 714, 719–20 (7th Cir. 2021) (internal citation omitted). At the pleading stage, "the plaintiff must allege facts demonstrating each element of Article III standing," including: "(1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Id.* at 720; *Thole v. U.S. Bank, N.A.*, 140 S. Ct. 1615, 1618 (2020).

## ARGUMENT

This case would be the first time a court has declared an employee non-solicitation agreement *per se* illegal under the Sherman Act. That is not because non-solicitation agreements

are novel or uncommon; they are neither. Instead, it is because no court has ever accepted the argument that non-solicitation agreements are *per se* illegal. Plaintiffs are thus asking this Court to make the novel holding that non-solicitation agreements are so obviously anticompetitive that they are equivalent to conspiring to fix prices, to rig bids, or to allocate customers, territories, or products. Because the Supreme Court has cautioned that conduct cannot be classified as *per se* illegal without "extensive judicial experience," that argument fails on its own terms. Accordingly, because Plaintiffs cannot plead a *per se* claim as a matter of law, and do not even attempt to plead a rule of reason violation, the Court should dismiss the Complaint. Plaintiffs' Complaint also fails because: (1) Plaintiffs allege no facts to support their claim of an "overarching conspiracy" among Defendants; (2) Plaintiffs lack standing because they do not allege any risk of future or past injury that might entitle them to injunctive or monetary relief; and (3) Plaintiffs do not allege proximate cause, a necessary element of any private antitrust claim.

## I.   The Complaint Fails to Plead a Violation of the Sherman Act.

Plaintiffs' Complaint fails as a matter a law because it pleads solely a *per se* violation of the Sherman Act, but alleges conduct that "require[s] application of the rule of reason." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 317 (3d. Cir. 2010). Section 1 of the Sherman Act declares illegal "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States." 15 U.S.C. § 1. But the Supreme Court has "repeated time and again that § 1 'outlaw[s] only *unreasonable* restraints.'" *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 885 (2007) (emphasis added) (quoting *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997)). For this reason, the Supreme Court instructs that courts reviewing Section 1 claims must "presumptively appl[y] rule of reason analysis," analyzing whether procompetitive benefits outweigh anticompetitive effects. *Texaco Inc. v. Dagher*, 547 U.S. 1, 5 (2006).

*Per se* treatment is reserved for a narrow class of agreements that experience has found have such "'manifestly anticompetitive' effects" that they "'lack . . . any redeeming virtue.'" *Leegin*, 551 U.S. at 886; *see also Texaco*, 547 U.S. at 5 ("*Per se* liability is reserved only for those agreements that 'are so plainly anticompetitive that no elaborate study of the industry is needed to establish their illegality.'" (quoting *Nat'l Soc'y of Pro. Eng'rs v. United States*, 435 U.S. 679, 692 (1978)). It is "only after considerable experience with certain business relationships that courts classify them as *per se* violations." *United States v. Topco Assocs., Inc.*, 405 U.S. 596, 607–08 (1972). When "the nature and extent of [a conduct's] anticompetitive effect are too uncertain," it is not "amenable to *per se* treatment." *Wilk v. Am. Med. Ass'n*, 719 F.2d 207, 221 (7th Cir. 1983). Courts have determined that three kinds of agreements meet that criteria: price fixing, market allocation, and bid rigging. *See, e.g.*, *Texaco*, 547 U.S. at 5 (price fixing); *Palmer v. BRG of Georgia, Inc.*, 498 U.S. 46, 49–50 (1990) (market allocation); *United States v. Brighton Bldg. & Maint. Co.*, 598 F.2d 1101, 1106 (7th Cir. 1979) (bid rigging). Additional types of agreement cannot be added to this list without (1) considerable judicial experience with the type of conduct at issue, (2) a clear consensus that the conduct has both a "pernicious effect on competition," and (3) no "redeeming virtue." *Continental T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 50 (1977); *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 5 (1958).

Whether conduct constitutes a *per se* violation of the antitrust laws is "entirely a question of law" that courts can and do decide on motions to dismiss. Areeda & Hovenkamp, *Antitrust Law*, § 1909b (4th ed. 2020); *see also Arizona v. Maricopa Cnty. Med. Soc.*, 457 U.S. 332, 337 n.3, 354 (1982); *MM Steel, L.P.* v. *JSW Steel (USA) Inc.*, 806 F.3d 835, 847 (5th Cir. 2015). The *per se* rule cannot apply to the agreements alleged in the Complaint because courts lack experience with these restraints and have recognized their potential procompetitive benefits. Because

8

Plaintiffs cannot allege any *per se* illegal conduct here and because they plead no alternative rule of reason claim, their Complaint must be dismissed.

### A. No Court Has Ever Held That A Non-Solicitation Agreement Is *Per Se* Illegal Under Section 1 of the Sherman Act.

Plaintiffs here allege a standalone non-solicitation agreement, that is, a non-solicitation agreement not ancillary to another agreement (like an employment or purchase agreement). No court—not the Supreme Court, any court of appeals, or district court—has held that a standalone non-solicitation agreement is *per se* illegal under Section 1 of the Sherman Act. In fact, several courts have rejected Plaintiffs' argument that standalone non-solicitation agreements are *per se* illegal as a matter of law, holding that non-solicitation agreements are subject to the rule of reason. *See, e.g.*, *Yi v. SK Bakeries, LLC*, No. 18-5627 RJB, 2018 WL 8918587, at *4 (W.D. Wash. Nov. 13, 2018); *Molinari v. Consol. Energy Inc.*, No. 12CV1085, 2012 WL 4928489, at *4 (W.D. Pa. Oct. 16, 2012).

Other courts did not categorically reject *per se* treatment at the threshold stage, but concluded that additional factual development might well compel application of the rule of reason. *See, e.g.*, *United States v. eBay, Inc.*, 968 F. Supp. 2d 1030, 1039–40 (N.D. Cal. 2013); *Fonseca v. Hewlett-Packard Co.*, No. 19CV1748-GPC-MSB, 2020 WL 6083448, at *10 (S.D. Cal. Feb. 3, 2020); *In re High-Tech Emp. Antitrust Litig.*, 856 F. Supp. 2d 1103, 1122 (N.D. Cal. 2012). In the only one of those cases that later resolved the question after initially reserving judgment, the court declined to apply the *per se* rule. *See Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, No. 3:17-cv-00205-MMA-MDD, 2020 WL 2553181, at *13 (S.D. Cal. May 20, 2020). In fact, on appeal from the district court's grant of summary judgment in favor of defendants, the Ninth Circuit held that a non-solicitation provision in a nursing services supply contract was "ancillary" to the parties' collaborative contractual relationship and, therefore, was subject to the rule of

reason. *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, No. 20-55679, Dkt. 101-1, at 12–15 (9th Cir. Aug. 19, 2021). Accordingly, to the extent there is any judicial consensus about employee non-solicitation agreements, it is that they are *not* subject to *per se* treatment.

In addition, the Supreme Court has indicated that the rule of reason—not *per se* illegality—applies to no-hire agreements, which restrict competition for employees to a far greater degree than the non-solicitation agreements alleged in the Complaint. *See Radovich v. NFL*, 352 U.S. 445, 453 (1957) (holding that the alleged "blacklist[ing]" of the plaintiff should "be 'tested under the Sherman Act's general prohibition on unreasonable restraints of trade,'" *i.e.*, under the rule of reason). Other courts, including the Seventh Circuit, have reached similar conclusions with respect to no-hire agreements. *See, e.g.*, *Eichorn v. AT&T Corp.*, 248 F.3d 131, 143 (3d Cir. 2001) (rejecting contention that "no-hire agreement was *per se* illegal" after holding "no support within the relevant case law for this label"); *Bogan v. Hodgkins*, 166 F.3d 509, 515 (2d Cir. 1999) (rejecting *per se* label because "no-switching" agreement did not "fit into any of the established *per se* categories" and the "anticompetitive effect on the market . . . [was] not obvious"); *Nichols v. Spencer Int'l Press, Inc.*, 371 F.2d 332, 336–37 (7th Cir. 1967) (holding that "no-switching" agreements, in which publishers agreed not to employ former employees of the other until six months after termination of employment, are subject to the rule of reason and remanding for application of rule of reason); *Coleman v. Gen. Elec. Co.*, 643 F. Supp. 1229, 1243 (E.D. Tenn. 1986), *aff'd* 822 F.2d 59 (6th Cir. 1987) (rejecting application of *per se* rule to no-hire agreement).

In light of these precedents, this Court should not be the first to find that standalone non-solicitation agreements are *per se* illegal as a matter of law. *See In re Sulfuric Acid Antitrust Litig.*, 703 F.3d 1004, 1011 (7th Cir. 2012) ("It is relevant that we have never seen or heard of an antitrust case quite like this."); *see also NCAA v. Alston*, 141 S. Ct. 2141, 2156 (2021) ("[W]e take special

10

care not to deploy these condemnatory tools until we have amassed 'considerable experience' with the type of restraint at issue.").

### B.   No Court Has Ever Found A Non-Solicitation Agreement to Have A "Pernicious Effect" on Competition.

No court has ever held that non-solicitation agreements have "pernicious effect[s] on competition" such that they are *per se* illegal. *Cf. Continental T.V.*, 433 U.S. at 50 (emphasizing that the *per se* rule cannot be applied to a particular type of restraint absent decisions evaluating the "actual impact of these arrangements on competition" and concluding that such arrangements have a "pernicious effect on competition" (internal citation omitted)). To the contrary, courts have frequently questioned the extent to which more restrictive *no-hire* agreements could impact competition, given that employers rarely (if ever) wield sufficient market power over the host of diverse and fluid labor markets from which employees are hired. *See, e.g.*, *Bogan*, 166 F.3d at 515 (rejecting *per se* treatment where "the [no-hire] [a]greement's anticompetitive effect on the market for insurance sales agents is not obvious"); *Eichorn*, 248 F.3d at 148 (explaining that "market realities reflect[ed] that [a] no-hire agreement did not have a significant anti-competitive effect on the plaintiff's ability to seek employment within [the] broader telecommunications market nor that it fixed the cost of labor in the industry"); *see also Nichols*, 371 F.2d at 335–37 (the question over a no-hire agreement's legality is a "difficult" one, observing that whether such agreements may impair competitions "depend[s] on the circumstances"). Given that courts have not subjected these more restrictive agreements to *per se* treatment, there is no basis for subjecting the alleged non-solicitation agreements to that treatment here.

Recognizing the lack of any judicial experience with non-solicitation agreements that would justify *per se* treatment, the DOJ in the criminal cases has tried to shoehorn the alleged conduct into the "market allocation" category. In a market allocation agreement, competitors make

an agreement among themselves to apportion the market and cease competing in another's territory or to cease competing for specific customers. *See United States v. Andreas*, 216 F.3d 645, 666–67 (7th Cir. 2000). Even analogizing customers to employees, the alleged agreements did not prohibit a participant from competing for another's employees. (*See, e.g.*, Compl. ¶¶ 55–70.) The Complaint concedes that Defendants continued to compete for employees, but simply did not solicit certain senior employees "proactively" before the senior employees gave notice of their intent to search. (*See id.* ¶¶ 55–56; *see also id.* ¶¶ 58, 62, 66.) After notice, the employers were free to solicit and hire those senior employees. Plaintiffs do not allege that Defendants divided up any market for labor in any way whatsoever. Accordingly, Plaintiffs cannot allege any market allocation, so they have no *per se* claim.

C. **The *Per Se* Rule Cannot Apply to the Agreements at Issue Because Non-Solicitation Agreements Have Redeeming Procompetitive Virtues—for Employers, Employees, and Consumers—That Are Well-Recognized.**

Employee non-solicitation agreements also can have procompetitive benefits that are well recognized in antitrust law, making them ill-suited to a *per se* rule that is reserved "for cases in which experience has convinced the judiciary that a particular type of business practice has no (or trivial) redeeming benefits ever." *Sulfuric Acid*, 703 F.3d at 1011–12. Indeed, in *Nichols*, the Seventh Circuit recognized that, even if a *no-hire* agreement impaired competition, a question would still remain over "whether reasonable latitude may be afforded to protect some legitimate interest of the employers." 371 F.2d at 337.

Employee non-solicitation agreements can have the procompetitive benefit of ensuring employee longevity and minimizing volatility in ways that make a company a better and more vigorous competitor. *See Bogan*, 166 F.3d at 514 n.6, 515 (declining to apply *per se* to agreement between insurance agents not to recruit or hire from each other, noting the "sound allegations of procompetitive benefit"). Employers invest significant time and money into training employees

12

and depend on employee longevity to compete effectively—this is particularly true with "senior employees." An employee non-solicitation agreement lessens the risk that a competitor will free ride on that training investment and disrupt employee longevity by waiting until employees are fully trained and then poaching the best ones. *See Polk Bros., Inc.*, 776 F.2d at 189. That concern is especially acute with firms that come together for economically productive cooperation like a joint venture, divestiture, or consulting project. Absent an agreement not to solicit each other's employees, firms would be hesitant to cooperate with potential competitors for fear of losing their best talent.

For similar reasons, courts have held that non-solicitation and non-compete agreements between employers and their employees generally are enforceable, and an agreement not to invite a competitor's employees to breach those agreements avoids unnecessary and burdensome litigation over tortious interference with contract and related theories. *See, e.g.*, *CertainTeed Corp. v. Williams*, 481 F.3d 528, 530 (7th Cir. 2007) (upholding restrictive covenant because employers have a legitimate interest in "[k]eeping a business executive with a wealth of information from taking an equivalent position at a rival"); *Malone v. Cort Furniture Corp.*, No. 02 C 1729, 2002 WL 1874819, at *1 (N.D. Ill. Aug. 13, 2002) (upholding non-solicitation and no-hire provision where employer "has a legitimate business interest in maintaining a stable work force"). In fact, courts have upheld reciprocal no-hire agreements when executed for the joint purpose of avoiding litigation arising from violations of the companies' respective non-compete agreements. *See, e.g.*, *Hangar v. Berkley Grp., Inc.*, No. 5:13-cv-113, 2015 WL 3439255 at *7 (W.D. Va. May 28, 2015) (declining to apply *per se* rule to global settlement agreement between competitors because the no-hire provisions exist "to keep the parties from becoming embroiled in future lawsuits"); *cf. Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 900 (9th Cir. 1983) (analyzing noninterference

13

agreement and recognizing interest in "preserving trade secrets and protecting investments in personnel"). One such example is non-solicitation and no-hire agreements in the specific context of franchise agreements, where one franchisee is prevented from hiring another franchisee's employee for a period of time. This Court has held these kinds of agreements can have procompetitive benefits and thus should be subject to the rule of reason. *See, e.g.*, *Deslandes v. McDonald's USA, LLC*, No. 17 C 4857, 2021 WL 3187668, at *7 (N.D. Ill. July 28, 2021) (holding rule of reason applies because "[t]his Court cannot say that it has enough experience with no-hire provisions of franchise agreements to predict with confidence that they must always be condemned").

Despite this, the Complaint alleges only that Defendants committed a *per se* violation of the Sherman Act; it does not allege that these agreements violate the rule of reason. (Compl. ¶ 117.) Where, as here, a complaint asserts a *per se* claim but does not allege conduct that constitutes a *per se* violation of Section 1, courts consistently dismiss the complaint for failure to state a claim. *See Brokerage*, 618 F.3d at 317; *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 334 (7th Cir. 2012); *Molinari*, 2012 WL 4928489, at *4 (dismissing Sherman Act claim based on no-poach agreement between competitors for failure to plead *per se* without analyzing under rule of reason); *see also Texaco*, 547 U.S. at 7 n.2 (rejecting *per se* analysis and declining to conduct a rule of reason analysis where plaintiffs "ha[d] not put forth a rule of reason claim"); *Somerville v. W. Town Bank & Tr.*, No. PJM 19-0490, 2019 WL 6131288, at *6–8 (D. Md. Nov. 19, 2019) (dismissing Sherman Act claim where plaintiffs, alleging a *per se* violation, "did not, as they must, plausibly allege that [defendants] are competitors" and so did not sufficiently plead a *per se* violation). The Court may dismiss Plaintiffs' Complaint in its entirety on this basis alone.

14

II.     **The Complaint Fails to Plead an Overarching Agreement.**

Plaintiffs' claim also fails for the independent reason that they allege no facts in support of the overarching agreement that they plead.   Plaintiffs purportedly allege a continuing or overarching agreement among SCA, DaVita, USPI, and "Doe 1" not to solicit each other's senior employees.  (Compl. ¶ 114.)  Alleging such an overarching agreement requires "allegations of facts plausibly suggesting a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement."  *Iowa Ready-Mix Concrete*, 768 F. Supp. 2d at 975–76 (internal citations omitted); *see also Sow v. Fortville Police Dept.*, 636 F.3d 293, 305 (7th Cir. 2011) (plaintiff must demonstrate that "a meeting of the minds ha[s] occurred and that the parties ha[ve] an understanding to achieve the conspiracy's objectives").  In addition to this meeting of the minds, the Seventh Circuit has instructed that Plaintiffs must show that the individual agreements "depend upon each other for success."  *United States v. Sertich*, 95 F.3d 520, 524 (7th Cir. 1996).

Plaintiffs do not allege any facts that support an overarching agreement.  Instead, the allegations of fact in both the criminal indictments, upon which this action is based, and Plaintiffs' Complaint reflect three unique and independent bilateral agreements: (1) an agreement between SCA and USPI (Compl. ¶¶ 55–59); (2) an agreement between SCA and DaVita (*id.* ¶¶ 60–66); and (3) an agreement between DaVita and Doe 1 (*id.* ¶¶ 67–70).

The Complaint does not contain any allegation that the four companies had a collective meeting of the minds regarding their hiring practices.  Nor are there any factual allegations of circumstantial evidence that all of the alleged conspirators were acting with a single common purpose.   Plaintiffs do not allege that the parties to one bilateral agreement knew about arrangements involving the other parties.   And they do not allege conspiracy-wide

communications, collective meetings, or that the success of any one bilateral arrangement depended on the success of others. For example, Plaintiffs do not allege that:

- SCA communicated with DaVita about the alleged agreement between SCA and USPI; or

- DaVita communicated with SCA about the alleged agreement between DaVita and Doe 1, even though SCA and DaVita were allegedly co-conspirators; or

- USPI communicated with DaVita or Doe 1 about any agreement; or

- Doe 1 knew about anything other than its one-way arrangement with DaVita.

The Complaint thus fails to link the alleged separate agreements into one overarching agreement. *See e.g.*, *Iowa Ready-Mix Concrete*, 768 F. Supp. 2d at 975 (holding that plaintiffs failed to link otherwise separate agreements into one overarching agreement where "there is no allegation of facts supporting the existence of an overall plan to fix prices or that each defendant had knowledge that others were involved in the conspiracy"); *Howard Hess Dental Labs. Inc. v. Dentsply Int'l., Inc.*, 602 F.3d 237, 257 (3d Cir. 2010) (affirming dismissal where "[p]laintiffs have failed to allege any facts plausibly suggesting a unity of purpose, a common design and understanding, or a meeting of the minds between and among" defendants).

Plaintiffs also fail to allege facts showing that Defendants engaged in any conduct that would support the claim that these alleged agreements were interconnected. To plead a single, overarching agreement, Plaintiffs must allege facts demonstrating "how, when, or where" the individual agreements became connected. *Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*, No. 08-cv-42 (JG)(VVP), 2011 WL 7053807, at * 27 (E.D.N.Y. Jan. 4, 2011) (no link tying the separate agreements together where complaint was "silent as to how, when or where these sixty-five defendants or the conduct identified in the 10 local conspiracy claims became connected to each other into one global conspiracy connected by common actors, methods and goals"). The Complaint contains no allegations about when Defendants supposedly reached this

16

overarching agreement, where and how they communicated with each other to form the overarching agreement, or who at each company joined the overarching agreement. And Plaintiffs have failed to supplement any alleged connection or overlap with allegations, for example, of overlapping membership or shared control among SCA, USPI, DaVita, and Doe 1.[5] Where, as here, there is limited or no overlap among the alleged participants, there is no basis for concluding that they were part of a single, common agreement—as opposed to alleged individual agreements. *See id.* (dismissing overarching conspiracy claim premised on individual agreements that involved "different (albeit somewhat overlapping) groups of defendants").

To be sure, Plaintiffs assert the conclusion that "Defendants participated in meetings, conversations, and communications to discuss the solicitation of each other's employees." (Compl. ¶ 54). But that conclusory allegation cannot satisfy Plaintiffs' pleading burden for three reasons:

- ***First***, it cannot substitute for actual factual allegations. *See Iowa Ready-Mix Concrete*, 768 F. Supp. 2d at 974–75 ("plaintiffs' allegations that . . . the defendants and their co-conspirators conspired to set and reached agreements to set agreed-upon prices, to set agreed-upon price increases, and to submit non-competitive and rigged bids . . . are merely conclusory allegations of an agreement, not allegations of facts from which an agreement can reasonably be inferred" (internal citation omitted)).

- ***Second***, it does not allege actual coordination among the different defendants that allegedly conspired. *See Marion Healthcare, LLC v. Becton Dickinson & Co.*, 952 F.3d 832, 841–42 (7th Cir. 2020) ("If the plaintiffs do not adequately allege this type of coordination [among all defendants], they have made, at best, an allegation of a number of different conspiracies, not of a single conspiracy."); *see also Precision Assocs.*, 2011 WL 7053807, at * 27 (dismissing overarching conspiracy claim and holding that allegations that

---

[5]   In *In re High-Tech Employee Antitrust Litigation*, 856 F. Supp. 2d 1103 (N.D. Cal. 2012), plaintiffs alleged that defendants engaged in a conspiracy to eliminate competition by entering into agreements not to "cold call" each other's employees. The court held that plaintiffs had sufficiently linked the separate bilateral agreements into one overarching agreement by pleading facts to support a connection between all of the participants through overlapping board membership or other strong evidence of control by Steve Jobs. *Id.* at 1119–20. Here, there is no overlapping senior membership—the executives of SCA, for example, are not also executives of DaVita, USPI, or any of the other Defendants—nor is there any allegation of control over each of the Defendants by one individual.

defendants participated in "in person meetings, conference calls, and email communications" was not "unique" and failed to show common design).

- ***Third***, it relies on impermissible group pleading. Plaintiffs "must allege facts which evince each defendant's agreement to participate in what he or it knew to be a collective venture toward a common goal." *R.E. Davis Chem. Corp. v. Nalco Chem. Co.*, 757 F. Supp. 1499, 1515 (N.D. Ill. 1990); *see also In re Optical Disk Drive Antitrust Litig.*, No. 3:10-md-2143 RS, 3:13-cv-4991-RS, 2014 WL 3378336, at *4 (N.D. Cal. July 10, 2014) (plaintiffs must plead "allegations specific to [the Defendant] alleging [the Defendant's] role in the alleged conspiracy," and "that plausibly suggest that [the Defendant] participated in th[at] conspiracy").

The bottom line is this: absent factual allegations establishing an agreement among the four companies, Plaintiffs' claim of an overarching agreement fails and should be dismissed. *See Iowa Ready-Mix Concrete*, 768 F. Supp. 2d at 975, 979 (N.D. Iowa 2011) (dismissing claims regarding an antitrust conspiracy "that simply is not supported by any factual allegations" and "is missing . . . the 'larger picture' from which inferences of a wider conspiracy can be drawn").

## III.  Plaintiffs Lack Constitutional Standing and Statutory Authority to Bring this Action.

The Complaint also should be dismissed because it fails to plead facts establishing Plaintiffs' authority to assert a claim for violation of Section 1 of the Sherman Act. "Both Article III and the Sherman Act impose threshold barriers on a party bringing an antitrust suit in federal court." *McGarry & McGarry, LLC v. Bankr. Mgmt Sols., Inc.*, 937 F.3d 1056, 1062 (7th Cir. 2019). Because Plaintiffs have not met these dual burdens on the face of the Complaint, they are foreclosed from "seek[ing] relief on behalf of [themselves] or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).

### A.  Plaintiffs Fail to Plausibly Allege A Personal and Concrete Injury.

Article III requires Plaintiffs to "'present facts sufficient to show that [their] individual need[s] require[]'" the injunctive or monetary relief that they seek. *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 221–22 (1974). "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of

relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021). The Complaint fails to plausibly allege facts supporting a threat of future injury (for injunctive relief) or past injury (for monetary relief).

      1.    <u>Plaintiffs Fail to Plausibly Allege A Threat of Future Injury That Would Provide Standing to Seek Injunctive Relief.</u>

To establish standing to pursue injunctive relief, Plaintiffs must show "that [they are] under threat of suffering 'injury in fact.'" *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *Scherr v. Marriot Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013). But Plaintiffs do not allege any facts suggesting an immediate threat of future injury.[6]

The Complaint does not plead any facts suggesting that Defendants' alleged conduct is "ongoing" or that Defendants are likely to engage in such conduct in the future. To the contrary, the Complaint alleges that the purported USPI-SCA and DaVita-SCA agreements continued through 2017 and the alleged DaVita-Doe 1 agreement continued through 2019. (*See, e.g.*, Compl. ¶¶ 6, 55–59 (SCA/USPI agreement); *id.* ¶¶ 7, 61–66 (SCA/DaVita agreement); *id.* ¶¶ 8, 66–70 (DaVita/Doe 1 agreement).) Plaintiffs do not plead any facts to support their conclusory assertion of an "ongoing" conspiracy among Defendants today. (*Id.* ¶ 118.)

And even if Defendants' conduct were "ongoing," Plaintiffs have not alleged they face a threat of immediate harm from that conduct. Plaintiffs are not currently employed by any Defendant; they left SCA in 2012 and 2013, respectively, and do not allege that they have been

---

6    By extension then, Plaintiffs could not represent a putative Rule 23(b)(2) class seeking such relief. *See McNair v. Synapse Grp., Inc.*, 672 F.3d 213, 227 (3d Cir. 2012) ("Because [plaintiffs] lack Article III standing to seek injunctive relief, the District Court was obliged to deny class certification under Rule 23(b)(2)."); *Brown v. Cty. of Cook*, 549 F. Supp. 2d 1026, 1032 (N.D. Ill. 2008) ("Rule 23(b)(2) is knocked out of contention . . . by Brown's lack of standing to assert a claim for injunctive relief," since "Rule 23(b)(2) 'does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages.'" (internal citation omitted)).

employed by another Defendant in the years since. (*Id.* ¶¶ 17–18.) Nor have they pled that they plan to work for any Defendant in the future.

Because Plaintiffs are not presently subject to—nor at risk of being subjected to—any alleged non-solicitation agreement among these Defendants, they lack standing to enjoin Defendants' conduct. *See Fuentes v. Royal Dutch Shell PLC*, No. 18-5174, 2019 WL 7584654 (E.D. Pa. Nov. 25, 2019) (dismissing a former employee's request to enjoin a no-hire agreement to which he was no longer subject); *McNair*, 672 F.3d at 224 (former customers lacked standing to seek injunctive relief since they were "not currently subject to [defendant's] allegedly deceptive techniques for obtaining subscription renewals"); *Brown*, 549 F. Supp. 2d at 1032 (former employees lacked standing to seek injunctive relief to enjoin defendants from engaging in certain employment practices to which they were not subject). Accordingly, Plaintiffs' request for injunctive relief should be dismissed for lack of standing.

### 2. Plaintiffs Fail to Plausibly Allege A Past Injury That Would Provide Standing to Seek Monetary Relief.

Plaintiffs also fail to allege facts sufficient to show that they suffered an actual injury to establish their standing to seek monetary relief. The Supreme Court has made clear that standing must be particularized, meaning the alleged "injury must affect the plaintiff in a personal and individual way." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992). And it must be concrete—that is, "real, and not abstract." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). For standing to exist here, Plaintiffs must allege particular facts illustrating that the alleged misconduct reduced *their* wages. And "[t]hose allegations—the factual predicates of the injury-in-fact's particularity requirement—will depend on the application of [several] variables to [Plaintiffs'] individualized . . . circumstances." *Access Living of Metro Chicago v. Uber Tech.*, 958 F.3d 604, 615 (7th Cir. 2020). Yet Plaintiffs have "not offered any facts to show that the

agreement[s] precipitated any specific wage or opportunity loss to [them]" to invoke this Court's jurisdiction. *Ogden v. Little Caesar Enterprises, Inc.*, 393 F. Supp. 3d 622, 638 (E.D. Mich. 2019).

Plaintiffs do not plead *any* specific facts regarding Plaintiffs' compensation, compensation at SCA more generally, or how compensation changed or decreased after SCA allegedly entered into the non-solicitation agreements. Nor can they. Take Mr. Spradling, for example. The Complaint alleges that Mr. Spradling was SCA's former IT Director, (Compl. ¶ 18), but what indirect effect (if any) the non-solicitation agreements could have had on Mr. Spradling's wages is far from clear. Although the Complaint generally alleges that there is "high demand for and limited supply of employees with experience or skills relevant to outpatient medical care facilities," (*id.* ¶ 74), the Complaint fails to tether this general observation to the named Plaintiffs specifically, *e.g.*, by alleging that IT directors like Mr. Spradling are in "high demand" and "limited supply." At most, the Complaint vaguely alleges that the non-solicitation agreements indirectly suppressed the wages of all Defendants' employees. (*Id.* ¶ 10.) But this conclusory allegation does not suffice for particularized allegations that Plaintiffs were actually injured by Defendants' alleged misconduct. *See Warth v. Seldin*, 422 U.S. 490, 508 (1975); *Access Living of Metro Chicago*, 958 F.3d at 614 (observing that the fact that a complaint may "articulat[e] a legal theory . . . is not the same as advancing an allegation of [] harm with the particularity—the individualization—demanded by Article III"). Nor does the Complaint anywhere allege that Mr. Spradling or Mr. Keech were passed over for an employment opportunity, for which they otherwise would have been qualified, as a result of the alleged non-solicitation agreements.

Absent more particularized allegations of fact, Plaintiffs have not pled that they were actually injured by Defendants. Because "Article III does not give federal courts the power to

order relief to any uninjured plaintiff, class action or not," *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016) (Roberts, C.J., concurring), Plaintiffs' claim must be dismissed.

### B. Plaintiffs Fail to Plausibly Allege an Injury That Is "Fairly Traceable" to the Alleged Non-Solicitation Agreements.

Plaintiffs also do not plead facts sufficient to plausibly allege that any injury they may have suffered or might suffer is "fairly traceable" to Defendants' conduct. Plaintiffs' theory of harm is little "more than an ingenious academic exercise in the conceivable." *United States v. Students Challenging Regul. Agency Procedures*, 412 U.S. 699, 688–89 (1973).[7] Plaintiffs offer generic allegations concerning the conduct and the effect that "firms" in the "outpatient medical care and healthcare industry" could have on the market for outpatient medical care industry employees. Allegations specific to Defendants, however, are limited to Plaintiffs' observations that Defendants are "among" the "largest employers in the outpatient medical care industry" and that healthcare industry experience is a preferred qualification for some positions. (Compl. ¶¶ 73, 75.) The Complaint offers no facts to suggest an actual effect on the labor market—such as specific facts about actual wage stagnation following the alleged conspiracy's inception—or Defendants' market power to effect such an impact. *Cf. Ulrich v. Moody's Corp.*, No. 13 Civ. 0008 (VSB)(MHD), 2014 WL 12776746, at *27 (S.D.N.Y. Mar. 31, 2014) (finding plaintiff failed to support his assertion that a no-hire agreement generally harmed competition for analyst jobs and wages "with any facts" to "plausibly show that this agreement, if it exists, has had an actual negative effect on analyst compensation and mobility").

---

[7]    Indeed, it appears that Plaintiffs merely lifted these allegations from the complaint in *In re Railway Industry Employee No-Poach Antitrust Litigation*, and replaced any reference to the "railway" industry with references to the "outpatient medical care" industry. *Compare* Plfs' Compl. ¶¶ 71–92, *with* Consol. Class Action Compl., Dkt. 88, ¶¶ 29–40, *with* Consol. Am. Compl., Dkt. 201, ¶¶ 56–68, *In re Railway Indus. Employee No-Poach Antitrust Litig.*, No. 18-798 (W.D. Pa.).

Plaintiffs also do not adequately allege causation because they rely on a "chain of contingencies [] which amounts to mere speculation." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013); *see Finkelman v. Nat'l Football League*, 810 F.3d 187, 193–94 (3d Cir. 2016). The Complaint generically asserts that "companies" foster "internal and external equity by maintaining formal compensation systems that restrict discretionary pay decisions and focus on more objective criteria such as job descriptions and classifications . . . and other factors" to determine wages. (Compl. ¶ 88.) Plaintiffs allege no facts concerning *Defendants*' compensation systems (or even how their own compensation was determined), and yet they conclude that, "[b]ecause of such formal systems," "Defendants' no-poach agreements would have affected the proposed Class as a whole, and not just individual employees who would have otherwise received job offers." (*Id.* ¶ 90.) This bare speculation—unsupported by any well-pled facts—cannot sustain Plaintiffs' obligation to plead an injury that is fairly traceable to Defendants' alleged conduct.

Plaintiffs must—but fail to—"allege facts from which it reasonably could be inferred that, absent the [alleged non-solicitation agreements], there is a substantial probability that they would have" received higher wages. *Warth*, 422 U.S. at 504. For this reason as well, Plaintiffs' claim should be dismissed for lack of standing.

## C. Plaintiffs Have Not Alleged Facts Showing Defendants' Conduct Was A "Proximate Cause" of Any Injury.

To assert a private antitrust claim under the Clayton Act, Plaintiffs must show that Defendants' conduct was a proximate cause of their injury. *See Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.*, 902 F.3d 735, 743 (7th Cir. 2018); *see also Holmes v. Securities Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992) ("[A] plaintiff's right to sue under § 4 require[s] a showing that the defendant's violation not only was a 'but for' cause of his injury, but was the proximate cause as well."). Therefore, to the extent that Plaintiffs have not alleged sufficient facts to establish

causation under Article III, Plaintiffs have also failed to plead proximate causation as is necessary to state a claim under Section 1 of the Sherman Act. *See, e.g., Ogden*, 393 F. Supp. 3d at 638 (complaint failed to plead any facts showing that the plaintiff was "subjected to any consequences" of a franchise no-hire agreement); *cf. Roman v. Cessna Aircraft Co*., 55 F.3d 542, 543–44 (10th Cir. 1995) (plaintiff alleged that no-hire agreement was the reason plaintiff was not hired); *Cesnik v. Chrysler Corp.*, 490 F. Supp. 859, 864 (M.D. Tenn. 1980) (defendants' alleged agreement "deprived [plaintiffs] of a realistic employment opportunity").

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court dismiss the Complaint in its entirety.

Dated:  October 18, 2021

Respectfully submitted,

*/s/ Daniel E. Laytin*

Daniel E. Laytin, P.C.
James H. Mutchnik, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000
dlaytin@kirkland.com
jmutchnik@kirkland.com

Catie Ventura
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 389-5000
catie.ventura@kirkland.com

*Attorneys for Defendants Surgical Care Affiliates, LLC, SCAI Holdings, LLC, and UnitedHealth Group Incorporated*

/s/ Romeo S. Quinto, Jr.

Romeo S. Quinto, Jr.
Latiera J. Scott-Johnson
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive
Chicago, IL 60606
Telephone: +1.312.324.1000
Facsimile: +1.312.324.1001
romeo.quinto@morganlewis.com
latiera.rayford@morganlewis.com

Molly Moriarty Lane (*pro hac* vice)
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone: +1.415.442.1000
Facsimile: +1.415.442.1001
molly.lane@morganlewis.com

Megan R. Whisler (*pro hac* vice)
MORGAN, LEWIS & BOCKIUS LLP
1717 Main Street, Suite 3200
Dallas, TX 75201
Telephone: +1.214.466.4000
Facsimile: +1.214.466.4001
megan.whisler@morganlewis.com

*Attorneys for Defendant DaVita Inc.*

/s/ Terrence J. Dee

Terrence J. Dee, P.C.
Katharine M. O'Connor
MCDERMOTT WILL & EMERY LLP
444 West Lake Street, Suite 4000
Chicago, IL 60606
Telephone: (312) 372-2000
Fax: (312) 984-7700
tdee@mwe.com
koconnor@mwe.com

Justin P. Murphy (*pro hac vice*)
McDermott Will & Emery LLP
The McDermott Building
500 N. Capitol Street, NW
Washington, DC 20001
Telephone: (202) 756-8018
jmurphy@mwe.com

*Attorneys for Defendant Kent Thiry*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 18, 2021, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Daniel E. Laytin
Daniel E. Laytin, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000
dlaytin@kirkland.com