# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE OUTPATIENT MEDICAL CENTER EMPLOYEE ANTITRUST LITIGATION | Master Docket No. 1:21-cv-00305 |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

# DAVITA INC. AND KENT THIRY'S REPLY IN SUPPORT OF DEFENDANTS' SUPPLEMENTAL MOTION TO DISMISS

## I. INTRODUCTION

Plaintiffs' Opposition [DE 86] to the Supplemental Motion to Dismiss ("Motion") [DE 80] filed by DaVita and Mr. Thiry (together, the "DaVita Defendants") reflects a fundamental misunderstanding of Plaintiffs' obligations to allege facts that plausibly show (1) that Plaintiffs were personally injured by the DaVita Defendants' alleged misconduct to support Plaintiffs' standing to pursue claims against the DaVita Defendants and (2) that the DaVita Defendants had any agreement with Doe 1 to support an antitrust claim under § 1 of the Sherman Act.

## II. ARGUMENT

### A. Plaintiffs Fail to Plead an Injury Traceable to the DaVita Defendants.

Plaintiffs do not identify any pre-2014 conduct by the DaVita Defendants that could have personally harmed them before they left SCA's employment. Plaintiffs instead argue: (1) that the DaVita Defendants are liable for "the overarching conspiracy, which started in 2010" (at 32); (2) that Plaintiffs should be excused from adequately pleading facts establishing their standing (at 31); and (3) "ripple effects" of the alleged 2017 DaVita-Doe 1 agreement could have harmed SCA employees (at 33). Each lacks merit. Plaintiffs' claims should be dismissed for lack of standing.

To start, the Complaint's "conclusory and bare bones" allegations of an overarching conspiracy do not plausibly plead Plaintiffs' standing to seek relief. *See Perez v. Nidek Co.*, 711 F.3d 1109, 1113 (9th Cir. 2013) (rejecting similar allegations as an attempt by plaintiff to sidestep the traceability requirement for Article III standing). "Although every conspirator is responsible for others' acts within the scope of the agreement, it remains essential to show that a particular defendant joined the conspiracy and knew of its scope." *Bank of Am. N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). The Complaint alleges that DaVita entered into an agreement with SCA, but does not allege any facts that plausibly suggest that the DaVita Defendants were aware of, and intended to join, any "overarching conspiracy" with USPI. In fact, the Complaint does not allege

*any* conduct by the DaVita Defendants prior to 2014 that could have injured Plaintiffs.

As for the alleged DaVita-SCA agreement, the Opposition contends that an agreement existed prior to 2014, but—like the Complaint—it offers no factual support for that assertion. Plaintiffs argue (at 31) that their allegation that the DaVita-SCA agreement began "as early as 2012" is "consistent with the DOJ indictments" (which are not subject to civil pleading standards), but that makes it no less conclusory. In the cases cited by Plaintiffs (at 31 & n.23), those plaintiffs provided factual support for their allegations concerning the conspiracy's commencement.[1] Indeed, in one case, the plaintiffs included "ample specific allegations covering the years 2002 through 2008," but the court concluded that they failed to "adequately plead a conspiracy operating during 2000 or 2001" because they "identifie[d] no specific meetings in either 2000 or 2001, alleging only in a conclusory fashion that meetings occurred in those years." *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-cv-2420, 2014 WL 309192, at *11–12 (N.D. Cal. Jan. 21, 2014). Likewise, Plaintiffs include allegations for 2014 to 2017, but fail to plead any conduct by the DaVita Defendants prior to 2014 that could have harmed them in a personal and individual way.

Implicitly conceding this failing, Plaintiffs ask the Court (at 32) to relieve them of their burden to plead facts to support their standing, arguing that the scope of the alleged DaVita-SCA agreement should be "resolved after discovery, not on the pleadings."[2] But that argument ignores Article III's jurisdictional limitations. That Plaintiffs must plead facts in support of their standing

---

[1] *See In re Aftermarket Filters Antitrust Litig.*, No. 08-cv-4833, 2009 WL 3754041, at *2 (N.D. Ill. Nov. 5, 2009) (alleged 1999 agreement was supported by allegations concerning 1999 meeting); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179, 1185 (N.D. Cal. 2009) (alleged 1996 agreement was supported by allegations concerning meetings and conversations dating back to 1996); *In re Fasteners Antitrust Litig.*, No. 08-cv-1912, 2011 WL 3563989, at *1 (E.D. Pa. Aug. 12, 2011) (alleged 1991 conspiracy was supported by allegations that, "beginning in 1991, senior management of [the defendants] convened in 'work circles'" and "attempted to distort competition").

[2] Plaintiffs also confuse their burden to plead facts supportive of their *standing* to seek relief against the DaVita Defendants—that is, that Plaintiffs have suffered a personal injury traceable to some alleged misconduct by the DaVita Defendants—with their burden to plead facts to support a *claim* against the DaVita Defendants for joint-and-several liability. *See* Opp. at 31–32. Those inquiries (although governed by a similar "plausibility" standard) are distinct. *See Silha v. ACT, Inc.*, 807 F.3d 169, 173–74 (7th Cir. 2015).

is a "bedrock requirement" that cannot be excused. *Raines v. Byrd*, 521 U.S. 811, 818 (1997).

Plaintiffs also have not pled any personal injury from the alleged 2017 agreement between DaVita and Doe 1 to support their standing to seek relief. Even assuming the Complaint alleged "ripple effects" from that purported agreement (and it does not), Plaintiffs were not among the SCA employees injured since Plaintiffs departed SCA years before that alleged 2017 agreement.

### B.     Plaintiffs Fail to Plead Any Agreement Between DaVita and Doe 1.

Plaintiffs do not identify any facts that plausibly suggest that DaVita entered into any agreement with Doe 1 to support an antitrust claim.[3] Paragraph 46's conclusory allegations say nothing about whether these parties entered into an agreement. Plaintiffs argue (at 33) that one should be inferred because there is no "evident reason" why Doe 1 would refrain from poaching DaVita's employees without a "reciprocal guarantee." But the burden is on Plaintiffs to *plead facts* plausibly showing that an agreement existed—not to speculate—and the Complaint facially indicates a reason for Doe 1's unilateral decision not to poach DaVita employees: the parties' relationships. *See* Compl. ¶¶ 68–69. Unlike here, the *In re Animation Workers* complaint included allegations of an email that explicitly referred to Pixar's "gentleman's agreement" with Blue Sky to support that alleged agreement. 123 F. Supp. 3d 1175, 1182–83, 1209 (N.D. Cal. 2015).

### III.    CONCLUSION

The Court should grant the Motion and dismiss the claims against the DaVita Defendants.

---

[3] The Government's Statement of Interest [DE 91 at 13, 15] acknowledges that Plaintiffs must plead facts that plausibly suggest that the DaVita Defendants reached an "agreement" with Doe 1. But the texts and emails alleged only reflect Doe 1's decision not to solicit DaVita's employees; they do not reflect any "agreement" *by the DaVita Defendants* to a "common scheme." *See Alarm Detection Sys., Inc. v. Village of Schaumburg*, 930 F.3d 812, 828 (7th Cir. 2019) ("communications . . . [that] are consistent with a conspiracy" are "not enough under *Twombly*" to allege an antitrust claim). And, unlike the alleged agreement with SCA, Plaintiffs do not plead that DaVita refrained from soliciting Doe 1's employees as a basis to *infer* an agreement between the parties. The Government (at 14–15) misconstrues this latter point to suggest that the DaVita Defendants are requiring Plaintiffs to plead a particular *kind* of agreement (a "quid pro quo" or bilateral commitment). That is incorrect. What Plaintiffs fail to do is plausibly plead that Doe 1's conduct was the product of *any* agreement between the parties (*quid pro quo* or otherwise), as opposed to an "independent decision" by Doe 1 based on the parties' relationship. Even a plaintiff who alleges a "one-sided bid-rigging agreement" must plead facts that plausibly suggest that the parties acted "based on an agreement."

Dated: January 3, 2022                           Respectfully submitted,

                                              By: */s/ Romeo S. Quinto, Jr.*

Romeo S. Quinto, Jr.
Romeo.quinto@morganlewis.com
Latiera J. Scott-Johnson
latiera.rayford@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive
Chicago, IL 60606
Telephone: +1.312.324.1000
Facsimile: +1.312.324.1001

Molly Moriarty Lane (*pro hac vice*)
molly.lane@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
One Market
Spear Street Tower
San Francisco, CA 94105-1596
Telephone: +1.415.442.1000
Facsimile: +1.415.442.1001

Megan R. Whisler (*pro hac vice*)
megan.whisler@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1717 Main Street, Suite 3200
Dallas, TX 75201
Telephone: +1.214.466.4000
Facsimile: +1.214.466.4001

*Counsel for Defendant DaVita Inc.*

Respectfully submitted,

By: */s/ Jeffrey E. Stone*

Jeffrey E. Stone
Katharine M. O'Connor
MCDERMOTT WILL & EMERY LLP
444 West Lake Street, Suite 4000
Chicago, IL 60606
Telephone: (312) 372-2000
Fax: (312) 984-7700
jstone@mwe.com
koconnor@mwe.com

Justin P. Murphy (*pro hac vice*)
MCDERMOTT WILL & EMERY LLP
The McDermott Building
500 N. Capitol Street, NW
Washington, DC 20001
Telephone: (202) 756-8018
jmurphy@mwe.com

*Counsel for Defendant Kent Thiry*

## CERTIFICATE OF SERVICE

I hereby certify that on January 3, 2022, I caused a true and correct copy of the foregoing document to be served on all counsel of record by email through the Court's CM/ECF system.

By: */s/ Romeo S. Quinto, Jr.*
     Romeo S. Quinto, Jr.