**UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE OUTPATIENT MEDICAL CENTER EMPLOYEE ANTITRUST LITIGATION | Master Docket No. 1:21-cv-00305 |
| | Judge Andrea R. Wood |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

## PLAINTIFFS' MOTION TO MODIFY THE DISCOVERY STAY

Plaintiffs hereby submit this Motion to Modify the Discovery Stay and request that this motion be heard by telephonic hearing. Plaintiffs have met and conferred with USPI and Tenet, who take no position on this motion. Plaintiffs, the other Defendants, and the DOJ, have a meet and confer scheduled for 11:30 a.m. Eastern on July 28, 2022 to discuss a briefing schedule.

## I. INTRODUCTION

When the Department of Justice ("DOJ") first intervened in this case for the purpose of seeking a total stay of discovery, the DOJ argued for a stay for a limited period of six months to avoid various concerns that arise from litigating related civil and criminal cases simultaneously. *See* ECF No. 30. The DOJ also argued that a stay would "streamline" the delayed civil case and "significantly enhance judicial economy." *Id.* at 10.

But now, more than a year after the initial stay was granted and after the criminal prosecution of DaVita ended in an acquittal, the basic justifications for a broad stay are no longer applicable, as the DOJ now agrees. The landscape has changed, and the balance of interests has shifted sharply. Now that DaVita and Kent Thiry, its CEO, are no longer subject to criminal

prosecution, a discovery stay with respect to DaVita is no longer justified. Similarly, Defendants USPI and Tenet are not under criminal indictment and have not indicated support for a stay. They have indicated willingness to meet and confer and otherwise participate in discovery.

Discovery with respect to Defendant Surgical Care Affiliates ("SCA") should also proceed. The DOJ's latest motion to modify the stay acknowledges that the basis for the stay is no longer present. ECF No. 137 at 2. The DOJ sought modification permitting document discovery from all Defendants, including SCA, subject to two carve outs, related to the criminal trials of DaVita and SCA.[1] Plaintiffs agree that, at a minimum, document discovery should be allowed to proceed. Plaintiffs agree that document discovery will have no impact on the SCA criminal case. Plaintiffs agree that depositions of SCA should remain stayed until the time of the SCA trial.

But Plaintiffs disagree that the DOJ proposed carve-outs are warranted. The carve-outs are not justified under Federal Rule of Criminal Procedure 6(e), which provides secrecy only with respect to specified individuals involved in the grand jury process and, further, are contrary to the interests of efficiency. In addition, in light of the Court's recent order allowing Defendants to return or destroy documents in their possession they received from the DOJ, ECF No. 151, Plaintiffs should be entitled to commence the subpoena process to obtain those documents from the DOJ. Continuing to allow Defendants to prepare their defense of the civil case through the analysis of the millions of relevant documents produced to Defendants by the government in the criminal case without allowing Plaintiffs the same access continues to prejudice Plaintiffs

---

[1] While agreeing that document discovery should proceed generally, the DOJ proposed that the stay continue with respect to requests that seek (1) "documents produced to the grand jury," and (2) "documents produced by the United States during criminal discovery". ECF No. 137 at 4–5.

without justification. To the extent the DOJ believes it is entitled to withhold these documents from Plaintiffs, the DOJ can protect its own interests through the normal subpoena process.

Considering DaVita's trial acquittal, in which the government presented substantial evidence of a conspiracy between DaVita and SCA, Plaintiffs' civil litigation is the sole means to bring justice and recompense to all victims of Defendants' unlawful conduct. To do so, Plaintiffs should have the opportunity to build their case from the documents in Defendants' possession, and from the documents that were in Defendants' possession before being returned to the DOJ. Document discovery, which can no longer be justifiably stayed, should commence.

## II.    BACKGROUND

Between January 19 and February 10, 2021, Plaintiffs filed three civil class actions: *Roe v. Surgical Care Affiliates, LLC*, et al., 1:21-cv-305 (N.D. Ill. Jan. 19, 2021); *Smith v. Surgical Care Affiliates, LLC*, et al., 1:21-cv-620 (N.D. Ill. Feb. 3, 2021); and *Keech v. Surgical Care Affiliates, LLC, et al.*, 1:21-cv-741 (N.D. Ill. Feb. 10, 2021). These cases were consolidated on May 17, 2021 under the Docket No. 1:21-cv-305. ECF No. 47 (collectively, the "civil action" or "civil case"). By the Consolidated Complaint, Plaintiffs bring claims for damages against Defendants Surgical Care Affiliates, LLC, SCA Holdings, LLC, SCAI Holdings, LLC, Andrew Hayek, UnitedHealth Group, Inc. (collectively "SCA" or "SCA Defendants"), United Surgical Partners Holding Company, Inc., United Surgical Partners International, Inc. (collectively "USPI"), Tenet Healthcare Corporation ("Tenet"), DaVita, Inc. ("DaVita"), Kent Thiry ("Thiry"). The claims for damages arise from Defendants' no-poach agreements with each other,

which are also the subject of criminal proceedings against Defendant Surgical Care Affiliates,[2] and which were the subject of the trial against Defendants DaVita and Thiry.

On March 12, 2021, the United States moved to intervene in the civil action, seeking to stay the civil litigation until the SCA criminal action was complete. ECF No. 30. Plaintiffs opposed the stay of discovery. ECF No. 36. On May 17, 2021, the Court granted the motion to stay discovery, permitting discovery requests only to preserve the status quo and to ensure that relevant evidence would be preserved. ECF No. 47.

On August 2, 2021, the parties and the DOJ agreed to modify the discovery stay in very limited respects. Through a Joint Status Report, the parties and the DOJ presented an agreement to allow discovery of four categories of documents: "(1) Defendants' structured employee data; (2) Defendants' organizational charts; (3) personnel files and similar documents regarding the named plaintiffs from Plaintiffs' and Defendants' files; and (4) documents related to Defendants' and Plaintiffs' preservation efforts and litigation holds." ECF No. 55 at 1. On October 12, 2021, the Court lifted the discovery stay as to the four agreed-upon categories. ECF No. 73.

On November 30, 2021, the DOJ moved to extend the discovery stay for an additional six months, through May 31, 2022. The DOJ's request to extend the stay sought an extension until May 2022, when both the SCA and DaVita criminal actions were to be complete. ECF No. 85. On December 15, 2021, the court granted the DOJ's motion to extend the stay until May 31, 2022. On April 15, 2022, The DaVita criminal action concluded. *See United States v. DaVita, Inc. et al.*, No. 21-cr-229 (D. Colo.), ECF No. 264. The jury returned a verdict of not guilty. *Id.*

---

[2] *United States v. Surgical Care Affiliates, LLC, et al.*, 3:21-cr-11-L, ECF No. 1 (N.D. Tex. Jan. 5, 2021) ("SCA criminal action").

On May 20, 2022, the parties filed a Joint Status Report setting forth the parties' positions on the stay. ECF No. 137. The DOJ moved to lift the stay with respect to document discovery, except for two carve-outs: (a) document requests that seek "all documents produced to the grand jury," and (b) document requests "for documents produced by the United States during criminal discovery." *Id*. at 4–5. The DOJ sought to continue the stay until January 2023, when the SCA case is scheduled to conclude. *Id.* The DOJ's motion also sought to permit some limited depositions on seven narrow topics. *Id*.

The Plaintiffs did not oppose the United States' motion to modify and extend the stay. *Id.* at 7. Plaintiffs reserved their rights to move to further modify or lift the stay as circumstances warrant and disagreed with the DOJ's position on documents it produced during DaVita's criminal trial. *Id.* At the status conference on June 1, 2022, Plaintiffs moved orally to modify the stay as proposed by the DOJ. *See* Saveri Decl. Ex. A [Tr. Hr'g 6/1/2022] at 39:23–41:13. Defendants USPI and Tenet took no position on modifying the stay. ECF No. 137 at 11. Defendants SCA, Hayek, DaVita, and Thiry opposed any modification of the stay. *Id.* at 20. The Court has not ruled on the United States and Plaintiffs' motions.

### III.   ARGUMENT

Good cause exists to lift the discovery stay with respect to document productions. The stay has now been in place for more than a year. The DaVita criminal action is over, which completely undermines the basis for the stay with respect to DaVita and Thiry. Only SCA faces ongoing criminal litigation. The DOJ has taken the position that the stay can be lifted, and that the criminal materials should be obtained from the DOJ, thus affording protection regarding the confidentiality of those materials. ECF No. 137 at 5. The civil action has not been streamlined by the criminal cases. It has been significantly delayed, prejudicing Plaintiffs.

The DOJ and Defendants have repeatedly claimed that Plaintiffs are not injured by a stay. This is wrong. The prejudice to Plaintiffs is real and substantial, further increasing as more time passes. First, regardless of a preservation order, the passage of time invariably diminishes available evidence in several ways. Memories fade. Employees relocate and change jobs. Witnesses become unavailable. *See Clinton v. Jones*, 520 U.S. 681, 707-08 (1997) ("[D]elaying trial would increase the danger of prejudice resulting from the loss of evidence, including the inability of witnesses to recall specific facts, or the possible death of a party."); *New York v. Hill*, 528 U.S. 110, 117 (2000) ("Delay can lead to a less accurate outcome as witnesses become unavailable and memories fade."); *Costantino v. City of Atlantic City*, No. 13-6667, 2015WL 668161, at *4 (D.N.J. Feb. 17, 2015) (a delay in plaintiffs' efforts to diligently proceed with their claims substantially prejudices plaintiffs). It is Plaintiffs burden to prove their claims with evidence. That burden is hindered by delay, inevitably hurting Plaintiffs' ability to build their case. *See Jackson v. Denver Water Bd.*, No. 08-cv-01984, 2008 WL 5233787, at *1 (D. Colo. Dec. 15, 2008) (staying case could result in delay and attendant "adverse consequences such as a decrease in evidentiary quality and witness availability").

Second, while the stay remains, Defendants have had and will have the ability to prepare their defense, having gathered evidence from the criminal actions. Yet Plaintiffs remain barred. By January 2023, Defendants will have had use of the relevant materials for over two years before Plaintiffs get a chance at meaningful discovery and to view the same information. While DaVita and Thiry returned documents they received from the DOJ, they are entitled to keep work product summarizing those documents. This advantage is significant, unfair and unjustified. Indeed, while Plaintiffs' efforts to take discovery have been stymied, Defendants have not faced the same limitations. Plaintiffs have already completed production in response to Defendants'

document requests. Plaintiffs have even run search terms through their ESI and produced documents to Defendants as a result. Yet, Defendants have not even started that process for their documents, and refuse to do so, based on the stay. *See* ECF No. 155 at 4. The asymmetry here is unfair and prejudicial. *See In re Cement-Concrete Block, Chicago Area*, 381 F. Supp. 1108, 1111 (N.D. Ill. 1974) ("It seems to the court highly inequitable and adverse to the principles of federal discovery to allow the defendants in a civil suit access to grand jury transcripts but not the plaintiffs.").

Third, the continued stay will cause case management problems, resulting in inefficiency, delay and additional costs to the litigants and the court. *See Roueche v. United States*, No. 09-cv-00048-WDM-BNB, 2010 WL 420040, at *2 (D. Colo. Feb. 1, 2010) (noting "the general interests of controlling the court's docket and the fair and speedy administration of justice"); *Simpson v. Specialty Retail Concepts, Inc.,* 121 F.R.D. 261, 263 (M.D.N.C. 1988) (noting that motions to stay "are not favored because when discovery is delayed or prolonged it can create case management problems which impede the Court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems"). Finally, Plaintiffs were injured by Defendants' unlawful conduct. The passage of time delays justice and delays the recompense that Plaintiffs are due.

Plaintiffs recognize, however, that the government's ongoing criminal action against SCA is a basis to continue the stay of depositions with respect to the SCA Defendants. Although that justification applies only to SCA, Plaintiffs do not seek to lift the stay for depositions.

**A.    The Stay of Document Discovery Should Be Lifted Under the Applicable Factors.**

As the DOJ explained in its initial motion to stay discovery, ECF No. 30, and as Plaintiffs confirmed in their opposition to that motion, ECF No. 36, courts have identified several factors

to consider in granting, lifting, or modifying a discovery stay. *See, e.g.*, *Cruz v. City of Chicago*, 2011 WL 613561, at \*2 (N.D. Ill. Feb. 15, 2011). Now that the underlying circumstances have changed, the factors tip sharply in favor of lifting the stay. Since DaVita's criminal action has concluded, there is no longer justification for continuing the stay with respect to DaVita.

So too with respect to SCA. The DaVita criminal trial featured SCA documents and witnesses heavily because the proof involved the criminal conspiracy between DaVita and SCA. Indeed, the DOJ no longer objects to lifting the stay on document discovery while the SCA criminal action proceeds. Special protections can be put into place which will allow discovery to proceed while protecting SCA's interest, such as continuing to stay depositions until after the SCA criminal case. With that protection, no SCA witness would be required to choose between testifying on the merits and asserting Fifth Amendment rights. Moreover, lifting the stay entirely with respect to document discovery is the efficient approach. As SCA discussed during the June 1 hearing, the vast majority of relevant documents were already produced in the criminal action and can be quickly and easily reproduced to Plaintiffs. *See* Ex. A [Tr. Hr'g 6/1/22] at 9:2–6.

Judicial resources and overlap. In the DOJ's initial motion for a stay, the DOJ argued that a stay should be implemented, because "there is substantial overlap between the civil and criminal matters." ECF No. 30 at 10. The DOJ argued that a stay would promote "efficient use of judicial resources, because 'resolution of the related criminal matter may eliminate much of the Court's work in the civil action by simplifying the issues,' and prevents discovery from becoming 'bogged down' with 'a long series of Fifth Amendment assertions.'" *Id.* (quoting *United States v. All Meat v. Poultry Prods.*, 2003 WL 22284318, at \*5 (N.D. Ill. Oct. 3, 2003)). But now that the prosecution of DaVita has concluded, these arguments lack merit, particularly with respect to DaVita. For starters, there is no longer any overlap between the civil and criminal

matters against DaVita, because there is no longer any criminal matter against DaVita at all. Nor can document discovery into any party get bogged down with "a long series of Fifth Amendment assertions," since document discovery requires no testimony. Unfortunately, the conjecture that the criminal trial against DaVita would "streamline [this] Court's workload and significantly enhance judicial economy," ECF No. 30 at 10, turned out to be incorrect. Nothing from the criminal case has streamlined any issues or discovery in this case. Plaintiffs' efforts to obtain the documents produced in the criminal case were rebuffed. Plaintiffs' civil litigation is now the only means by which the public, Plaintiffs, and the proposed class can achieve justice and recompense for DaVita's unlawful conduct.

The public interest. The DOJ initially asked this court to stay discovery because "the public [] has an interest in allowing the criminal proceeding to proceed unimpaired." ECF No. 30 at 8. The DOJ argued that "civil discovery requests would likely identify potential witnesses who are anticipated to testify during the criminal trial." *Id.* That concern has evaporated with respect to DaVita. There is no longer any public interest in continuing to shield DaVita from civil discovery and delay justice to the victims of DaVita's unlawful conduct. There is a strong countervailing interest in victims of illegal anticompetitive conduct obtaining redress for their injuries and an equally strong interest in the speedy and efficient resolution of civil disputes. Those interests should no longer be subordinated.

The public interest in the criminal case against SCA will not be undercut by lifting the stay for document discovery, as the DOJ has confirmed. *See* ECF No. 137 at 2 (modification of stay to allow document discovery except for the two carve-outs "will protect the public's interest in the integrity of the criminal prosecution and ongoing investigation"). Document discovery between the parties, including SCA, will not have an impact on the SCA criminal action.

9

Plaintiffs' interest in proceeding expeditiously. Plaintiffs and the public interest have a strong interest in proceeding expeditiously to obtain redress. *See* ECF No. 36 at 11–12; *Clinton*, 520 U.S. at 707–08; *New York*, 528 U.S. at 117; *Costantino*, 2015 WL 668161, at *3. To date, that interest has been subordinated. Further, that the conduct gives rise to criminal proceedings does not diminish that interest; it enhances it. *Jacksonville Savs. Bank v. Kovack*, 326 Ill.App.3d 1131, 1136 (2002) (affirming denial of stay because "[i]t would be perverse if plaintiffs who claim to be the victims of criminal activity were relegated to receive slower justice than other plaintiffs simply because the behavior they allege is egregious enough to attract the attention of criminal authorities").

Indeed, Plaintiffs' interest in proceeding expeditiously is now stronger than before. First, the DOJ initially sought a stay of discovery for only nine months, until the SCA criminal action was complete. ECF No. 30. But nine months have stretched to almost two years. The SCA criminal trial is set for January 9, 2023. And there is no clear end in sight. The trial may be further postponed. In fact, the DOJ has indicated that even the conclusion of SCA's criminal trial may not be the end of the stay. *See, e.g.*, ECF No. 30 at 1 ("The United States further moves for an initial nine-month stay of this case . . . to protect the United States' ongoing criminal investigation."). Now that the criminal prosecution against the DaVita defendants has ended, the only way that the victims of DaVita's unlawful conduct will secure justice and recompense is through this civil litigation. Yet as time passes, evidence disappears and memories fade. *See Glover v. Upmann,* No. 19-cv-03738, 2020 WL 1433801, at *3 (N.D. Ill. Mar. 24, 2020) ("Defendants do not consider that if discovery is stayed, there is a risk that evidence disappears and memories fade."). This is true even if the preservation obligations were ironclad.

The public interest is further undercut by the fact that the stay has strongly favored Defendants. While Defendants have had full access to all the documents produced in the criminal actions, Plaintiffs still remain completely shut out from being able to examine and analyze the same evidence to support their claims.

There is little if any burden on Defendants. The DOJ argued that allowing discovery to proceed would "impose a burden on SCA in at least two significant respects." One, it would "force SCA to defend two cases simultaneously," and two, it would "force witnesses to choose between invoking their Fifth Amendment right against self-incrimination." ECF No. 30 at 14–15. Of course, there is no such burden on DaVita, USPI, or Tenet because there are no criminal actions against them. And as SCA admits, the burden of document discovery on SCA is minimal. *See* Ex. A [Tr. Hr'g. 6/1/22] at 9:2–6. SCA has already produced to the DOJ the "vast majority, if not all" of the responsive documents in this case, and SCA could easily produce them to Plaintiffs. Depositions will come later.

Whether the government is a party. The government has never been a party in the civil action, which has from the beginning weighed against a stay. *See Bank of Am. v. Veluchamy,* 2010 WL 1693108, at *5 (N.D. Ill. Apr. 26, 2010); *see also* ECF No. 30 at 11.

The posture of the criminal proceeding. The posture of the criminal proceeding is helpful to understand the specific concerns arising from litigating a civil and criminal case simultaneously. With respect to DaVita, there is no longer any criminal proceeding at all. With respect to SCA, document discovery will impose a minimal burden since SCA has already prepared and produced the responsive documents in the criminal proceeding.

B.   **The Stay Should Not Include: (1) "Documents Produced to the Grand Jury," and (2) "Documents Produced by the United States During Criminal Discovery."**

In the parties' prior Joint Status Report of May 20, 2022, the United States agreed to lift the stay in substantial part, stating that "document discovery in general may proceed," and that Defendants may produce "preexisting business records of defendants and third parties, including those that were produced to the grand jury." ECF No. 137 at 4. But the United States sought two carve-outs: (1) requests that specifically seek "all documents produced to the grand jury" or the like; and (2) "requests for documents produced by the United States during criminal discovery" *Id.* at 4–5. These two carve-outs are not justified.

Requests that seek "all documents produced to the grand jury." The DOJ seeks to continue the stay with respect to document requests that seek "all documents produced [by the Defendants] to the grand jury." ECF No. 137 at 4. The DOJ claims that this request would disclose information that "reveals the scope and direction of an ongoing investigation." *Id.* In support of its position, the DOJ cited to Federal Rule of Criminal Procedure 6(e), and *In re Grand Jury Matter*, 682 F.2d 61 (3d Cir. 1982). *Id.* But the DOJ's position lacks merit.

Under this carve-out, the DOJ has no objection to the underlying materials being produced. The DOJ limits its objection narrowly to specific wording of a request. The DOJ argues that preventing this specifically worded request would not preclude Plaintiffs from seeking the same underlying "business records of defendants and third parties, including those that were produced to the grand jury." *Id.* According to the DOJ, Plaintiffs must seek the same material through differently worded requests. *Id.* The DOJ's alleged concern is that Plaintiffs would learn what documents the grand jury sought.

This concern is exaggerated and off base. First, Plaintiffs sought this material as one RFP in a set of 54 requests. *See* Saveri Decl. Ex. B at RFP 1(c) [Plaintiffs' Second Set of RFPs to

Defendants]. Defendants' production in response will not enable Plaintiffs to figure out which documents were subpoenaed, much less which were part of the grand jury deliberations. *See In re Optical Disk Drive Antitrust Litig.*, 801 F.3d 1072, 1077 (9th Cir. 2015) ("Production of all material responsive to the subpoena . . . would not establish that any or all of those materials were ever presented to the grand jury, much less shed light on its inner workings.").

Second, even if Plaintiffs could decipher what documents were subpoenaed by the grand jury, it would not matter, because the government's concern is not protected by Rule 6(e). Tellingly, the government's previously cited authorities offer no support. *See* ECF No. 137 at 4. Rule 6(e) only requires secrecy from seven categories of people. Fed. R. Crim. P. 6(e)(2)(B). But those specified do not include witnesses or recipients of grand jury subpoenas like the Defendants here. Other than the seven categories not relevant here, the Rule states that "no obligation of secrecy may be imposed on any [other] person." Fed. R. Crim. P. 6(e)(2)(A). Indeed, Rule 6(e) prohibits imposing secrecy obligations here. For example, in *In re USA,* the court held that grand jury subpoenas issued to civil litigants were not protected by Rule 6(e). *No. 19-WR-10 (BAH)*, 2019 WL 4619698, at *5 (D.D.C. Aug. 6, 2019) (Rule 6(e) "prohibit[s] [] imposing secrecy obligations on any person other than specified in Rule 6(e)(2)(B)," including grand jury witnesses and subpoena recipients); *see also* Fed. R. Crim. P. 6(e) advisory committee's note ("[t]he rule does not impose any obligation of secrecy on witnesses."). The only case the government cited concerned grand jury transcripts sought to be disclosed from the government. *See Grand Jury Matter*, 682 F.2d at 63. It says nothing about civil litigants disclosing documents provided in response to a subpoena.[3]

---

[3] Plaintiffs are not seeking the grand jury subpoena itself or communications regarding the subpoena and they need not be disclosed.

Defendants have argued that these carve-outs make little sense from an efficiency standpoint. At the last status conference, SCA argued that the carve-outs were inefficient, because the scope of SCA's relevant documents in the civil case are largely identical to the production it made in the criminal case. *See* Ex. A [Tr. Hr'g. 6/1/22] at 9:2–6 ("[I]t's SCA's position that the vast majority, if not all, of the responsive documents in this case are in that set of materials that were previously produced to the government, but the government is objecting to us providing those documents in that format to the plaintiff.").

Plaintiffs have no interest in reinventing the wheel. The delay and expense of Plaintiffs being required to re-seek and Defendants having to search for and re-compile that which is already compiled in the form it was produced to the DOJ is wasteful and unnecessary. Indeed, to require the parties to engage in this duplicative effort would fly in the face of assertions that the criminal case would "streamline" the civil case and preserve judicial and party resources. ECF No. 30 at 10. The DOJ has no basis to object to requests seeking what Defendants already produced to the government but allow the same documents to be produced piecemeal through other requests. Nor should SCA complain of burden. Since the documents have already been produced to the government, SCA can easily re-produce those documents to Plaintiffs as SCA suggested. DaVita has no objection since it is not engaged in any criminal proceeding.

<u>"Document requests related to the United States criminal investigation."</u> The second carve-out the DOJ sought was for "document requests related to the United States' criminal investigation." ECF No. 137 at 2. The DOJ clarified that this was to prevent Plaintiffs from pursuing "requests for documents produced by the United States during criminal discovery." *Id.* at 4–5. But now that the Court has already allowed Defendants to return those materials back to the government, and ordered the government to preserve a complete set, ECF No. 151, there is

no possibility that Plaintiffs will ask Defendants to produce them. *Id*. Plaintiffs can only seek the DOJ-produced material from the DOJ itself. The DOJ can adequately protect its own interests with respect to its own documents through the subpoena process. There is thus no basis to stay subpoenas to the DOJ that seek this material.

Discovery in the criminal cases have aided the Defendants' defense in the civil litigation and has put Plaintiffs at a disadvantage. By staying discovery into the materials that the DOJ has already produced to the Defendants, the DOJ and the Defendants have thus far prevented Plaintiffs from achieving what discovery is largely meant to ensure: that all parties to the litigation are on an even playing field, with the relevant documents in all parties' possession. *See In re Cement-Concrete Block*, 381 F. Supp. at 1111 ("It seems to the court highly inequitable and adverse to the principles of federal discovery to allow the defendants in a civil suit access to grand jury transcripts but not the plaintiffs."). If the DOJ has a legitimate justification for refusing to produce this material to Plaintiffs, the DOJ can protect its own interests through the normal procedures and protections of discovery. Doing so will also allow Plaintiffs to present argument as to why the material should be produced when and if the specific issue becomes ripe, rather than implementing a blanket stay covering hypothetical requests.

## IV.    CONCLUSION

For the reasons stated above, Plaintiffs respectfully ask the Court to lift the discovery stay with respect to document discovery.

Dated: July 27, 2022               Respectfully submitted,

*/s/ Joseph R. Saveri*
Joseph R. Saveri *(Pro hac vice)*
Steven N. Williams *(Pro hac vice)*
David H. Seidel *(Pro hac vice)*
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, California 94108
Tel: (415) 500-6800
Fax: (415) 395-9940
Email: jsaveri@saverilawfirm.com
Email: swilliams@saverilawfirm.com
Email: dseidel@saverilawfirm.com

Dean M. Harvey (*pro hac vice*)
Nimish R. Desai (*pro hac vice*)
Lin Y. Chan (*pro hac vice*)
Michelle A. Lamy (*pro hac vice*)
Sarah Zandi (*pro hac vice* pending)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Email: dharvey@lchb.com
Email: ndesai@lchb.com
Email: lchan@lchb.com
Email: mlamy@lchb.com
Email: szandi@lchb.com

Jessica A. Moldovan (*pro hac vice*)
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, New York 10013-1413
Telephone: (212) 355-9500
Email:jmoldovan@lchb.com

Linda P. Nussbaum (*pro hac vice*)
**NUSSBAUM LAW GROUP, P.C.**
1211 Avenue of the Americas, 40th Floor
New York, NY 10036
Tel: (917) 438-9102
Email: lnussbaum@nussbaumpc.com

Michael L. Roberts (*pro hac vice*)
Kelly Rinehart (*pro hac vice*)
Karen Halbert (*pro hac vice*)
**ROBERTS LAW FIRM US, PC**
1920 McKinney Ave., Suite 700
Dallas, TX 75204
(501) 821-5575
Email: mikeroberts@robertslawfirm.us
Email: kellyrinehart@robertslawfirm.com.us
Email: karenhalbert@robertslawfirm.us

*Counsel for Plaintiffs and the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2022, I caused a true and correct copy of the foregoing

document to be served on all counsel of record by email through the court's CM/ECF system.


By: *Joseph R. Saveri*
Joseph R. Saveri