# UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE OUTPATIENT MEDICAL CENTER EMPLOYEE ANTITRUST LITIGATION | Master Docket No.: 1:21-cv-00305<br><br>**Honorable Andrea R. Wood**<br><br>**Magistrate Judge Sunil R. Harjani** |

## PLAINTIFFS' MOTION TO COMPEL DISCOVERY FROM THE UNITED STATES DEPARTMENT OF JUSTICE

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................... 1

II. BACKGROUND ........................................................................................................ 2

III. LEGAL STANDARD ................................................................................................ 4

IV. ARGUMENT .............................................................................................................. 5

    A. The Documents are Relevant. ......................................................................... 5

    B. The Federal Rules of Civil Procedure Apply. ................................................ 6

    C. The DOJ's Asserted Objections are Groundless. ........................................... 9

        1. There Is No Burden. ............................................................................ 9

        2. Federal Rule of Criminal Procedure 6(e) Does Not Prohibit Production. ............................................................................ 10

        3. The FBI Materials Are Not Protected Because They were Already Produced to the Defendants. ................................................ 12

        4. The DOJ's Privilege Objection Is Erroneous. ................................... 13

    D. This Motion Should Be Heard by Judge Harjani. ........................................ 13

V. CONCLUSION ........................................................................................................ 14

4895-6707-4392

I.    **INTRODUCTION**

Plaintiffs move to compel the United States Department of Justice ("DOJ") to comply with Plaintiffs' document subpoena. At issue are three document requests (specifically Requests 3, 4 and 5) from that subpoena which cover the following materials: (1) the exhibits that the DOJ listed on its publicly-available exhibit list in its criminal prosecution against Defendants DaVita and Kent Thiry that were not admitted into evidence; and (2) the documents that the DOJ produced to Defendants in that criminal action, which the Defendants have subsequently returned to the DOJ (collectively, the "Relevant Material"). The documents are relevant because the criminal case concerned the same conspiratorial conduct at issue in this civil action. The DOJ has no legitimate objection to production. Further, it is fundamentally unfair and prejudicial to allow Defendants access to millions of relevant documents yet preclude production to Plaintiffs.

The DOJ primarily objects to production on the contention that Federal Rule of Criminal Procedure 6(e) precludes the DOJ from producing the portion of the subpoenaed materials that were originally produced to the DOJ in response to a grand jury subpoena. But the DOJ's arguments under Rule 6(e) are meritless for several reasons. First, the DOJ's argument that Rule 6(e) *statutorily prohibits* their production to Plaintiffs is contradicted by the fact that Plaintiffs' subpoena expressly seeks only documents *that the DOJ already produced to the Defendants*. Rule 6(e) permits this production. Moreover, any interest in secrecy has already been abrogated because the DOJ has already produced them to the very target of the grand jury proceedings.

Second, production of the Relevant Materials will not disclose "a matter occurring before the grand jury," Fed. R. Crim. P. 6(e)(2)(B), because the underlying documents produced in response to a grand jury subpoena are independently relevant and will not disclose the innerworkings of the grand jury proceeding. Third, Rule 6(e) provides an exhaustive list of who is prohibited from disclosing "a matter occurring before the grand jury." *See* Fed. R. Crim. P. 6(e)(2)(B). Other than the seven categories listed, "[n]o obligation of secrecy may be imposed." Fed. R. Crim. P. 6(e)(2)(A). Federal agencies are not one of the seven categories. The DOJ can

1

of course disclose grand-jury related discovery. The DOJ did so here, producing the Relevant Materials to the Defendants.

The DOJ makes several other objections to production, including vaguely asserting that some documents may be privileged. But an assertion of privilege is highly suspect given that the subpoena seeks only documents *that were already produced to Defendants*. Moreover, any privilege has been waived by production to Defendants. And as of this filing, the DOJ has yet to identify a single privileged document or produce a privilege log.

The Relevant Materials are relevant, the DOJ already produced them to Defendants, and the DOJ lacks a legitimate objection to production. The Court should grant Plaintiffs' motion.

## II.     BACKGROUND

Plaintiffs' complaint alleges that Defendants entered into a conspiracy to suppress wages and reduce competition for labor, and agreed not to poach each other's employees in violation of Section 1 of the Sherman Act. *See* ECF No. 57 [Consolidated Amended Complaint]. The DOJ has already concluded a criminal trial against DaVita and its CEO, Kent Thiry, for the same conduct: a conspiracy not to poach its competitors' employees in violation of Section 1 of the Sherman Act ("DaVita Criminal Action"). *See* Decl. of David Seidel filed in support ("Seidel Decl.") at Ex. A [DaVita Indictment]. DaVita and Thiry admitted the existence of the agreement, but argued it was not unlawful. The jury in the DaVita Criminal Action found DaVita and Thiry not guilty of criminal conduct.[1]

During the course of the DaVita Criminal Action, the DOJ produced to DaVita and Thiry millions of documents. Plaintiffs sought these documents from DaVita and Thiry, but DaVita and Thiry objected and moved for a protective order on the grounds that they were obligated by the criminal action's protective order—which they themselves negotiated with the DOJ—to destroy all the Relevant Material. ECF Nos. 141, 144. Plaintiffs opposed and asked the Court to

---

[1] That DaVita and Thiry were acquitted in the criminal trial is not relevant here because (1) the criminal and civil cases have different burdens of proof; and (2) criminal intent was at issue in the criminal trial but does not factor into the civil case. Plaintiffs and Defendants have already briefed this issue. *See* ECF Nos. 127 and 134.

ensure the Relevant Material was not destroyed so that once the discovery stay was lifted, Defendants would produce the Relevant Material to Plaintiffs. ECF Nos. 145, 147. At the same time, Plaintiffs moved to intervene in the DaVita Criminal Action and asked the Court to extend the deadline by which Defendants were required to destroy or return the Relevant Material to the DOJ so that the issues could be resolved before the Relevant Material was destroyed by Defendants. Seidel Decl. Ex. B [Crim. ECF 278]. DaVita took no position on Plaintiffs' motion but reiterated that it intended to destroy all the Relevant Materials by the pending deadline. Seidel Decl. Ex. C [Crim. ECF 279]. The DOJ objected to Plaintiffs' motion to intervene and to Plaintiffs' request to extend the deadline. Seidel Decl. Ex. D [Crim. ECF 281]. Plaintiffs filed a reply. Seidel Decl. Ex. E [Crim. ECF 283]. Plaintiffs sought to maintain the status quo until the discovery stay in this action was lifted to avoid the prejudice that could occur if Plaintiffs were forced to obtain the Relevant Material from the DOJ, rather than from party Defendants.

On June 15, 2022, the Court in the DaVita Criminal Action denied Plaintiffs' motion to intervene and did not extend the deadline, but the Court modified the Protective Order to require DaVita and Thiry to return to the DOJ the Relevant Materials, rather than destroy them as the Defendants intended. Seidel Decl. Ex. F [Crim. ECF 285]. Similarly, on June 20, 2022, Judge Wood granted DaVita and Thiry's motion for a protective order, allowing them to comply with the Protective Order in the DaVita Criminal Action, but ordered that the Defendants must *return* to the DOJ, rather than *destroy*, the Relevant Material. ECF No. 151. Judge Wood further ordered as follows (*id.*):

> The Government shall preserve a complete set of the originals of the [Relevant Material] in its possession that are subject to the Colorado Protective Order, as well as all copies of the [Relevant Material] returned to the government by DaVita and Thiry, for the duration of this case or as otherwise ordered by this Court. The copies of the [Relevant Material] returned to the Government by DaVita and Thiry shall be segregated and preserved in the condition that those materials are received by the Government from DaVita and Thiry.

On August 26, 2022, under Rule 45, Plaintiffs served the DOJ with the subpoena at issue. The subpoena seeks five categories of documents from the DOJ's criminal prosecution against

3

DaVita: (1) the admitted trial exhibits; (2) the trial exhibit lists; (3) the documents listed on the trial exhibit lists but not admitted into evidence; (4) the Relevant Material that the DOJ produced to DaVita and Thiry in the criminal action; and (5) the same Relevant Material that DaVita and Thiry returned to the DOJ.[2] *See* Seidel Decl. Ex. G [Subpoena to DOJ]. The DOJ refuses to produce documents responsive to Requests 3, 4, and 5.

On September 9, 2022, the DOJ provided an initial response. *See* Seidel Decl. Ex. H. On December 12, 2022, the Court ordered the DOJ to serve a formal response to the subpoena. On January 20, 2023, the DOJ served its formal written response to the subpoena. *See* Seidel Decl. Ex. I. The DOJ refuses to produce documents responsive to Request No. 3 and "nearly all the materials sought in Requests No. 4 and 5." *Id.* at 3. As of the date of this filing, the DOJ has not produced a single document or provided a privilege log.

### III. LEGAL STANDARD

Subpoenas are governed by Federal Rule of Civil Procedure 45. The subpoena recipient "may serve . . . a written objection . . . to producing electronically stored information in the form or forms requested." Fed. R. Civ. P. 45(d)(2)(B). The subpoenaing party may then "move the court . . . for an order compelling production or inspection." *Id.* Under Rule 45, a party that issues a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). "In determining whether the burden imposed is 'undue,' courts consider a variety of factors including: '(1) the likelihood that compliance will result in production of the information, (2) whether the discovery is unreasonably cumulative or duplicative, (3) whether the information sought is readily obtainable from another, more convenient, less burdensome (but equally reliable) source, and (4) whether the burden of the proposed discovery outweighs its likely benefit.'" *Gaines v. Chicago Bd. of Educ.,* No. 19 C 775, 2022 WL 1292248, at *2 (N.D. Ill. Apr. 29, 2022).

---

[2] Request Nos. 4 and 5 should theoretically be the identical documents.

## IV.   ARGUMENT

For the reasons below, the Court should grant Plaintiffs' motion and require the DOJ to produce documents responsive to Plaintiffs' Subpoena Request Numbers 3, 4, and 5.[3]

### A.   The Documents are Relevant.

The Relevant Material at issue are plainly relevant. Plaintiffs' subpoena seeks exactly the same documents that the government produced to DaVita and Thiry in the related criminal case. The civil and criminal cases against DaVita and Thiry concern largely identical claims arising out of the same conspiratorial conduct.[4] The DOJ produced the Relevant Material to Defendants in the criminal case because they were relevant to the same conspiracy allegations. If the government deemed the Relevant Material relevant to the criminal trial regarding the same conduct, they are discoverable under Rule 26 in this case.

Moreover, numerous courts have required production of criminal documents where they have already been produced to a Defendant. Courts hold that it is inherently unfair and contrary to the "principles of federal discovery" for a defendant in a civil action to receive relevant documents from a related criminal proceeding without providing those same materials to the plaintiffs. *See, e.g.*, *In re Cement-Concrete Block, Chicago Area*, 381 F. Supp. 1108, 1111 (N.D. Ill. 1974) ("It seems to the court highly inequitable and adverse to the principles of federal discovery to allow the defendants in a civil suit access to grand jury transcripts but not the plaintiffs."); *U.S. Indus., Inc. v. U.S. Dist. Ct. for S. Dist. of Cal., Cent. Div.*, 345 F.2d 18, 23 (9th Cir. 1965) (same).

---

[3] Plaintiffs have agreed that the DOJ does not need to produce the approximately 500,000 FTC documents noted in the DOJ's written response. *See* Seidel Decl. Ex. I at 4.

[4] The claims in the civil case include the identical claims as in the criminal case, but the civil case is also significantly broader than the criminal case because, for example, Plaintiffs are pursuing wage-fixing allegations in addition to the no-poach agreements at issue in the criminal case. The civil case is in no way narrower than the criminal case.

5

### B. The Federal Rules of Civil Procedure Apply.

In addition to asserting numerous boilerplate objections to production, the DOJ seeks to shield production of these documents by arguing that the Federal Rules of Civil Procedure do not apply. *See* ECF No. 171 at 9–10. The DOJ asserts that the only way to compel compliance with a Rule 45 subpoena to the government is to assert a claim under the Administrative Procedure Act. This is wrong. There is no basis to preclude application of the Federal Rules of Civil Procedure to federal-court subpoenas issued to federal agencies. The Ninth and D.C. Circuits, along with numerous other courts, hold that Rule 45 applies to the DOJ, like any other person or entity. Only the Fourth and Eleventh Circuits apply the Administrative Procedure Act's "arbitrary and capricious" standard. But those decisions are questionable precedent at best. They rely on sovereign immunity, which is implicated only by a state court issued subpoena. The Seventh Circuit has not directly addressed this issue, but its precedent shows it would apply Rule 45 and the civil discovery standards under Rule 26.

The Ninth Circuit's decision in *Exxon Shipping* provides useful guidance. *Exxon Shipping v. U.S. Dep't of Interior*, 34 F.3d 774 (9th Cir. 1994). In a suit over the Exxon-Valdez oil spill, Exxon subpoenaed multiple federal agency officials to provide testimony on the extent of the damage caused by the oil spill. *Id.* at 776. The agencies made two arguments for why they were immune from federal subpoenas. The Ninth Circuit rejected both.

First, the agencies argued that under *U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), the DOJ could simply refuse to comply with subpoenas. *Exxon*, 34 F.3d at 776. The Ninth Circuit rejected this argument. The Court analyzed the federal statute which authorizes agencies to promulgate *Touhy* regulations, 5 U.S.C. § 301, and concluded that the statute provides no basis to withhold otherwise discoverable materials. The statute explicitly provides that it "does not authorize withholding information from the public or limiting the availability of records to the public." 5 U.S.C. § 301. As the Ninth Circuit found, Congress added that language in 1958 for the specific purpose of "correcting" the situation in which "the executive branch was using the housekeeping statute as a substantive basis to withhold information." *Exxon*, 34 F.3d at 777;

6

*see also Chrysler Corp. v. Brown*, 441 U.S. 281, 310 (1979) (holding that Section 301 is merely a "housekeeping statute," authorizing "rules of agency organization, procedure or practice," and "[n]othing in the legislative history of [§ 301] shows that Congress intended this statute to be a grant of authority to the heads of the executive departments to withhold information from the public"). The court concluded that "neither the statute's text, its legislative history, nor Supreme Court case law supports the Government's argument that Section 301 [and through it, the agency's *Touhy* regulations] authorizes agency heads to withhold documents or testimony from federal courts." *Exxon*, 34 F.3d at 778.

Second, the agencies claimed under Fourth Circuit precedent that sovereign immunity precluded federal courts from compelling federal agency testimony. The Ninth Circuit rejected that argument too. *Id.* The Ninth Circuit recognized that sovereign immunity may limit *state courts* from enforcing state subpoenas against federal agencies, but such "limitations do not apply when a *federal court* exercises its subpoena power against federal officials." *Id.* (emphasis added). Indeed, allowing federal agencies to refuse to comply with federal court subpoenas without judicial recourse would "raise serious separation of powers questions." *Id.*

Other courts are in accord. In *Watts v. S.E.C.*, the DC Circuit held that "[a]n agency's *Touhy* regulations are relevant [only] for internal housekeeping and determining who within the agency must decide how to respond to a federal court subpoena." 482 F.3d 501, 508–09 (DC Cir. 2007) (applying Rule 45 to testimonial subpoenas issued to three SEC employees). They do "not authorize withholding information[.]" *Id.* at 509 (quoting 5 U.S.C. § 301). In *In re Packaged Ice Antitrust Litigation,* the Court held that "sovereign immunity cannot bar a federal court from enforcing a federal subpoena against the federal government." No. 08-MD-01952, 2011 WL 1790189, at *2 (E.D. Mich. May 10, 2011). The court concluded that "the Sixth Circuit would join the opinions of those courts, mostly in this century, that have concluded that Federal Rule of Civil Procedure 45 and various available privilege rules" provide the standard of review. *Id.*

Only the Fourth and Eleventh Circuits have held the APA's "arbitrary and capricious" standard applies. But those circuits' decisions are inapposite. First, those decisions generally

7

address *state-court* subpoenas in which sovereign immunity prevented the court from enforcing process against the federal government, leaving the APA as the only available path. *See*, *e.g.*, *Smith v. Cromer*, 159 F.3d 875, 881 (4th Cir. 1998) (holding APA was only available remedy because "the state court had no authority to enforce the subpoenas, and the district court acquired none on removal"). Second, they address testimonial subpoenas issued to specific federal employees, thus implicating valid agency regulations that control *who* within the agency may comply. *See*, *e.g.*, *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991) (concerning deposition subpoenas to two physicians under the authority of the Secretary for Health and Human Services). The logic of these cases is inapplicable here, where Plaintiffs issued a Rule 45 subpoena to the DOJ itself for documentary evidence. Sovereign immunity is only a hurdle to state-court subpoenas. And the *Touhy* regulations can only properly limit *who* determines how to respond, not whether the agency will respond at all.

      The Seventh Circuit has not directly addressed the issue, but its precedent is in line with the Ninth and DC circuits. The DOJ contends that *Edwards* settles the matter in the Seventh Circuit. *See* ECF No. 171 at 9 (citing *Edwards v. U.S. Dep't of Just.*, 43 F.3d 312, 316 (7th Cir. 1994). This is incorrect. *Edwards* is also inapposite. *Edwards* is another case about a state-court subpoena, originally issued in a state court proceeding and later removed to federal court. *See* 43 F.3d at 316. The holding in *Edwards* was expressly conditioned on the ground that the state court had no jurisdiction to enforce the subpoena, and the federal court's jurisdiction was wholly contingent on the state court's jurisdiction. *Id.* at 317 ("[T]he district court was correct in quashing the subpoenas because the state court had no jurisdiction to compel [production]."). Indeed, *Edwards* relied on *Boron Oil Co. v. Downie,* which merely held that sovereign immunity "precludes the state court—and the federal court which gained limited jurisdiction upon removal—from exercising jurisdiction to compel [an employee] to testify contrary to [the agency's] instructions." 873 F.2d 67, 70 (4th Cir. 1989). These principles do not apply here.

      A recent decision from this district provides the correct analysis. *See Fed. Deposit Ins. Corp. for Valley Bank v. Crowe Horwath LLP*, No. 17-CV-04384, 2018 WL 3105987, at *4

8

(N.D. Ill. June 25, 2018) ("*Valley Bank*"). In *Valley Bank*, the court held that *Edwards* was limited to state-court subpoenas, not federal subpoenas. The court found *Edwards* inapplicable and held that the Federal Rules of Civil Procedure applied. *Id.* at *5. The court held that "Seventh Circuit precedent is [] more in line with the decisions of the D.C. Circuit and the Ninth Circuit than the other Circuits that have addressed the issue." *Id.*

Indeed, that the Seventh Circuit would follow the well-reasoned decisions of the Ninth and DC Circuits is all but established by *Ott v. City of Milwaukee*, 682 F.3d 552 (7th Cir. 2012). In addressing the applicability of Rule 45 to a subpoena issued to a state agency, the Court applied the DC Circuit's conclusion that federal agencies are "persons" under Rule 45, and that the "federal government lacks an 'established prerogative' to be free from subpoenas." *Id*. at 556 (quoting *Yousuf v. Samantar*, 451 F.3d 248, 255-56 (D.C. Cir. 2006)).

Moreover, the DOJ's argument to apply the APA's arbitrary and capricious standard is necessarily premised on the meritless position that the DOJ's response to a subpoena is a "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. That makes no sense here. *See Watts*, 482 F.3d at 506. As the *Watts* court explained, "[a] government agency's decision to assert privilege or otherwise not to comply with a subpoena in ongoing civil litigation . . . is simply an ordinary litigation decision, not an agency's 'final disposition' of the kind referenced in the APA." *Id*.

    **C.    The DOJ's Asserted Objections are Groundless.**

The DOJ's written response asserts numerous objections. *See* Seidel Decl. Ex. I. The DOJ's objections are groundless. Other than the approximately 500,000 "FTC Materials," which Plaintiffs have agreed to drop, the DOJ should be compelled to produce to Plaintiffs its production to DaVita and Thiry in the criminal case.

    **1.    There Is No Burden.**

The DOJ interposes the boilerplate objection that compliance would "impose an extraordinary burden on the non-party government." Seidel Decl. Ex. I at 3. The DOJ fails to carry its burden of justifying this claim with particularity. *See*, *e.g.*, *Reed v. Illinois*, 318 F.R.D.

9

77, 79 (N.D. Ill. 2016) ("[I]t is up to the respondent to establish undue burden with a particularized showing."). Nor could it, because this collection has already been passed back and forth between Defendants and the DOJ twice. The Court has already ordered the DOJ to preserve and segregate the documents intact, in the form in which the DOJ first produced them to the Defendants and were later received back from the Defendants. *See* ECF No. 151 at 2. The DOJ has informed Plaintiffs that the Relevant Material is contained on either a set of CDs or a hard drive. It is already segregated and ready for production. There is no burden whatsoever.

## 2. Federal Rule of Criminal Procedure 6(e) Does Not Prohibit Production.

The DOJ asserts that it cannot produce to Plaintiffs any materials that were produced to the DOJ in response to a grand jury subpoena. *See* Exhibit I at 4. But this position is meritless because the DOJ already produced these materials to Defendants. There are three reasons why Federal Rule of Criminal Procedure 6(e) did not prohibit the DOJ from producing the Relevant Material to Defendants then, and do not prohibit their production to Plaintiffs now.

First, Rule 6(e) provides secrecy obligations over "a matter occurring before the grand jury." Fed. R. Civ. P. 6(e)(2)(B). "A matter occurring before the grand jury" refers to the grand jury proceedings—not the millions of underlying documents that were produced in response to any grand jury subpoena. The DOJ's response cites to *United States v. Stanford*, 589 F.2d 285, 290 (7th Cir. 1978), to argue that any document produced to the grand jury is protected by Rule 6(e). *See* Seidel Decl. Ex. I at 5. But that case defeats the DOJ's claim. *Stanford* specifically rejected the proposition that "Rule 6(e) shields every item of evidence considered by the grand jury, whether or not obtained by subpoena, with an impenetrable cloak of secrecy." *Id.* Rather, the Seventh Circuit held that "[u]nless information reveals something about the grand jury proceedings, secrecy is unnecessary." *Id.* at 291. Thus, the Court held that "[p]ersons may have a legitimate interest in documents [independent of the grand jury proceeding] so that disclosure to them does not constitute disclosure of matters occurring before the grand jury." *Id*. That is exactly consistent with the Seventh Circuit's clear rule: "'matters occurring before the grand

10

jury' do not include every document of which the grand jury happens to have custody." *Matter of Special Mar. 1981 Grand Jury*, 753 F.2d 575, 578 (7th Cir. 1985).

Here, Plaintiffs' subpoena does not seek all documents presented or considered by the grand jury. Nor do Plaintiffs have any interest in penetrating or obtaining disclosure regarding the grand jury proceedings. Plaintiffs have a "legitimate interest" in the underlying documents that have been produced to Defendants. That a large portion of those documents happen to have been produced initially in response to a grand jury subpoena does not shield them from civil discovery. Indeed, Plaintiffs will not even be able to tell which documents were produced in response to the grand jury subpoena and which were not. Since the reproduction of the Relevant Material will not reveal the grand jury proceedings, "secrecy is unnecessary." *Stanford*, 589 F.2d at 291. Other courts agree. *See, e.g.*, *Dexia Credit Loc. v. Rogan*, 395 F. Supp. 2d 709, 715 (N.D. Ill. 2005) ("[I]f a document is sought for its own sake rather than to learn what took place before the grand jury, and if its release will not seriously compromise the secrecy of the grand jury's deliberations, Rule 6(e) does not forbid its release.").

The DOJ has already conceded this point during prior briefing in this case. In briefing on whether the Court should lift the discovery stay, the DOJ argued that the Court should prohibit the Plaintiffs from seeking from the Defendants "all documents produced to the grand jury." ECF No. 137 at 4. The DOJ initially claimed that Rule 6(e) prohibited such a request. *Id.* But in subsequent briefs, the DOJ then reversed course and conceded that Rule 6(e) afforded no protection to such a request. *See* DOJ's Opp. To Pls' Mot. To Lift Discovery Stay, ECF No. 167 at 7 ("The United States has not objected to discovery . . . on the grounds that production [of materials subpoenaed by a grand jury] would violate Rule 6(e) of the Federal Rules of Criminal Procedure."). Yet despite the clear Seventh Circuit authority, and the DOJ's prior concession, the DOJ now asserts that Rule 6(e) prohibits Plaintiffs from receiving any document that was produced in response to a grand jury subpoena. *See* Seidel Decl. Ex. I at 4 ("The Federal Rules of Criminal Procedure prohibit DOJ from producing grand jury materials to plaintiffs in this civil action," citing to Rule 6(e)). The DOJ is wrong.

11

Second, even if the documents were covered by Rule 6(e), the Rule provides for only seven specific categories of persons who are bound by secrecy. *See* Fed. R. Civ. P. 6(e)(2)(B). The Rule's careful delineation of who can and who cannot disclose matters occurring before the grand jury "reflects Congress' and the Supreme Court's careful policy considerations." *In re USA*, No. 19-WR-10 (BAH), 2019 WL 4619698, at *3 (D.D.C. Aug. 6, 2019). Thus, the list of who is prohibited from disclosure is "exhaustive." *Id.* Indeed, the Rule specifically provides that "***[n]o obligation of secrecy*** may be imposed on any person except in accordance" with the seven categories of people listed by the Rule. Fed. R. Crim. P. 6(e)(2)(A) (emphasis added). Here, Plaintiffs' subpoena was issued to the DOJ. The subpoena was not issued to any one of the seven categories of individuals precluded from disclosing. Nor can the DOJ argue that the agency is itself an "attorney for the government." If that were true, then the DOJ would also have been prohibited from producing the Relevant Material to Defendants.

Third, even if Rule 6(e) provided some secrecy interest over the Relevant Material here, any secrecy interest has been abrogated because the DOJ already produced these materials to Defendants, the very target of the grand jury proceedings. *See*, *e.g.*, *State of Conn. v. Gen. Motors Corp.*, No. 65, 1974 WL 895, at *1 (N.D. Ill. Apr. 29, 1974) ("[T]he force of the historic concept of Grand Jury secrecy [is not] persuasive here, since the transcripts in question are already out of the custody of the United States and in the hands of the defendants. Whatever secrecy would normally attach to them has in effect already been abrogated.").

### 3. The FBI Materials Are Not Protected Because They were Already Produced to the Defendants.

The DOJ objects to the production of any "documents created by the FBI" because disclosure to Plaintiffs would "interfere with enforcement proceedings" pursuant to the DOJ's internal *Touhy* regulations, 28 C.F.R. § 16.26(b)(5). But the DOJ's position is untenable because the documents were already produced to the Defendants at the center of the enforcement proceedings. Moreover, the enforcement proceedings against DaVita and Thiry are now concluded. Indeed, given the DOJ's failure at the criminal trial to secure a guilty verdict, the only

12

remaining means by which the antitrust laws will be enforced with respect to DaVita and Thiry's misconduct is this civil case. It is the DOJ, not Plaintiffs, who are now interfering with the enforcement of the antitrust laws, and for no discernable legitimate purpose. Moreover, the DOJ's reliance on its internal *Touhy* regulations as a basis to withhold these documents is groundless. As the DOJ has conceded in prior briefings before this Court, the DOJ's *Touhy* regulations, including 28 C.F.R. § 16.26, merely "impose a formal *procedure* for considering and responding to demands; they do not create additional substantive limitations on production." ECF No. 171 at 9 (emphasis added); *see also Watts*, 482 F.3d at 508–09.

### 4. The DOJ's Privilege Objection Is Erroneous.

The DOJ objects to documents "created by DOJ's Antitrust Division," on the grounds of privilege, despite that all the documents have already been produced to Defendants. Any claim of privilege is belied by their prior production to opposing counsel and has been waived. *See Powers v. Chicago Transit Auth.*, 890 F.2d 1355, 1359 (7th Cir. 1989) ("Any voluntary disclosure by the holder of the attorney-client privilege is inconsistent with the attorney-client confidential relationship and thus waives the privilege."); *Vill. of Rosemont v. Priceline.com Inc.*, No. 09 C 04438, 2010 WL 4876217, at *4 (N.D. Ill. Nov. 22, 2010) (holding there could be no "privilege claim over material . . . already voluntarily disclosed."). The same is true for work-product. *Vardon Golf Co. v. Karsten Mfg. Corp.*, 213 F.R.D. 528, 534 (N.D. Ill. 2003).

### D. This Motion Should Be Heard by Judge Harjani.

In meet and confer communications preceding this motion, the DOJ has taken the position that Local Criminal Rule 6.1 requires that this motion be heard by the Chief Judge. Local Criminal Rule 6.1 states the following:

> The chief judge shall supervise the operations of the grand jury, including empaneling and charging each grand jury at the commencement of its term, providing whatever services it may require, including a convenient place for its deliberations, entering all appropriate orders it requests, and discharging it upon completion of its deliberations or at the end of its term. All matters pertaining to grand juries shall be heard by the chief judge or his or her designee.

13

Local Rule 6.1 does not apply to this motion. First, it is a local criminal rule. It is thus inapplicable in this civil proceeding. Second, the rule is aimed at issues involving grand juries themselves, such as their "supervision," "operations," and "empaneling and charging." It states that such matters "pertaining to grand juries" shall be heard by the Chief Judge or his or her designee. Plaintiffs' subpoena does not concern a grand jury. Simply because the DOJ asserts a Rule 6(e) objection—which, as discussed above, is meritless—does not mean that this motion to compel cannot be heard by the judges overseeing the civil case who are familiar with the issues and the case history.

## V.  CONCLUSION

For the above reasons, the Court should grant Plaintiffs' motion and order the DOJ to produce the subpoenaed records, all of which were already produced to Defendants.

Dated:  March 24, 2023

Respectfully submitted,

*/s/ Joseph R. Saveri*

Joseph R. Saveri (admitted under L.R. 83.10)
Steven N. Williams (*pro hac vice*)
JOSEPH SAVERI LAW FIRM, INC.
601 California Street, Suite 1000
San Francisco, California 94108
Tel: (415) 500-6800
Fax: (415) 395-9940
jsaveri@saverilawfirm.com
swilliams@saverilawfirm.com

Dean M. Harvey (*pro hac vice*)
Lin Y. Chan (*pro hac vice*)
Sarah D. Zandi (*pro hac vice*)
Devin X. Williams (*pro hac vice*)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
dharvey@lchb.com
lchan@lchb.com
szandi@lchb.com
dwilliams@lchb.com

Jessica A. Moldovan (*pro hac vice*)
LIEFF CABRASER HEIMANN &BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, New York 10013-1413
Telephone: (212) 355-9500
Facsimile: (212) 355-9592
jmoldovan@lchb.com

Linda P. Nussbaum (*pro hac vice*)
NUSSBAUM LAW GROUP, P.C.
1211 Avenue of the Americas, 40th Floor
New York, NY 10036
(917) 438-9102
lnussbaum@nussbaumpc.com

Michael L. Roberts
Kelly Rinehart
Karen Halbert
ROBERTS LAW FIRM US, PC
1920 McKinney Ave., Suite 700
Dallas, TX 75204
(501) 821-5575
mikeroberts@robertslawfirm.us
kellyrinehart@robertslawfirm.us
karenhalbert@robertslawfirm.us

*Interim Lead Counsel for Plaintiffs and the Proposed Class*

15