**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE OUTPATIENT MEDICAL CENTER EMPLOYEE ANTITRUST LITIGATION, | ) ) ) ) ) ) ) | No. 21 CV 305 <br><br> Magistrate Judge Young B. Kim <br><br> September 9, 2024 |

**MEMORANDUM OPINION and ORDER**

Plaintiffs Scott Keech and Allen Spradling, former senior employees of Defendants Surgical Care Affiliates, LLC and SCAI Holdings, LLC (together, "SCA"), bring this antitrust action for violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. The operative complaint alleges that SCA, along with Defendants DaVita Inc. ("DaVita"), United Surgical Partners International, Inc., and United Surgical Partners Holding Company, Inc. (together, "USPI"), and other ambulatory surgery centers and outpatient medical centers, conspired to reduce and limit the compensation and mobility of their employees. The United States Department of Justice ("DOJ") also criminally prosecuted SCA and DaVita in other jurisdictions, but without success. Before the court is Plaintiffs' renewed motion to compel the DOJ to produce certain categories of documents responsive to Plaintiffs' August 26, 2022, and January 9, 2024 subpoenas (together, "Subpoenas"). The DOJ and Defendants SCA, DaVita, Kent Thiry, and Andrew Hayek oppose Plaintiffs' motion. For the following reasons, the motion is denied:

## Background

In January 2021, a federal grand jury in the Northern District of Texas indicted SCA with two counts of conspiring to restrain trade in violation of Section 1 of the Sherman Act. Then in July 2021, a federal grand jury in the District of Colorado indicted DaVita and its CEO, Thiry, with two counts of conspiring to restrain trade in violation of Section 1 of the Sherman Act. Both the Texas and Colorado indictments charged that SCA and DaVita conspired not to solicit each other's senior-level employees. The DOJ explains in its response to Plaintiffs' motion here that the same core investigative and trial team were involved in both criminal actions and discovery in connection with those prosecutions was nearly identical. The Colorado criminal case proceeded to trial and the jury acquitted DaVita and Thiry in April 2022, *United States v. DaVita Inc.,* No. 21 CR 229 (D. Colo.) ("DaVita Criminal Action"). The DOJ thereafter voluntarily dismissed the criminal case against SCA in November 2023, *United States v. Surgical Care Affiliates, LLC,* No. 21 CR 11 (N.D. Tex.) ("SCA Criminal Action").

In this action, Plaintiffs are pursuing civil antitrust claims against DaVita, SCA, USPI, and others arising out of alleged no-poach agreements in the outpatient medical care industry. On August 26, 2022, Plaintiffs served a third-party subpoena on the DOJ demanding the production of five categories of documents relating to the DaVita Criminal Action ("DaVita Subpoena"). (R. 409, Pls.' Mot. at 3 (DaVita Subpoena "sought only those documents that the DOJ had already produced to Defendants in the Criminal Action"); R. 409-8, DaVita Subpoena.) On January 9,

2024, Plaintiffs issued a similar subpoena to the DOJ relating to the SCA Criminal Action ("SCA Subpoena"). (R. 409, Pls.' Mot. at 3-4 (SCA Subpoena seeks documents the DOJ produced to SCA); R. 409-10, SCA Subpoena.) The Subpoenas include an identical request for "[a]ll documents or other material that You produced to a Defendant as part of or in connection with the DOJ Colorado Action" or "the DOJ Texas Action." (R. 409-8; R. 409-10.) Plaintiffs in essence are seeking to access DOJ curated documents to use in this civil case.

The courts in the DaVita and SCA Criminal Actions entered protective orders. The DaVita Criminal Action's original protective order required DaVita and Thiry to return to the DOJ or destroy all "Confidential Information," including copies and "any documents reflecting information contained within Confidential Information," within 30 days of the case's disposition, which was May 20, 2022. *See United States v. DaVita Inc.*, No. 21 CR 229, Dkt. No. 43 (D. Colo. Aug. 20, 2021). "Confidential Information" was defined in part as "any discovery materials" the government provided to the defense. *Id.* at 1. The Colorado court modified the protective order on June 15, 2022, providing that: "to the extent the Confidential Information has not already been destroyed, it must be returned to the government and preserved by the government for potential production in civil and/or criminal litigation as might be ordered by the presiding judges in such cases." *United States v. DaVita Inc.,* No. 21 CR 229, Dkt. No. 285 at 2-3 (D. Colo. June 15, 2022). The SCA Criminal Action included a protective order requiring the same. *United States v. Surgical Care Affiliates, LLC,* No. 21 CR 11, Dkt. No. 21 (N.D. Tex. Jan. 28, 2021). As such, the SCA and DeVita

Defendants do not possess the discovery Plaintiffs seek through the Subpoenas served on the DOJ. (R. 409, Pls.' Mot. at 4.)

Plaintiffs previously moved to compel discovery from the DOJ in March 2023, seeking a much broader range of documents compared with their instant request.[1] (See R. 210, Pls.' Mot.) In the previous motion, Plaintiffs sought:

> (1) the exhibits that the DOJ listed on its publicly-available exhibit list in its criminal prosecution against Defendants DaVita and Kent Thiry that were not admitted into evidence; and (2) the documents that the DOJ produced to Defendants in that criminal action, which the Defendants have subsequently returned to the DOJ.

(Id.) The DOJ opposed the motion, arguing that it was improper in part because Plaintiffs' requests encompassed "virtually every scrap of paper collected by the grand jury as part of its investigation," which totaled more than one million documents. (R. 233, DOJ's Opp. at 1.) Plaintiffs disagreed and insisted that the documents were nonetheless discoverable. (R. 210, Pls.' Mot. at 5-14.) The court denied Plaintiffs' motion without prejudice,[2] and ordered Plaintiffs to "petition the district court that presided over the *DaVita* grand jury for disclosure of the requested grand jury materials." (R. 274, May 11, 2023 Order at 2-3.) The court then deferred all other discovery issues related to the motion to compel. (Id.)

---

[1] The March 2023 motion to compel was filed only in connection with the DaVita Subpoena because the SCA Subpoena had not yet been served.

[2] This case was previously assigned to District Judge Andrea R. Wood and then-Magistrate Judge Sunil R. Harjani supervised discovery on referral. Upon Judge Harjani's Article III appointment, the clerk's office reassigned the case to him as the presiding District Judge and reassigned the discovery referral to this court in April 2024. (R. 378; R. 379.)

Thereafter, Plaintiffs and the DOJ raised the discovery issue with the Colorado court presiding over the DaVita Criminal Action. The Colorado court held that the requested grand jury transcripts are protected from discovery under Federal Rule of Criminal Procedure 6, rejecting Plaintiffs' argument that the transcripts were needed to "test witnesses' credibility, to refresh recollections, and 'to be on an equal playing field with Defendants.'" *United States v. DaVita Inc.,* No. 21 CR 229, Dkt. No. 304 at 4 (D. Colo. March 29, 2024). The Colorado court found that Plaintiffs failed to show a substantial need for the transcripts, *id.* at 6, but did not weigh in on issues pertaining to any other category of documents, noting that "[g]eneral document discovery must be, and is being, managed by the court in the Northern District of Illinois," *id.* at 4-5.

Meanwhile, Plaintiffs also attempted to discover grand jury materials from the SCA Criminal Action in the Northern District of Texas. The Texas court did not entertain Plaintiffs' arguments for any document discovery, ruling that the court lacked jurisdiction because the government dismissed the SCA Criminal Action with prejudice. *United States v. Surgical Care Affiliates, LLC*, No. 21 CR 11, Dkt. No. 223 (N.D. Tex. June 28, 2024).

Plaintiffs now renew their motion to compel the production of documents, including grand jury documents, from the DOJ. (R. 410, Pls.' Mot.) They seek 333 documents, which they contend are "a tiny subset of relevant documents out of the millions that the DOJ produced to the Defendants," and consist of the following six categories: (1) "the few remaining Grand Jury Exhibits"; (2) "the FBI agent raw notes

5

related to the '302' Witness Interview Reports" ("FBI Raw Notes"); (3) "Antitrust Division memoranda and written product" produced in the criminal actions ("DOJ Memos"); (4) law enforcement reports including "background research"; (5) "records related to [a] sealed court order" and "sealed filing"; and (6) the "three withheld '302' Witness Interview Reports" ("302 Reports"). (Id. at 1-2.)[3] Plaintiffs also request that all Raw Notes and 302 Reports be produced to Plaintiffs with the same redactions as produced to Defendants in the criminal cases. (Id. at 2.)

## Legal Standard

As a threshold matter, Plaintiffs and the DOJ dispute what standard governs when a federal agency refuses to comply with a federal subpoena. Plaintiffs claim Federal Rules of Civil Procedure 26 and 45 apply, (R. 409, Pls.' Mot. at 6-11), whereas the DOJ contends that the Administrative Procedure Act ("APA") applies, (R. 416, DOJ's Opp. at 13-15). Federal Rule of Civil Procedure 26(b) allows a party to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," while limiting the scope to prevent discovery if it is "cumulative or duplicative." Fed. R. Civ. P. 26(b)(1), (b)(2)(C)(1). It is well-established that "the purpose of discovery is to help 'define and clarify the issues,'" and as such, "relevance is to be construed broadly." *Doe v. Loyola Univ. Chi.*, No. 18 CV 7335, 2020 WL 406771, at *2 (N.D. Ill. Jan. 24, 2020) (quoting

---

[3] SCA, DaVita Inc., Thiry, and Hayek filed a response in opposition to Plaintiffs' renewed motion on June 21, 2024, explaining that they "have not been included in the negotiations between Plaintiffs and the DOJ, lack clarity as to the full scope of the materials at issue, and therefore oppose Plaintiffs' request." (R. 429, Defs. DaVita, Thiry, SCA, Hayek's Opp. at 1-2.)

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). But relevance must be based on a party's claims or defenses in the case, "not its general subject matter." *Motorola Sols., Inc. v. Hytera Commc'ns. Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019). When assessing proportionality, the court may consider the "importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefits." *Sols. Team v. Oak St. Health, MSO, LLC*, No. 17 CV 1879, 2021 WL 3022324, at *2 (N.D. Ill. July 16, 2021) (quotation omitted).

In turn, Rule 45(d)(1) requires a party issuing a subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." A person subject to a subpoena may serve written objections to the subpoena, Fed. R. Civ. P. 45(d)(2)(B), and thereafter, "the serving party may move the court for the district where compliance is required for an order compelling production or inspection," *id.* at 45(d)(2)(B)(1). Whether to enforce a subpoena is a "case-specific inquiry" with "no formula for determining reasonableness," and is left to the court's discretion. *Gaines v. Chi. Bd. of Educ.,* No. 19 CV 775, 2022 WL 1292248, at *2 (N.D. Ill. April 29, 2022) (quotations omitted). A court analyzing whether a burden is "undue" may consider a variety of factors including: "(1) the likelihood that compliance will result in production of the information, (2) whether the discovery is unreasonably cumulative or duplicative, (3) whether the information sought is readily obtainable from another, more convenient, less burdensome (but

equally reliable) source, and (4) whether the burden of the proposed discovery outweighs its likely benefit." *Id.*

In contrast, the APA's higher standard of review provides that a federal agency's refusal to produce documents will be set aside only if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with [the] law." (R. 416, DOJ's Opp. at 13-15 ("[A] motion to compel directed against a federal agency 'does the job of bringing the APA "action" . . . before the court equally as well as, if not better than, a separate APA claim.'" (quoting *Barnett v. Ill. State Bd. of Ill.*, No. 2 CV 2401, 2002 WL 1560013, at *1-2 (N.D. Ill. July 2, 2002)); see also R. 233, DOJ's Opp. at 3-4 (same); *see* 5 U.S.C. § 706(2)(A). While the Seventh Circuit has not ruled on the issue of whether the Federal Rules of Civil Procedure or the APA governs the enforcement of federal subpoenas issued to federal agencies, the court agrees with Plaintiffs that the Federal Rules of Civil Procedure govern here.

Circuit Courts of Appeal that have addressed this standard of review issue are split on how expansively they can interpret the APA's provision authorizing judicial review regarding waiver of sovereign immunity. *See* 5 U.S.C. § 702 (APA's provision authorizing judicial review for actions "seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity"). The Fourth and Eleventh Circuits rely on a narrow interpretation of the APA to determine whether a federal agency's refusal to comply with a subpoena will be set aside, reasoning that Section 706 of that Act waives sovereign immunity only when the agency's decision was arbitrary or capricious. *See*

*COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 277 (4th Cir. 1999) (applying APA standard to federal agency's refusal to comply with Rule 45 subpoena); *Moore v. Armour Pharma. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991) (affirming HHS decision not to produce employees for testimony because it was neither arbitrary nor capricious). By contrast, the D.C., Sixth, and Ninth Circuits take a more expansive approach and review an agency's decision not to comply with a subpoena under Rule 45. *See Yousuf v. Samantar*, 451 F.3d 248, 257 (D.C. Cir. 2006) (holding federal agencies are bound by Rule 45 subpoenas); *Linder v. Calero-Portocarrero*, 251 F.3d 178, 180 (D.C. Cir. 2001) (holding § 702 waives sovereign immunity for Rule 45 subpoenas); *Hous. Bus. J. v. Off. of Comptroller of Currency, U.S. Dep't of Treasury*, 86 F.3d 1208, 1212 (D.C. Cir. 1996) (holding APA does not "authorize[] a federal agency to withhold documents from a federal court"); *In re Bankers Tr. Co.*, 61 F.3d 465, 470 (6th Cir. 1995) ("Congress did not empower [the agency] to prescribe regulations that direct a party to deliberately disobey a court order, subpoena, or other judicial mechanism requiring the production of information."); *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 777 (9th Cir. 1994) (finding that federal agency's regulations under the APA may not, "by [their] own force, authorize federal agency heads to withhold evidence sought under a valid federal court subpoena").

The DOJ relies on *Edwards v. U.S. Department of Justice*, 43 F.3d 312 (7th Cir. 1994), to support its argument that the Seventh Circuit would apply the APA standard to the Subpoenas here. (See R. 416, DOJ's Opp. at 12-15.) In *Edwards* the plaintiffs served subpoenas on the DOJ in connection with a case pending in state

9

court and then moved to compel the DOJ to comply with the state court subpoenas. 43 F.3d at 314. The DOJ removed the case to federal court under 28 U.S.C. § 1442, and the district court quashed the subpoenas. *Id.* The Seventh Circuit affirmed, reasoning that the district court lacked subject matter jurisdiction because the DOJ had not waived sovereign immunity in the state court case. *Id.* at 314-17 ("[C]ases involving section 1442(a) removals of state subpoena proceedings against unwilling federal officers have held that sovereign immunity bars the enforcement of the subpoena."). The Seventh Circuit held that the proper course would have been to "recast the state court litigant's motion to compel as an administrative request under the APA," thereby triggering the APA's "arbitrary and capricious" standard.[4] *Id.* at 314-15.

But *Edwards* is distinguishable from this case, which concerns federal subpoenas issued in connection with a pending federal action. As such, the present facts more closely align with the circumstances presented in *FDIC v. Crowe Horwath LLP*, No. 17 CV 4384, 2018 WL 3105987 (N.D. Ill. June 25, 2018). In *Crowe Horwath*

---

[4] Applying *Edwards*, the court in *Barnett v. Illinois State Board of Illinois*, No. 02 CV 2401, 2002 WL 1560013, at *1 n.1 (N.D. Ill. July 2, 2002), held that the APA standard should govern the federal agency's refusal to respond to a Rule 45 subpoena because the Seventh Circuit's decision in *Edwards* was "simply too broadly worded to leave room for such factual nit-picking" as to distinguish state court subpoenas from Rule 45 subpoenas. *See also Belbachir v. United States*, No. 08 CV 50193, 2010 WL 3239444, at *3 (N.D. Ill. Aug. 13, 2010) (relying on *Barnett* to apply the APA). Considering that *Edwards* explicitly affirmed the district court's action to quash the subpoena "because the state court had no jurisdiction to compel [the agency]," 43 F.3d 312 at 317, this court disagrees that *Edwards* can be applied so broadly or that recognizing the significance between a state and federal subpoena as it relates to the federal government can be considered "factual nit-picking."

the court reviewed a federal agency's refusal to comply with a Rule 45 subpoena under the Federal Rules and determined that "[b]ecause a refusal to comply with a subpoena under Rule 45 is not an action for 'money damages,' § 702 [of the APA] strips the [federal agency] of its sovereign immunity, thereby giving federal courts the authority to enforce Rule 45 subpoenas." *Crowe Horwath*, 2018 WL 3105987, at *4-5 ("There is nothing in § 702 that limits the waiver of sovereign immunity to actions under § 706.").

Notably, the Seventh Circuit has also relied upon and expanded the D.C. Circuit's finding that federal agencies are bound by Rule 45. In *Yousuf*, the D.C. Circuit held that a federal agency was a "person" bound by Rule 45 after concluding that the government was included elsewhere in the Federal Rules. 451 F.3d at 255-57. For example: (1) under Rule 4(i)(3), a party can serve the United States; (2) under Rule 14, the United States may be impleaded as a third-party defendant, *see United States v. Yellow Cab Co.*, 340 U.S. 543, 556-57 (1951); and (3) under Rule 19(a)(1) and (2), the United States qualifies as a person subject to joinder, *see Carlson v. Tulalip Tribes of Washington*, 510 F.2d 1337, 1339 (9th Cir. 1975). *Yousuf*, 451 F.3d at 256. Then in *Ott v. City of Milwaukee*, the Seventh Circuit extended the D.C. Circuit's holding in *Yousuf*—that "the federal government lacks an 'established prerogative' to be free from subpoenas"—to state agencies, signaling its likely agreement with the D.C., Sixth, and Ninth Circuits' more expansive approach in applying Rule 45 to enforcement of subpoenas to federal agencies. 682 F.3d 552, 556-58 (7th Cir. 2012). Accordingly, this court finds that because Plaintiffs served

11

the Subpoenas in connection with this federal case, the DOJ waived its sovereign immunity under the APA, and Rule 45 rather than the APA's "arbitrary and capricious" standard governs Plaintiffs' subpoena enforcement action here.

## Analysis

In seeking to compel the DOJ to produce the categories of documents subpoenaed, Plaintiffs argue that because the DOJ produced these documents in the criminal actions, they must be relevant and discoverable in the present civil action. (R. 409, Pls.' Mot. at 6-16.) Plaintiffs contend that it would be "inherently unfair" and "contrary to the principles of federal discovery" for the defendants in a civil action to receive relevant documents from a related criminal proceeding and not provide those same materials to the plaintiffs. (Id. at 11-12 (citing *In re Cement-Concrete Block, Chi. Area*, 381 F. Supp. 1108, 1111 (N.D. Ill. 1974); *U.S. Indus., Inc. v. U.S. Dist. Ct. for S. Dist. of Cal.*, 345 F.2d 18, 23 (9th Cir. 1965)).)[5] The DOJ responds that it produced millions of documents in the criminal cases, many of which are either not relevant to the civil case or otherwise protected from disclosure. (R. 416, DOJ's Opp. at 3-15.)

Although true as Plaintiffs assert that here "[t]he civil and criminal cases concern largely identical claims arising out of the same [alleged] conspiratorial

---

[5] None of the cases cited by Plaintiffs involve the kind of blanket requests they submit here. *In re Cement-Concrete-Block* concerned certain grand jury transcripts and the government did not oppose their disclosure. 381 F. Supp. at 1109. And *United States Industries, Inc.* concerned requests for specific documents from grand jury proceedings, including a government memorandum with a summary of proceedings. 345 F.2d at 23.

conduct, related to the same no-poach agreements" and "[t]he DOJ produced all the sought[-after] documents to the DaVita and SCA Defendants in the criminal cases," (R. 409, Pls.' Mot. at 11-12), the documents they seek are not automatically discoverable. Plaintiffs' conclusory argument without more does not satisfy the Rule 26 standard. *Cf. In re Broiler Chicken Antitrust Litig.*, No. 16 CV 8637, 2020 WL 1046784, at *2 (N.D. Ill. March 4, 2020) ("[R]eflexive production of documents previously provided to governmental entities is not appropriate. Rather, documents are discoverable only if they are relevant to a claim or defense in the case." (citations omitted)). Despite "substantial overlap" between the criminal and civil matters in *In re Broiler Chicken Antitrust Litigation*, the court rejected the petitioners' argument that all documents produced to the DOJ in the criminal case were relevant to the civil case. *Id.* at *2. The court reasoned that the broad request did not establish relevance, which as discussed is "defined with reference to 'the needs of the case, considering . . . the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *Id.* (citing Fed. R. Civ. P. 26(b)(1)). For the avoidance of doubt, documents are not relevant solely because they were produced in the criminal actions. Notably, the government's production obligations in criminal prosecutions are much different than civil litigants' discovery obligations.

Moreover, and despite Plaintiffs' assertions to the contrary, Defendants no longer have access to the documents that Plaintiffs seek. (*See* R. 443, Pls.' Reply at

5 ("Defendants have this information.  Plaintiffs do not.").)  Pursuant to each of the criminal action's protective orders, Defendants either destroyed or returned their discovery to the DOJ.  *United States v. Surgical Care Affiliates, LLC*, No. 21 CR 11, Dkt. No. 21 (N.D. Tex. Jan. 28, 2021); *United States v. DaVita Inc.*, No. 21 CR 229, Dkt. No. 43 (D. Colo. Aug. 20, 2021).   To be sure, Plaintiffs acknowledge that Defendants no longer have the documents they are now seeking to compel from the DOJ.  (R. 409, Pls.' Mot. at 2-4.)   The court is thus not persuaded by Plaintiffs' argument that it is "inherently unfair" that they do not have the entire universe of discovery from the criminal actions.  *See also United States v. DaVita Inc.,* No. 21 CR 229, Dkt. No. 304, at 6 (D. Colo. March 29, 2024) ("The vague reference to being on an equal playing field with DaVita changes nothing.").  The court addresses Plaintiffs' additional relevance arguments by category below.

## A.    Grand Jury Exhibits

Plaintiffs' motion to compel "the few remaining Grand Jury Exhibits" is denied. Under Federal Rule of Criminal Procedure 6, matters occurring before a grand jury may not be disclosed unless certain exceptions apply.  One of the exceptions grants a court the ability to "authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand-jury matter: (i) preliminarily to or in connection with a judicial proceeding."  Fed. R. Crim. P. 6(e)(3)(E)(i).  As Plaintiffs acknowledged before the Colorado court, "[c]ourts have long 'recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings.'"  *United States v. DaVita Inc.*, No. 21 CR 229, Dkt. No. 304, at 5

(D. Colo. March 29, 2024) (citing *Douglas Oil Co. v. Petrol Stops Nw.*, 44 U.S. 211, 218 (1979)).  A party seeking disclosure of grand jury proceedings therefore bears "[t]he burden of demonstrating that the need for disclosure is greater than the public interest in secrecy." *Lucas v. Turner,* 725 F.2d 1095, 1101 (7th Cir. 1984) (citing *Douglas Oil Co.*, 44 U.S. at 223).

Plaintiffs do not explain why the grand jury exhibits are needed, but instead rely on an overly expansive interpretation of the Colorado court's order denying them access to the DaVita grand jury transcript.  (R. 409, Pls.' Mot. at 11); *see also United States v. DaVita Inc.*, No. 21 CR 229, Dkt. No. 304, at 4 (D. Colo. March 29, 2024).  In ruling that the DaVita grand jury transcripts are protected from disclosure under Federal Rule of Criminal Procedure 6, the Colorado court declined to rule on any other discovery matters.  *United States v. DaVita Inc.*, No. 21 CR 229, Dkt. No. 304, at 4-7 (D. Colo. March 29, 2024).  Plaintiffs assert that the order also "held that the grand jury exhibits, the '302' FBI witness interview reports, and materials created by the government, are not covered by [Criminal] Rule 6(e) and therefore may be ordered produced by this Court in the ordinary course of discovery."  (R. 409, Pls.' Mot. at 5.)  But this court does not read the Colorado court's order so broadly.  While the Colorado court held that this court "can deal with any objections" should Plaintiffs seek the grand jury exhibits or other discovery, it did not go so far as to limit Criminal Rule 6

to only the transcripts. Nor did Plaintiffs ask the Colorado court to make such a narrow ruling.[6]

This court also declines to rule that grand jury exhibits are not covered by Criminal Rule 6. As the court here already cautioned Plaintiffs in connection with their March 2023 motion to compel, (see R. 274, May 11, 2023 Order at 2), the Seventh Circuit's view is that "[Criminal] Rule 6(e) is applicable in a general way to both documents and testimony before the grand jury." *Matter of Grand Jury Proceedings, Miller Brewing Co.*, 687 F.2d 1079, 1090 (7th Cir. 1982). Further, the Colorado court's reasoning for denying Plaintiffs access to the grand jury transcripts applies equally to the grand jury documents—Plaintiffs already "have access to the full transcript of the jury trial in [the DaVita criminal] case," *United States v. DaVita Inc.*, No. 21 CR 229, Dkt. No. 304, at 6 (D. Colo. March 29, 2024), and the DOJ produced all trial exhibits from the DaVita Criminal Action to Plaintiffs in September 2022. (See R. 171, Sept. 20, 2022 Jt. Status at 4.) Plaintiffs therefore have access to all the exhibits that the DOJ deemed necessary for the DaVita Criminal Action.

Finally, Plaintiffs appear to seek the grand jury exhibits for the sole reason that they were used in front of the grand jury, not because they have any independent relevance. *See United States v. Stanford*, 589 F.2d 285, 290-91 (7th Cir. 1978) (Criminal Rule 6 serves as a barrier to discovery unless "testimony or data is sought for its own sake . . . rather than to learn what took place before the grand jury"). But

---

[6] In their briefing before the Colorado court, Plaintiffs did "not dispute that the grand jury transcripts and exhibits are covered by [Criminal] Rule 6(e)." *United States v. DaVita Inc.*, No. 21 CR 229, Dkt. No. 297, at 7 (D. Colo. March 6, 2024).

grand jury proceedings are necessarily broader in scope than the Plaintiffs' civil claims because the function of a grand jury is to determine whether probable cause exists to return an indictment and, as a result, wide latitude is granted so that it may investigate the same. *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 423 (1983). Simply put, "in the context of all the other [] information that is available to them," *United States v. DaVita Inc.*, No. 21 CR 229, Dkt. No. 304, at 6 (D. Colo. March 29, 2024), Plaintiffs do not meet their burden of explaining why disclosure of the remaining grand jury exhibits is necessary for the claims and defenses raised in this case.

## B. FBI Raw Notes

Plaintiffs' motion to compel the FBI Raw Notes is denied. Plaintiffs offer no new argument as to why this category of documents is discoverable beyond the fact that the documents were produced in the criminal actions. (R. 409, Pls.' Mot. at 12-15.) The DOJ responds that there is a significant burden to producing FBI Raw Notes and that Plaintiffs' do not provide any explanation as to why these documents are needed when the DOJ has already produced the corresponding 302 Reports, which incorporate the information reflected in FBI Raw Notes. (R. 416, DOJ's Opp. at 7-9.) The DOJ states that while the "*criminal* defendants were entitled under the constitution and other authorities to discover certain grand jury information[, the c]*ivil* litigants who of course are not being prosecuted by the government are not entitled to the same discovery." (Id. at 7 (emphasis in original).) Plaintiffs counter that FBI Raw Notes could be "critically important in the event a deponent in this

17

action disputes the accuracy of a 302 Witness Interview Report" and that "Defendants have this information, but Plaintiffs do not." (R. 443, Pls.' Reply at 5.) Plaintiffs also contend that there is no undue burden because the DOJ can produce FBI Raw Notes with the same redactions as they were produced in the criminal actions. (R. 409, Pls.' Mot. at 12-15.)

Plaintiffs' argument misses the mark. Not only do they fail to establish that the FBI Raw Notes are relevant or proportional to the needs of the case, but they also ignore that Defendants no longer have FBI Raw Notes because they were required to return or destroy them pursuant to court orders, as noted above. *See Sols. Team*, 2021 WL 3022324, at *2 (parties' relative access to information may be considered in assessing proportionality). Plaintiffs' argument that FBI Raw Notes are "critically important" in the event a deponent disputes the accuracy of a 302 Report is also not persuasive because a witness who questions the accuracy of such a report cannot effectively be confronted with raw notes as the witness did not prepare them. In any event, Plaintiffs already have access to the full DaVita trial transcript reflecting sworn testimony, including the direct- and cross-examinations of witnesses, and Plaintiffs continue to depose witnesses themselves in this case.

Requiring the DOJ to produce the FBI Raw Notes would also impose an undue burden because "the raw notes are duplicative of the reports already provided," and "the final memos incorporating the raw notes have been provided." (R. 416, DOJ's Opp. at 8); *see also Gaines*, 2022 WL 1292248, at *2 (courts may consider whether discovery is unreasonably cumulative or duplicative in assessing whether a subpoena

imposes an undue burden). In sum, Plaintiffs provide no valid explanation for why they need the underlying notes incorporated within the 302 Reports, and this is particularly necessary when requesting such notes from a non-party. *United States v. Amerigroup Ill., Inc.*, No. 02 CV 6074, 2005 WL 3111972, at *4 (N.D. Ill. Oct. 21, 2005) ("[N]on-party status is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue.").

## C. DOJ Memos and Law Enforcement Reports

Plaintiffs' motion to compel DOJ Memos the Antitrust Division prepared for the criminal actions and "law enforcement reports including 'background research'" is denied. Plaintiffs again assert no independent basis for why the DOJ Memos and law enforcement reports and research are relevant or proportional to the needs of their case beyond the fact that they were produced in the criminal cases. The entirety of Plaintiffs' argument hinges on the fact that the DOJ produced these categories of documents in the criminal actions and, therefore, waived any claim of privilege over them. (R. 409, Pls.' Mot. at 13-15.) The DOJ responds that it withheld the DOJ Memos and reports "as part of its criminal investigation" and produced them in the criminal actions pursuant to its criminal disclosure obligations and with the express agreement that the disclosure "would not constitute a waiver and subject to a protective order that limited disclosure 'for use solely in connection with the criminal case.'" (R. 416, DOJ's Opp. at 9-11); *see also United States v. DaVita Inc.*, No. 21 CR 229, Dkt. No. 43 (D. Colo. Aug. 20, 2021); *United States v. Surgical Care Affiliates, LLC*, No. 21 CR 11, Dkt. No. 21 (N.D. Tex. Jan. 28, 2021). Plaintiffs do not challenge

the DOJ's assertion of the law enforcement privilege on its merits but argue the DOJ waived the privilege based on its document production in the criminal actions.

Plaintiffs' waiver argument is without merit. They attempt to undermine the criminal actions' protective orders while at the same time argue that a protective order in the present civil case would "provide adequate protection over any confidential material contained in the documents to be produced." (R. 409, Pls.' Mot. at 15.) Not only is this argument contradictory, but it would also effectively vitiate the fundamental purpose of protective orders by making the production of previously produced documents automatically discoverable in any situation, regardless of whether the documents are protected. The court is not inclined to dilute the important functions protective orders serve in civil and criminal litigation.

## D. Sealed Filing

Plaintiffs' request for "records related to [a] sealed court order" and "sealed filing" is denied. Plaintiffs do not provide sufficient information as to their need for these documents. Instead, they merely state that this court should order the DOJ to produce this category of documents because, "[o]n information and belief, . . . these documents relate to and contain relevant evidence of the antitrust violations." (R. 409, Pls.' Mot. at 12.) The DOJ objects to producing this category of documents and listed "Statute/Court Order" and "Relevance" as the reason. (R. 409-5, DOJ Index.)

As the DOJ correctly points out, "to justify access to sealed materials, 'the party seeking disclosure may not rely on presumptions but must instead make a specific

showing of need for access to the document.'" (R. 416, DOJ's Opp. at 11 (quoting *United States v. Corbitt*, 879 F.2d 224, 228 (7th Cir. 1989)).) Further, documents under seal in the criminal actions must comply with the Federal Rules and the applicable local rules related to their sealing. In the District of Colorado, LCrR 47.1(c), governs restricted documents and provides examples of what types of documents are subject to presumptive restriction in addition to the standard for a party to move a court to restrict a certain document. *See* D.C. Colo. LCrR 47.1(c), (f). The Colorado court entertained many motions related to restricted documents, noting that "any documents filed with the Court will be open to the public without restriction unless good cause is shown on a document-by-document basis to restrict public access. The Court conducts its business in public, and that will be so in this case." *United States v. DaVita Inc.,* No. 21 CR 229, Dkt. No. 36 (D. Colo. Aug. 19, 2021). This court will not disrupt what occurred in the criminal actions and compel production of a vague category of documents based on Plaintiffs' "information and belief" that they might be relevant.

**E. 302 Reports**

Plaintiffs' motion to compel the "three remaining 302 Interview Reports" is denied. Plaintiffs initially argue that these 302 Reports are relevant because the DOJ has already produced the majority of the 302 Reports. (R. 409, Pls.' Mot. at 13.) The DOJ in turn contends that the remaining 302 Reports are not discoverable because they "primarily relate to a witness's document production in response to a grand jury subpoena" and "[b]ecause the withheld 302 interview reports contain information and

summaries of grand jury materials and largely no other relevant discoverable material, such reports are protected from disclosure by [Criminal] Rule 6(e)." (R. 416, DOJ's Opp. at 12.) In their reply, Plaintiffs assert for the first time that the missing 302 Reports pertain to "a critically important witness," who "has substantial personal knowledge of the no-poach agreements and their enforcement and effect" and "was in charge of recruiting at SCA." (R. 443, Pls.' Reply at 8.)

As explained, the Seventh Circuit's view is that "[Criminal] Rule 6(e) is applicable in a general way to both documents and testimony before the grand jury." *Miller Brewing Co.*, 687 F.2d at 1090. To overcome Criminal Rule 6, Plaintiffs are required to show a need for disclosure that exceeds the public interest in secrecy. *See Lucas,* 725 F.2d at 1101. Plaintiffs fail to meet this burden and do not explain how traditional methods of discovery prevent them from securing the needed information from this "critically important witness."

## Conclusion

For the foregoing reasons, Plaintiffs' Renewed Motion to Compel Discovery from the United States Department of Justice is denied.

ENTER:

_____

**Young B. Kim**
**United States Magistrate Judge**

22