UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE OUTPATIENT MEDICAL CENTER EMPLOYEE ANTITRUST LITIGATION, | ) ) ) ) ) ) ) ) ) No. 21 CV 305<br><br>Magistrate Judge Young B. Kim<br><br>September 13, 2024 |

MEMORANDUM OPINION and ORDER

Plaintiffs Scott Keech and Allen Spradling, former senior employees of Defendants Surgical Care Affiliates, LLC and SCAI Holdings, LLC (together, "SCA"), bring this antitrust action alleging violation of Section 1 of the Sherman Act, 15 U.S. § 1. The Second Consolidated Amended Class Action Complaint ("Complaint") alleges that SCA, along with Defendants DaVita Inc. ("DaVita"), United Surgical Partners International, Inc. and United Surgical Partners Holding Company, Inc. (together, "USPI"), and other ambulatory surgery centers and outpatient medical centers, conspired to reduce and limit compensation and mobility of their employees.[1] Before the court is Plaintiffs' motion to compel SCA to perform supplemental searches for ESI, particularly for documents relating to exchanges of wage information between SCA and USPI. For the following reasons, Plaintiffs' motion is granted in part and denied in part:

---

[1] This court adopts the case description included in the court's opinion entered on June 26, 2023. (See R. 292, June 26, 2023 Mem. Op. and Order at 1.)

## Background

Plaintiffs filed a previous motion to compel on March 24, 2023, relating to their second set of requests for production of documents ("Requests") to SCA. (R. 218, Pls.' Mot. to Compel.) Those Requests sought eight categories of documents, including documents pertaining to "(1) wage-fixing; [and] (2) the exchange of employment-related business information between SCA and other Defendants." (R. 292, June 26, 2023 Mem. Op. and Order at 2.) SCA argued that the requested documents are not relevant because Plaintiffs' claims relate to alleged market allocation agreements, not wage-fixing. (Id. at 3.) But the court disagreed, finding that the Complaint "explicitly alleges that 'Defendants directly and through their agents, engaged in activities to limit competition and *fix*, raise, maintain, and/or stabilize the *competition* and terms of employment of their employees," and that this "conspiracy included concerted action and undertakings with the purpose and effect of . . . *fixing* Plaintiffs' and the Class's *compensation* at artificially low levels."[2] (Id. at 4 (emphasis in Mem. Op. and Order).) Accordingly, the court granted Plaintiffs' motion to compel and ordered SCA to produce the requested documents in response to Request Nos. 4-8, 10, 13, and 54. (Id. at 3-6 & n.1.) The court found that the appropriate start date for this discovery, including ESI searches, is May 1, 2008. (Id. at 12.)

---

[2] Although the opinion referred to the prior version of the complaint, the court's reasoning stands because the Complaint, which was filed shortly before that opinion issued, includes the same pertinent allegations. (Compare R. 57, Consol. Amended Class Action Compl. ¶¶ 9, 16, 115 with R. 280, 2d Consol. Amended Class Action Compl. ¶¶ 9, 16, 115.)

2

SCA thereafter performed a series of searches relating to wage information-sharing practices, including using the search term "Wage w/5 (increase* OR budget)." (R. 433, SCA's Opp. Br. at 5; see also R. 419-1, William Castillo Guardado Decl. ¶ 4 (declaring that SCA was ordered "to run the search term 'Wage w/5 (increase* OR budget)'").) SCA represents that this search generated 2,706 hits. (R. 433, SCA's Opp. Br. at 5.) But Plaintiffs say SCA failed to produce responsive documents or companion records that should have been captured in that search, including two email threads USPI produced discussing the sharing of wage-increase information with SCA ("USPI Wage-Exchange Documents").[3] (R. 418, Pls.' Mot. at 5-8.)

The first USPI Wage-Exchange Document is an August 9, 2013 email thread between SCA's then-Vice President of Strategy, Brian Mathis, and USPI's then-CFO, Jason Cagle, discussing the following:

> Mathis: Jason, [o]ne of the things we have shared in the past is plans for the following year wage increases. Have you all . . . set a number yet that you're planning to budget? Thanks, Brian
> Cagle: Hey, Brian. Not yet, but probably will nail down the second half of August. We'll remember to share with you when we do.

---

[3] USPI initially designated the USPI Wage-Exchange Documents as "confidential" in this matter and, as such, Plaintiffs and SCA filed this information in the motion, response, and exhibits pertaining to those Documents under seal. (See R. 419, Pls.' Mot. (sealed version); R. 419-1, William Castillo Guardado Decl.; R. 419-2 & R. 419-3 (sealed exhibits containing the USPI Wage-Exchange Documents); R. 434, SCA's Opp. Br. (sealed version); R. 434-1 (sealed exhibit referring to the USPI Wage-Exchange Documents) (collectively, "Sealed Materials").) After the court ordered the parties to explain the confidentiality designation for the Sealed Materials, (R. 462), USPI and SCA agreed to de-designate them, (R. 482). The court has since unsealed the materials.

(R. 419-2, USPI Wage-Exchange Document (USPI_CIV_000016100).) Mathis copied Peter Clemens, SCA's then-CFO, and Lynn Howard, SCA's then-Vice President of Human Resources, on his email. (Id.) Cagle also added James Walker and Tony Martin (presumably both USPI employees) as recipients on his response. (Id.)

The second USPI Wage-Exchange Document involves the following discussion between Mathis and Cagle on August 19 and August 20, 2014:

> Mathis: Jason, [a]re you all willing to swap wage increase budgets as we have in the past? Best, Brian
> Cagle: Sure. We're just heading into budgets. When were you hoping to see it? I may be a few weeks out.
> Mathis: That works, whenever you're ready. Thanks, Brian

(R. 419-3, USPI Wage-Exchange Document (USPI_CIV_000021155).) The court finds these exchanges to be significant and incriminating, at least on the surface.

SCA responds that in addition to producing 890,233 documents in this case, it "performed a reasonable search" for wage-fixing and exchange-of-business information but the search did not hit on the USPI Wage-Exchange Documents, likely because those documents pre-date SCA's "preservation obligation in this matter and . . . are no longer within SCA's possession, custody, or control." (R. 433, SCA's Opp. Br. at 4.) For support SCA cited to its "ordinary course retention policies," which it described as providing a "short retention period for email not otherwise archived by the user," but did not attach any policies to its response. (Id. at 4, 6-7 (indicating SCA "long ago" produced its retention policies to Plaintiffs and "the details" of those policies "are not in dispute"); see also id. at 6-7 (referring to SCA's "normal course" and "normal operation of its" retention policies).)

4

Plaintiffs now move to compel SCA to supplement its ESI searches, using three new search terms across two new and three previously designated custodians. (R. 418, Pls.' Mot. at 12-16.) They also ask the court to compel SCA to perform targeted queries and search its backup files for the USPI Wage-Exchange Documents and companion records. (Id. at 17.)

## Analysis

Plaintiffs argue that the USPI Wage-Exchange Documents relate to "some of the most highly relevant evidence that can be found in antitrust conspiracy cases: evidence of wage-fixing, including [D]efendants' exchanges of non-public information with one another, and the communications between [them] discussing or exchanging such information." (R. 418, Pls.' Mot. at 5.) USPI produced the USPI Wage-Exchange Documents in this matter, but SCA did not—even though SCA employees in part authored and received the same documents. (Id.) As a result, Plaintiffs ask the court to compel SCA to search for and produce such documents. Specifically, Plaintiffs seek an order compelling SCA to: (1) use a "limited set" of three additional search terms, which Plaintiffs contend are "narrowly tailored" to discover the USPI Wage-Exchange Documents in SCA's possession, custody, or control, along with companion records; (2) run the new search terms for two new custodians and three previously designated custodians; (3) perform targeted searches for the USPI Wage-Exchange Documents; and (4) search SCA's backup files for the same. (Id. at 12-18.)

5

SCA responds that it completed the search it was required to perform under the court's previous discovery ruling, (see R. 292, June 26, 2023 Mem. Op. and Order), and produced nearly 900,000 documents to Plaintiffs, (R. 433, SCA's Opp. Br. at 4). SCA claims that the documents Plaintiffs seek "were not produced by SCA for the simple reason that they are not in SCA's possession, custody, or control, likely due to the normal application of SCA's retention policies." (Id.) In any event, SCA argues that Plaintiffs' supplemental requests are "unreasonably cumulative, duplicative, and burdensome." (Id. at 12.)

"The purpose of discovery is to refine the case and to prepare it for trial based on a full understanding of the relevant facts." *Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343, 358 (7th Cir. 2015). Federal Rule of Civil Procedure 26(b) governs the scope of discovery and provides that the "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Discovery is designed to help "define and clarify the issues," and as such, "relevance is to be construed broadly." *Doe v. Loyola Univ. Chi.*, No. 18 CV 7335, 2020 WL 406771, at *2 (N.D. Ill. Jan. 24, 2020) (internal quotations omitted). When assessing proportionality, the court may consider the "importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *see also Sols. Team v. Oak St. Health, MSO, LLC*, No. 17 CV 1879,

6

2021 WL 3022324, at *2 (N.D. Ill. July 16, 2021). Once the moving party has demonstrated that the requested discovery is relevant, "the party resisting production has the burden of showing why the request is improper." *Hum. Rts. Def. Ctr. v. Jeffreys*, No. 18 CV 1136, 2022 WL 4386666, at *2 (N.D. Ill. Sept. 22, 2022). A court has "inherent authority" with respect to discovery and otherwise "to manage judicial proceedings and to regulate the conduct of those appearing before it." *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016).

Here, SCA does not dispute that the USPI Wage-Exchange Documents and companion records are relevant to Plaintiffs' claims in this case. (R. 418, Pls.' Mot. at 8.) Nor could it, as the court previously determined that such information is relevant to Plaintiffs' claims as discussed. (See R. 292, June 26, 2023 Mem. Op. and Order at 4.) The key inquiry thus turns on whether SCA, as the opposing party, has satisfied its burden of showing that the supplemental searches Plaintiffs seek are improper. *See Hum. Rts. Def. Ctr.*, 2022 WL 4386666, at *2.

**A.    New Search Terms**

The motion is granted. Plaintiffs assert that the three new search terms they propose are "narrowly tailored" to discover "exchanges of wage information between SCA and USPI" and related documents. (R. 418, Pls.' Mot. to Compel at 12-13.) The court agrees. Although SCA has already run searches using the term "Wage w/5 (increase* OR budget)," as ordered by the court, (see R. 433, SCA's Opp. Br. at 5; R. 419-1, William Castillo Guardado Decl. ¶ 4), that search term combination did not yield hits from SCA relating to the USPI Wage-Exchange Documents. As a

7

result and with the aim to discover similar documents from SCA relating to wage-sharing communications with USPI, Plaintiffs propose broadening the terms as follows: (1) "Wage* /20 (increas* OR budget*)"; (2) "(Wage* or info* or data) /20 (shar* OR swap* OR exchang*)"; and (3) "Wage* AND (USPI OR 'United Surgical Partners International')." (R. 418, Pls.' Mot. at 13.)

SCA says it has already "produced thousands of documents that hit on" search terms relating to the exchange of compensation data, wage increases or budgets, base pay or compensation, and the like—and does not have the documents Plaintiffs seek. (R. 433, SCA's Opp. Br. at 5-6.) Nonetheless, SCA provided hit counts for the newly proposed terms for the three previously designated custodians. (Id. at 13.) Searches of these custodians' files for Term One yielded 648 hits, Term Two yielded 22,458 hits, and Term Three yielded 0 hits for the three custodians. (Id.) Based on the "experience" of its counsel, SCA estimates it will take 462 hours of attorney time to review those documents, at a significant cost to SCA.[4] (Id.) SCA further complains that the additional search terms themselves are unnecessarily "expansive" given that the original term used—"Wage w/5 (increase* OR budget)"— would have hit on the USPI Wage-Exchange Documents. (Id. at 13-14.) As such, SCA contends that Plaintiffs' request fails the proportionality requirement in Rule 26(b)(1) because "[a]ny potential benefit of running these new search terms is minimal and far outweighed by the expense and burden of performing these reviews." (Id. at 14-15.)

---

[4] This estimate does not include attorney time to review the files of the two new custodians identified, although SCA represents that it no longer "possesses" the files for one of those custodians. (R. 433, SCA's Opp. Br. at 4.)

8

Applying the Rule 26(b)(1) factors, the court finds that Plaintiffs' newly proposed search terms seek relevant information and satisfy the proportionality requirement. As the court has already ruled, the documents Plaintiffs seek relate to evidence of wage-fixing, which is relevant and important to the resolution of Plaintiffs' claims. (See generally R. 292, June 26, 2023 Mem. Op. and Order.) That Plaintiffs did not discover the USPI Wage-Exchange Documents in SCA's production highlights the need for supplemental discovery. Rule 26(b)(1) factors such as "the importance of the issues at stake in the action, the amount in controversy, [and] the importance of the discovery in resolving the issues" thus weigh in favor of compelling the supplemental searches.

At the same time, the court appreciates SCA's argument as to undue burden. The parties have already proceeded with an ESI protocol, (see R. 307 (noting that the court entered an ESI protocol in 2021)), and tweaking search terms now will increase SCA's discovery expenses, (see R 433, SCA's Opp. Br. at 13). Nevertheless, the supplemental discovery Plaintiffs seek here is appropriate given the discovery of the USPI Wage-Exchange Documents, their significance to the claims in this case, and SCA can minimize its burden of reviewing newly identified documents by relying on technology assisted review and Federal Rule of Evidence 502(d). Indeed, the parties stipulated to, and the court entered, an Order stating that the disclosure of "Identified Materials" does not constitute "a waiver of the privilege in any other federal or state proceeding." (R. 52-2, Stipulated Order Regarding Production of ESI and Hard Copy Documents); *see also Carmody v. Bd. of Tr. of Univ. of Ill.*, 893

9

F.3d 397, 404 (7th Cir. 2018) (explaining that Fed. R. Evid. 502(b) "governs inadvertent disclosures of privileged communications or information in federal proceedings" and "provides that disclosure does not waive the privilege" if it was inadvertent and reasonable measures were taken to prevent disclosure and to rectify the error). Given this Stipulated Order and the search for a specific type of email exchanges, SCA does not explain why an "attorney" must review each document. Accordingly, the court finds that SCA has not satisfied its burden of showing that Plaintiffs' requested searches are improper. *See Cnty. of Cook v. Bank of Am. Corp.*, No. 14 CV 2280, 2019 WL 6309925, at *1 (N. D. Ill. Nov. 25, 2019) ("At the same time, a 'party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination.'" quoting Fed. R. Civ. P. 26(b)(1) Advisory Committee Notes (2015 Amendment)).

**B. Custodians**

The motion is granted, except as noted below with respect to Howard's custodial files. Plaintiffs ask the court to compel SCA to run the new search terms on the files of five SCA custodians: (1) Mathis; (2) Clemens; (3) Howard; (4) Tom deWeerdt, SCA's Executive Vice President and CFO from 2015 to 2017; and (5) Leslie Wachsman, SCA's Vice President of Finance and Investor Relations from 2012 to 2018 and current CFO. (R. 418, Pls.' Mot. at 14-15.) Mathis, Clemens, and Wachsman's files have already been searched under the ESI protocol previously entered. (Id. at 15.) Although SCA objects to the new searches of these files as

10

"unreasonably cumulative and duplicative"—and to Wachman's files as "unreasonably tardy," (R. 433, SCA's Opp. Br. at 15), the court overrules these objections. Mathis's and Clemens's names appear in the USPI Wage-Exchange Documents, (R. 419-2; R. 419-3), and Wachsman reported to Clemens and was copied on "exchanges of confidential business information with USPI in 2013 and 2014." (R. 418, Pls.' Mot. at 15.) Plaintiffs' discovery of this information shows the need for supplemental searches of these three custodians' files.

The court also overrules SCA's objections to deWeerdt and Howard being designated custodians. Howard's name appears in one of the USPI Wage-Exchange Documents, (R. 419-2), demonstrating a reasonable likelihood that her files may contain additional relevant information. And deWeerdt replaced Clemens as SCA's CFO in 2015, before Wachsman became CFO in 2017. (R. 418, Pls.' Mot. at 15.) Because both Clemens and Wachsman were recipients of the USPI Wage-Exchange Documents, (id. at 14-15), and deWeerdt served in the same position at SCA, Plaintiffs have demonstrated a need to collect documents from him as well. That said, SCA represents that it "no longer possesses [Howard's] custodial files." (R. 433, SCA's Opp. Br. at 4.) Pending confirmation from SCA that it does not have possession, custody, or control of Howard's custodial files, the court cannot order SCA to search for and produce documents it does not have. As such, SCA may formally respond to Plaintiffs that it no longer has Howard's files if that indeed is the case.

C.  **Targeted Searches**

The motion is denied. Plaintiffs request "additional targeted searches" for specific documents, without explaining what those documents are or the topics to which they relate. (R. 418, Pls.' Mot. at 17.) SCA says it has already performed targeted searches for documents Plaintiffs identified, and the motion therefore should be denied as to this request. The court agrees. Simply put, the court cannot order SCA to search for and produce documents that have not been identified with any level of specificity. However, SCA is precluded from offering documents as evidence if it does not timely supplement its discovery as required under Rule 26(e).

**D.     Backup Files**

The motion is denied. The court cannot compel SCA to run a search it cannot perform. Plaintiffs contend that SCA has never searched its backup files for the USPI Wage-Exchange Documents and companion records. (R. 418, Pls.' Mot. at 16-18.) SCA says that it does not have possession, custody, or control of backup files because backup files for emails do not exist. (R. 433, SCA's Opp. Br. at 16.) As such, SCA may formally respond to Plaintiffs that SCA does not have backup files for emails.

## Conclusion

For the foregoing reasons, the motion is granted in part and denied in part.

                    **ENTER:**

_Young B. Kim_
**Young B. Kim**
**United States Magistrate Judge**

12