UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE OUTPATIENT MEDICAL CENTER EMPLOYEE ANTITRUST LITIGATION, | ) ) ) ) ) ) ) ) No. 21 CV 305<br><br>Magistrate Judge Young B. Kim<br><br>November 5, 2024 |

**MEMORANDUM OPINION and ORDER**

Plaintiffs Scott Keech and Allen Spradling, former senior employees of Defendants Surgical Care Affiliates, LLC and SCAI Holdings, LLC (together, "SCA"), bring this antitrust action alleging violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. The Second Consolidated Amended Class Action Complaint ("Complaint") alleges that SCA, along with Defendants DaVita Inc. ("DaVita"), United Surgical Partners International, Inc. and United Surgical Partners Holding Company, Inc. (together, "USPI"), and other ambulatory surgery centers and outpatient medical centers, conspired to reduce and limit compensation and mobility of their employees.[1] Before the court is Plaintiffs' motion for an order finding that SCA has waived privilege over corporate documents that Dr. Bridget Fanning produced to Plaintiffs in discovery. Dr. Fanning served as SCA's Chief Talent Officer from 2014 to 2016 but is a third-party witness in this case. For the following reasons, Plaintiffs' motion is denied:

---

[1] This court adopts the case description included in the court's opinion entered on June 26, 2023. (See R. 292, June 26, 2023 Mem. Op. and Order at 1.)

**Background**

In January 2021 a federal grand jury in the Northern District of Texas indicted SCA with two counts of conspiring to restrain trade in violation of Section 1 of the Sherman Act. *United States v. Surgical Care Affiliates, LLC*, No. 21 CR 11 (N.D. Tex.) ("SCA Criminal Action"). Then, in July 2021 a federal grand jury in the District of Colorado indicted DaVita and its CEO with two counts of conspiring to restrain trade in violation of Section 1 of the Sherman Act. *United States v. DaVita Inc.*, No. 21 CR 229 (D. Colo.) ("DaVita Criminal Action"). The Texas and Colorado indictments (together, "Criminal Actions") both charged that SCA and DaVita conspired not to solicit each other's senior-level employees. The same core investigative and trial teams were involved in the Criminal Actions and discovery in connection with those prosecutions was nearly identical. The DaVita Criminal Action proceeded to trial and the jury acquitted DaVita and its CEO in April 2022. The DOJ voluntarily dismissed the SCA Criminal Action in November 2023.

In this action, Plaintiffs bring civil antitrust claims against SCA, DaVita, USPI, and others arising out of the alleged no-poach agreements. (R. 280, Compl.) Early in the case, on July 19, 2021, the parties proposed a Rule 502(d) Order, (R. 52 at 2, 6, Ex. 2 at 5), and the court entered that order on agreed motion, (R. 71). About six months before the close of fact discovery, on March 29, 2024, Plaintiffs issued a subpoena to Dr. Fanning pursuant to Federal Rule of Civil Procedure 45 ("Subpoena") seeking her deposition and "all documents and [electronically stored information ('ESI')] . . . submitted to, or seized by, the United States Department of Justice

2

[('DOJ')] . . . concerning any alleged agreements with competing employers relating to the recruiting, hiring or compensation of employees." (R. 474, Pls.' Mot. at 6, Ex. 1 at 13; R. 493, SCA's Resp. at 3-4.) The Subpoena called for Dr. Fanning's objections and responses to be served by July 10, 2024. (R. 474, Pls.' Mot. Ex. 1 at 2.) On July 15, 2024, Dr. Fanning indicated she would produce 30,000 documents at her scheduled deposition. (R. 493, SCA's Resp. Ex. 1 at 2.) But when she appeared at her deposition two days later, Dr. Fanning produced more than 100,000 documents ("Fanning Documents")—consisting of "emails from [her] time at SCA" that she had placed onto two thumb drives. (R. 474, Pls.' Mot. at 5-7, Ex. 2 at 3; see also R. 493, SCA's Resp. at 9.) Dr. Fanning produced these same documents to the government in connection with the Criminal Actions several years earlier, of which SCA successfully clawed back 10,719 documents on privilege grounds. (R. 474, Pls.' Mot. at 7, Ex. 1 at 3-4, Ex. 2 at 3-4; R. 493, SCA's Resp. Ex. 1 at 1.)

Plaintiffs argue that SCA had ample notice they were seeking documents Dr. Fanning previously produced to the government—including some that are presumably privileged—because Plaintiffs served SCA with a copy of the Subpoena on March 27, 2024, two days before issuing it to Dr. Fanning. (R. 474, Pls.' Mot. at 5-6, Ex. 1 at 2.) Yet Plaintiffs claim, "SCA did nothing"—such as objecting or filing a motion to quash—since it received notice of the Subpoena. (Id. at 6.) The parties attempted to postpone Dr. Fanning's deposition to allow time to review the Fanning Documents, but the court denied the request. (Id. at 7, Ex. 1 at 3; see also R. 493, SCA's Resp. Ex. 1 at 3.)

3

On July 29, 2024, about two weeks after Dr. Fanning's deposition, SCA sent Plaintiffs[2] the following email:

> During her deposition on July 17, 2024, Dr. Fanning produced a thumb drive to Plaintiffs containing thousands of documents from her time working for SCA. Given the fact that Dr. Fanning acted on behalf of SCA, we believe the thumb drive may have privileged or work-product-protected communications for which SCA holds the privilege. This includes, but is not limited to, potential communications with SCA's in-house and outside lawyers.
>
> Please advise of your availability for a phone call with us so that we can discuss a process to ensure the protection of SCA's privileges. In the interim, please take all appropriate steps to make sure that neither your law firms, your clients, nor any other person reviews such information pending the resolution of this issue.

(R. 474, Pls.' Mot. Ex. 5 at 2.) Plaintiffs complied with SCA's request and "immediately ceased their review" of the Fanning Documents, (id. Ex. 1 at 4), and then the parties met and conferred on July 30, July 31, and August 9, 2024, to discuss SCA's request, (R. 493, SCA's Resp. Ex. 1 at 4). During those meetings, SCA informed Plaintiffs it would run "privilege-related search terms" on the Fanning Documents, cull out the resulting documents for further review, and reproduce nonprivileged documents on a rolling, expedited basis. (R. 493, SCA's Resp. Ex. 1 at 4.)

Meanwhile on August 7, 2024, Plaintiffs objected that SCA had "failed to identify even a single privileged document" or "produce a privilege log" and, as such, it had not satisfied its burden of showing that privilege attached to any of the Fanning Documents. (R. 474, Pls.' Mot. at 7.) Plaintiffs claim that SCA then "unilaterally took the position that it was clawing back all 104,884" documents from Dr. Fanning's

---

[2] Plaintiffs note that SCA sent this email only to Plaintiffs, and not to the other named Defendants or to Dr. Fanning. (R. 474, Pls.' Mot. at 14-15, Ex. 5 at 2.)

4

production. (Id.) In response, SCA states that it "did not 'claw back' Dr. Fanning's entire production," but rather proposed a process to search, review, and reproduce nonprivileged Fanning Documents to Plaintiffs. (R. 493, SCA's Resp. at 9.) From August 9 to September 19, 2024, SCA reproduced a total of 99,031 Fanning Documents to Plaintiffs. (R. 493, SCA's Resp. Ex. 1 at 5.) SCA also produced a privilege log on September 19, 2024, identifying 1,813 documents that include redactions and 8,180 documents that are withheld in their entirety based on the attorney-client privilege and work-product protection ("Privileged Documents"). (Id.) Plaintiffs' motion asks that all Privileged Documents be reproduced to Plaintiffs. (Id.; see also R. 474, Pls.' Mot. at 8, Ex. 1 at 3-4.)

## Analysis

Plaintiffs argue that SCA waived any privilege protection it may have had over the Privileged Documents. (R. 474, Pls.' Mot.) Both the attorney-client privilege and work-product protection may be waived through disclosure of protected information to a third party or adversary. *See United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997) (explaining that attorney-client privilege may be waived through disclosure of confidential legal advice to third party); *Vardon Golf Co., Inc. v. Karsten Mfg. Corp.*, 213 F.R.D. 528, 534 (N.D. Ill. 2003) ("[W]ork-product protection may be waived where the communications are disclosed in a manner which substantially increases the opportunity for potential adversaries to obtain the information." (citations omitted)). The party seeking protection carries the burden of showing that it applies. *Valero Energy Corp. v. United States*, 569 F.3d 626, 630 (7th Cir. 2009).

5

Under certain circumstances, Federal Rule of Evidence 502 prevents waiver of the attorney-client privilege or work-product protection even when protected information is disclosed. *See generally* The Sedona Conference, *Commentary on the Effective Use of Federal Rule of Evidence 502(d) Orders*, 23 Sedona Conf. J. 1 (2022). Rule 502(b) provides "default provisions" for waiver protection, *id.* at 12, when the disclosure is inadvertent and reasonable steps are taken to prevent the disclosure and to rectify the error, *see* Fed. R. Evid. 502(b). In determining whether a document was inadvertently produced and such reasonable measures were taken, courts "look at the circumstances surrounding the disclosure," including: "(1) the reasonableness of the precautions taken to prevent disclosure; (2) the time taken to rectify the error; (3) the scope of the discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness." *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 388 (7th Cir. 2008) (internal quotations and citation omitted).

Applying Rule 502(b), the Seventh Circuit in *Carmody v. Board of Trustees of the University of Illinois*, found that the defendant's production of one privileged document was "clearly inadvertent," as there was "no indication that [the defendant] intended to waive the privilege or to produce the document," since only one document "slipped through" the cracks. 893 F.3d 397, 406 (7th Cir. 2018). Furthermore, the defendant "took prompt and reasonable steps" to prevent and rectify the disclosure by: (1) engaging in a privilege review process; (2) "immediately" trying to claw back the privileged document after discovering it had been disclosed; (3) instructing a witness not to discuss the document during a deposition; (4) asking opposing counsel

6

to destroy "all copies" of the document; and (5) filing a motion with the court to preclude the use in litigation. *Id.* at 406-07. Accordingly, the Seventh Circuit concluded that the "single slip indicates an unfortunate but inadvertent mistake rather than a casual, produce-first, review-later approach," and was therefore protected by Rule 502(b). *Id.* at 406 ("[T]he point of Rule 502(b) is to protect client[] confidences from their lawyers' human errors.").

Rule 502(d), on the other hand, allows a party to move for, or the court to enter *sua sponte*, an order allowing "the parties to conduct and respond to discovery expeditiously and without the need for exhaustive pre-production privilege reviews." *City of E. St. Louis v. Monsanto Corp.*, No. 21 CV 232, 2022 WL 3445803, at *2 (S.D. Ill. Aug. 17, 2022) (citing Fed. R. Evid. 502(d) Addendum to Advisory Committee Notes, subdivision (d)). The existence of such an order offers litigants "a mighty powerful tool" in clawing back privileged documents, even where a party did not undertake "a reasonable privilege review process." *DR Distribs., LLC v. 21 Century Smoking, Inc.*, 616 F. Supp. 3d 769, 785 (N.D. Ill. 2022) (citing *Brookfield Asset Mgmt. v. AIG Fin. Prods. Corp.*, No. 08 CV 2638, 2013 WL 142503, at *1 (S.D.N.Y. Jan. 7, 2013) (finding that Rule 502(d) order allowed defendant to claw back privileged materials "no matter . . . the circumstances" leading to their production)).

While Plaintiffs focus on Rule 502(b) in their motion, it is 502(d) that governs the current dispute. The plain terms of the Rule 502(d) Order entered on agreed motion in this case, (R. 52 at 2, 6, Ex. 2 at 5; R. 71), combined with the facts presented do not support a finding of waiver. To be sure, while Plaintiffs' motion does not

7

mention Rule 502(d), (see generally R. 474, Pls.' Mot.), the rule expressly allows the court to "order that the privilege or protection is not waived by disclosure connected with the litigation pending before" it, Fed. R. Evid. 502(d).

In their motion, Plaintiffs argue that Rule 502(b) should apply and that SCA has waived any Rule 502(b) protection over the Privileged Documents because it cannot claim inadvertence in allowing the production of the Fanning Documents or reasonableness in preventing their disclosure or rectifying the error. (R. 474, Pls.' Mot. at 8-16.) Plaintiffs contend that SCA had notice Dr. Fanning would disclose the same documents produced in the Criminal Actions again in this case, and it should have acted in a more timely manner to prevent her from doing so, such as by asking Dr. Fanning to turn over or destroy Privileged Documents in her possession or by immediately clawing back the Privileged Documents when Dr. Fanning produced them on July 17, 2024. (Id. at 11-12, Ex. 1 at 3-4, Ex. 2 at 3-4.) SCA instead waited until July 29, 2024—12 days after the production in this case and 124 days after being served with the Subpoena—to ask Plaintiffs to stop reviewing the Fanning Documents, (id. at 12, 15), and then it took no steps to bar Dr. Fanning "from further disseminating" the Privileged Documents, (id. at 14). Plaintiffs therefore contend that any privilege or work product protection was waived. (Id.)

SCA responds that there was "no indication that [it] intended to waive the privilege or to produce the [Privileged Documents]," as was the case in *Carmody*, and that it acted promptly to stop Plaintiffs from reviewing documents once it determined that some of the Fanning Documents were privileged. (R. 493, SCA's Resp. Ex. 1 at

8

3-5.) To justify its conduct, SCA represents that it had already "produced 16,542 documents from Dr. Fanning's custodial file across nine separate productions" in this case, and it "did not have the opportunity to review Dr. Fanning's production in advance" because she did not produce the documents until appearing for her deposition. (Id. at 8, Ex. 1 at 1-2, 14.) SCA further asserts that, as a third party, Dr. Fanning cannot waive SCA's privilege assertion over its documents even if in her possession. (Id. at 14 (citing *Kronenberg v. Baker & McKenzie LLP*, 747 F. Supp. 2d 983, 996 (N.D. Ill. 2010) ("[The defendant], not being the privilege holder, cannot waive [the plaintiff's] privilege by its unilateral action.").

If the Rule 502(b) inquiry were dispositive here, the circumstances would present a close call as to whether waiver is warranted. To be sure, the record shows that SCA had ample notice at the time Plaintiffs served the Subpoena that Dr. Fanning would produce Privileged Documents given the scope of the Subpoena and her previous production to the government in connection with the Criminal Actions. Under these circumstances, SCA acted neither preemptively nor immediately to safeguard against her production of Privileged Documents. Indeed, and as Plaintiffs point out, SCA took no action whatsoever when it received notice of the Subpoena. But Rule 502(d)—not 502(b)—governs the current dispute.

In contrast with 502(b), the Rule 502(d) Order entered in this case prevents waiver of the attorney-client privilege or work-product regardless of whether the disclosure was inadvertent or any efforts were taken to prevent or rectify the same. (See R. 71.) Further, while Plaintiffs try to read Rule 502(b)'s inadvertence and

9

reasonableness requirements into the Rule 502(d) Order after-the-fact, (R. 510, Pls.' Reply at 2), the plain language of that Order provides that "[t]he production of documents . . . subject to protection by the attorney-client and/or protected by the work-product, joint defense, or other similar doctrine, or by another legal privilege protecting information from discovery, *shall not constitute a waiver of any privilege or other protection*," (R. 71 at 4 (emphasis added)).

The Rule 502(d) Order continues by placing the onus on the party in receipt of a document from a "Producing Party,"[3] which the "Receiving Party has reason to believe is privileged," to "take reasonable steps to promptly notify the Producing Party of the production of that document so that the Producing Party may determine whether it wishes to have the documents returned or destroyed." (Id.) Additionally, the Order states that where "the Producing Party notifies the Receiving Party after discovery that privileged materials . . . have been produced, or if the Receiving Party has reason to believe material is privileged . . . the Identified Materials and all copies of those materials shall be returned to the Producing Party or destroyed and deleted." (Id.) Given this language, it is Plaintiffs—not SCA—who bear the burden of protecting privileged documents after they receive SCA documents believed to be privileged.

---

[3] The Rule 502(d) Order does not define "Producing Party." (See R. 71.) While the term "party" in certain contexts could be construed as pertaining to a named party in a lawsuit, here Plaintiffs offer no argument suggesting that the term "Producing Party" does not apply to Dr. Fanning because she is a third party. (See R. 474, Pls.' Mot.; R. 510, Pls.' Reply.) But even if they had, the parties do not contest that the documents produced are SCA documents. (See R. 474, Pls.' Mot. Ex. 1 at 2.) Thus, the fact that Dr. Fanning is a third party here is of no consequence because the Fanning Documents are SCA documents.

Nevertheless, some courts have limited Rule 502(d) orders where a "completely reckless disclosure" has occurred, as Plaintiffs seem to suggest is the case here. *DR Distribs., LLC*, 616 F. Supp. 3d at 785 (citing *Sure Fit Home Prods., LLC v. Maytex Mills Inc.*, No. 21 CV 2169, 2022 WL 1597000, at *1-3 (S.D.N.Y. May 20, 2022) ("[C]ourts have held that where parties execute [a Rule 502(d)] order, waiver is appropriate only if production of the privileged material was 'completely reckless.'") (quotations and citation omitted))). "This heightened standard for finding waiver 'fosters' the goal of 'encourag[ing] free communication between attorney and client . . . by assuring the client that its confidences will not be publicly disclosed because of a minor mistake by otherwise competent counsel.'" *Dorce v. City of New York*, No. 19 CV 2216, 2024 WL 139546, at *5 (S.D.N.Y. Jan. 12, 2024) (citation omitted). Under this standard, the party that allowed privileged documents to be disclosed "must have shown no regard for preserving the confidentiality of the privileged documents." *Id.* (citation omitted).

While SCA could have done more to avoid the current dispute after experiencing a similar issue in the Criminal Actions and its conduct may run afoul of Rule 502(b), it does not trigger a waiver under the Rule 502(d) Order to which the parties agreed. (See R. 52 at 2, 6, Ex. 2; R. 71.) Indeed, Plaintiffs say they promptly began reviewing the Fanning Documents on July 17, 2024. (R. 474, Pls.' Mot. Ex. 1 at 3.) But they did not notify SCA that the Fanning Documents included privileged information as required by the Rule 502(d) Order. (R. 493, SCA's Resp. at 9, Ex. 1 at 3.) And within 12 days of Dr. Fanning's disclosure, SCA asked Plaintiffs to stop

11

reviewing the Fanning Documents and worked promptly to reproduce nonprivileged documents to Plaintiffs over the next several weeks. (Id. at 9-10, Ex. 1 at 3-5.) By the time Plaintiffs filed the current motion, SCA had reproduced more than 85% of the Fanning Documents to Plaintiffs. (Id. at 10, Ex. 1 at 5.) SCA's actions were not completely reckless as to support a finding of waiver under Rule 502(d) and the Rule 502(d) Order.

Alternatively, Plaintiffs ask the court to order waiver based on SCA's purported failure to provide "a timely adequate privilege log." (R. 474, Pls.' Mot. at 17-19.) They say that without establishing the protected nature of the Privileged Documents, a finding of waiver is warranted. (Id.) But SCA explains that Dr. Fanning did not stamp the 106,371 documents she produced on July 17, 2024, with Bates numbers, and the privilege log provided to the DOJ in the SCA Criminal Action was "deleted in compliance with the protective order in that case." (R. 493, SCA's Resp. Ex. 1 at 3.) As a result, SCA was required to complete a new privilege review and corresponding log for documents identified as privileged.[4] (Id. Ex. 1 at 3-4.) It appears that SCA managed to provide Plaintiffs with a new privilege log—setting forth the requisite bases for each claim of privilege, immunity, or other protection—for nearly 10,000 documents within two weeks of the filing of Plaintiffs' current motion. SCA's production of its log for the Privileged Documents therefore was not untimely, and accordingly, waiver based on delay is not warranted.

---

[4] The fact that SCA had to conduct two separate privilege reviews for the same set of documents likely explains the inconsistency between the number of privileged documents withheld in the Criminal Actions (10,719 documents) versus the number withheld in part or in whole in this case (9,993 documents).

12

## Conclusion

For the foregoing reasons, Plaintiffs' motion for a finding of waiver is denied, and any Privileged Documents in Plaintiffs' possession should be handled in accordance with the terms of the Rule 502(d) Order.

**ENTER:**

**Young B. Kim
United States Magistrate Judge**

13