**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

IN RE OUTPATIENT MEDICAL CENTER
EMPLOYEE ANTITRUST LITIGATION

THIS DOCUMENT RELATES TO:

Master Docket No. 1:21-cv-00305-SRH-YBK

ALL ACTIONS

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'**
**"URGENT MOTION" TO MODIFY THE EXPERT DISCOVERY SCHEDULE**

I.      **INTRODUCTION**[1]

Plaintiffs' "urgent motion" is nothing more than Plaintiffs' newfound regret about the consequences of an agreed-upon and Court-ordered expert discovery schedule that has been in place for months. Six months ago, Plaintiffs prevailed in arguing to compress expert discovery into a single phase for both class certification and the merits, rather than the Defendants' preferred bifurcated approach of class expert discovery followed (if necessary) by merits expert discovery. Plaintiffs argued a single phase would be more efficient, even though it would result in the simultaneous disclosure of class and merits experts and a compressed schedule that would impose severe time constraints on the parties. Plaintiffs prevailed: Judge Harjani ordered a single phase of expert discovery and an expedited expert discovery schedule so Plaintiffs could quickly move this case to class certification, and ultimately to a decision on the merits. To keep this schedule on track, this Court ordered the parties to schedule expert depositions five months ago, reasoning that it is much easier to cancel depositions than to schedule them. ECF No. 549.[2]

Defendants have since worked tirelessly to comply with the expert discovery deadlines, including the deadlines to (1) make preliminary and updated disclosures of experts (ECF Nos. 549, 572, 574, 600), (2) schedule the depositions of Defendants' experts (ECF Nos. 549, 572), (3) complete three days of depositions of Plaintiffs' proposed experts (ECF Nos. 574, 590), (4) timely serve Defendants' expert reports (ECF No. 549), and (5) timely serve backup reliance materials for Defendants' expert reports, including doing so three days ahead of schedule for the first of

---

[1] Defendants acknowledge that the Court noted in its April 22, 2025, minute entry that "Defendants are to be prepared to respond to the motion" at the hearing scheduled for April 24, 2025. ECF No. 607. By the time Defendants received that minute entry, they had already prepared a draft of their opposition to Plaintiffs' motion and are submitting it in advance of the hearing in the event the Court has the opportunity to review beforehand. Defendants are prepared to outline their arguments at the hearing.

[2] Defendants use ECF page numbers at the top of the page when citing documents filed via ECF.

Defendants' experts scheduled to be deposed, Dr. Justin McCrary (ECF No. 605, Pls.' Mot. at 5-6.)

After Defendants served their four expert reports (the same four experts that Defendants disclosed on December 20, 2024, and one fewer than anticipated after Defendants withdrew Dr. Anupam Jena, (*see* ECF No. 604)), Plaintiffs expressed surprise and demanded relief from the schedule that Plaintiffs obtained and to which they had agreed. Plaintiffs filed their "urgent motion" just days before a deposition that has been scheduled since December. Plaintiffs did so even though Defendants have offered to accommodate Plaintiffs' request by providing later deposition dates for three of their four experts and to move various other deadlines, as reflected in Defendants' proposed compromise schedule (shown below). Defendants' fourth expert, Dr. Justin McCrary, is not available during the timeframe that Plaintiffs requested (between May 23 and June 6). Therefore, the parties cannot reschedule his deposition during that timeframe, and if the Parties are required to schedule his deposition for after June 6, that would require extending the expert discovery schedule such that both the July 31 expert discovery cutoff and the September 15 deadline to file class certification and *Daubert* motions would be in jeopardy. Plaintiffs were unwilling, however, to accept Defendants' compromise offer. Moreover, Plaintiffs have unreasonably demanded that all four expert depositions—scheduled since December—be canceled and rescheduled between May 23 and June 6 (in close proximity to the Memorial Day holiday), which requires coordinating on short notice the schedules of four experts and five sets of Defense counsel, some of whom already have immovable professional and personal commitments in that period. Accordingly, it is likely impossible to reschedule these depositions in the short window Plaintiffs' have demanded on such short notice.

Aware of the Court's desire to adhere strictly to the expert discovery cutoff entered by Judge Harjani, Plaintiffs seek to force their newly preferred schedule to fit within the expert discovery cutoff by depriving Defendants of their right under the existing Court-ordered schedule to file rebuttal reports. Putting aside the fundamental unfairness of springing this unilateral change upon Defendants *after* Defendants served their expert reports, Plaintiffs' request is especially problematic because Defendants' experts identified significant errors in the analyses that Plaintiffs' experts, Dr. Evan Starr and Dr. Barry Gerhart, performed. Anticipating that Dr. Starr and Dr. Gerhart will attempt to rectify those errors with new analyses in their forthcoming reports, Defendants' experts should have the opportunity (as ordered by the Court) to consider and respond to any changes or additions to those analyses. The Court should reject Plaintiffs' request.

## II.   FACTUAL BACKGROUND

Plaintiffs' motion rests on facts that have long been known to Plaintiffs and the Court. By way of background, the parties disagreed whether there should be a single phase of expert discovery (advocated by Plaintiffs) or separate phases for class certification and the merits discovery (advocated by Defendants). *See, e.g.*, ECF Nos. 181, 357, 357-1, 525, 532. Among other things, Defendants argued that a single phase of expert discovery would be unwieldy because Defendants would be submitting reports from multiple experts on a variety of topics—some related to class certification and some related to the merits. *See, e.g.*, ECF No. 191, 12/12/22 Hr'g Tr. at 29:22-24; ECF No. 525 at 9; ECF No. 545, 10/29/24 Hr'g Tr. at 9:5-18, 13:7-13.

Plaintiffs prevailed in preventing bifurcated discovery. On October 29, 2024, Judge Harjani ordered a single phase of expert discovery concerning both class certification and the merits. ECF No. 536. During the October 29, 2024, hearing, Plaintiffs expressed that they "would certainly welcome a fast schedule" for expert discovery and that they wished "to proceed to trial as quickly as we can." ECF No. 545, 10/29/24 Hr'g Tr. at 14:16-24, 16:24-25. Judge Harjani told

the parties that he intended to set an expert discovery schedule with "pretty aggressive dates." *Id.* at 26:13. Plaintiffs' counsel suggested that the parties should complete expert discovery in June 2025, *id.* at 29:25-30:5, and Judge Harjani ultimately ordered the parties to complete expert discovery by July 31, 2025, *id.* at 31:22-32:1.

The following week, on November 8, 2024, the parties jointly submitted an expert discovery schedule, ECF No. 548, which this Court ordered, ECF No. 549. Those deadlines remain in effect today. In the days leading up to the parties' joint scheduling submission, Plaintiffs proposed to Defendants a schedule that incorporated the concept of the parties serving reports based on who had the burden of proof. Declaration of Molly Moriarty Lane ("Lane Decl."), Exhibits ("Lane Ex.") 1, 2, & 3. Defendants rejected that proposal and instead proposed a structure calling for each side to submit two rounds of expert reports. Lane Ex. 4, at 11/6/24 1:46 PM email from A. Talbot. After the parties met and conferred, Lane Decl. ¶ 8, Plaintiffs "agree[d] to the structure of Defendants' proposal," Lane Ex. 4 at 11/8/24 4:37 PM email from J. Ross.

On November 9, 2024, this Court ordered the parties to disclose, by December 20, 2024, the identities and areas of expertise for their experts and the schedule for their experts' depositions, noting that "[i]t is easier to cancel a deposition than to schedule one." ECF No. 549. On December 20, 2024, Defendants disclosed all four experts for whom they submitted reports last week—Dr. Justin McCrary, Dr. John Johnson, Dr. Celeste Saravia, and Dr. Lauren Stiroh.[3] Defendants further disclosed that all four experts are economists. ECF No. 572. Also on December 20, the parties reported to the Court the agreed-upon deposition dates for all four of Defendants' experts, *id.*, which this Court then ordered. ECF No. 574. Plaintiffs complain that Defendants proposed only

---

[3] ECF No. 572. Pursuant to this Court's order, ECF No. 574, on March 21, 2025, Defendants disclosed a fifth potential expert, Dr. Anupam B. Jena, ECF No. 600. Defendants later withdrew Dr. Jena as an expert witness in this case. ECF No. 604.

a single date for Prof. McCrary, ECF No. 605 at 8, but as the parties' correspondence reveals, after Plaintiffs requested a different date, Defendants accommodated that request and the parties quickly reached agreement, ECF No. 605-2, Declaration of Dean M. Harvey ("Harvey Decl."), Exhibit ("Harvey Ex.") A. Plaintiffs' motion is the first time Plaintiffs have complained about the negotiations over deposition dates.

Following the December 20, 2024, status report, the parties commenced expert discovery. Plaintiffs served their expert reports and Defendants deposed Plaintiffs' experts. Defendants successfully moved to expand the deposition of Plaintiffs' expert Dr. Evan Starr to twelve hours. ECF Nos. 579, 587. Plaintiffs delayed Dr. Starr's deposition (which was originally scheduled for February 27, 2025) by threatening to object to this Court's order under Fed. R. Civ. P. 72. ECF No. 588. Having delayed Dr. Starr's deposition, Plaintiffs ultimately did not file an objection with Judge Harjani, and Defendants completed Dr. Starr's deposition on March 19 and 20, 2025. Defendants served their expert reports less than a month following Dr. Starr's deposition, on April 16, 2025, the agreed-upon, Court-ordered deadline, without the need for an extension.

On the evening of April 17, 2025, the day after Defendants submitted their expert reports, Plaintiffs requested to reschedule the depositions of Defendants' experts. Lane Decl. ¶ 10. The following day, April 18, 2025, Defendants offered to work with Plaintiffs to reschedule three of the four depositions to later in May (which would allow the remainder of the Court-ordered schedule to remain intact), but informed Plaintiffs that there were scheduling conflicts that prevented Defendants from rescheduling Dr. McCrary's deposition in May and therefore, that deposition must go forward on the originally scheduled date. ECF No. 605-3, Harvey Ex. B; *see also* Lane Decl., ¶ 13. In addition, even though the experts' reliance materials were not required to be served until this past Monday under the parties' stipulation (*see* Lane Ex. 5), Defendants

expedited that process and served Dr. McCrary's reliance materials last Friday, only to have Plaintiffs' counsel now criticize Defendants for serving ahead of schedule but after the close of business hours. *See* Lane Decl. ¶ 12. Also on Monday, April 21, 2025, Defendants offered new dates in May for the other three experts and offered to extend the subsequent deadlines by approximately two weeks each. ECF No. 605-1, Harvey Decl. ¶ 7. Plaintiffs rejected that proposal and filed this motion, seeking not only more time to depose Defendants' experts, but insisting that all four depositions be canceled and rescheduled on short notice between May 23 and June 6—a two-week period surrounding the Memorial Day holiday.

## III.   <u>ARGUMENT</u>

Plaintiffs fail to establish good cause to (i) extend the deadlines to depose Defendants' experts and (ii) modify the discovery schedule to deny Defendants the opportunity to submit expert reports that the parties agreed – and the Court ordered – Defendants could submit.

### A.    **Legal Standard**

Under Rule 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent." This Court's December 21, 2024, order setting the deposition dates for Defendants' experts emphasizes that "[p]arties may not change this schedule without good cause and leave of court." ECF No. 574. "Under the Federal Rules of Civil Procedure, it is the court's prerogative—indeed, its duty—to manage its caseload and to set and enforce discovery and other significant deadlines." *Hard Surface Sols., Inc. v. Sherwin-Williams Co.*, 271 F.R.D. 612, 617 (N.D. Ill. 2010). Plaintiffs fail to establish good cause for the relief they seek.

### B.    **Plaintiffs Lack Good Cause To Delay The Expert Depositions**

Plaintiffs' motion boils down to Plaintiffs' contention that they were surprised that Defendants served voluminous, complicated expert reports from four experts. There was no surprise.

***First***, Plaintiffs emphasize the length and complexity of Defendants' expert reports. ECF No. 605, Pls.' Mot. at 5-6. To be sure, Defendants' experts' reports are lengthy and complex, but that is standard for complex antitrust cases. No antitrust litigator should be surprised by the length or nature of Defendants' experts' reports. This is especially true for Plaintiffs' counsel, who hold themselves out as experts and "pioneers" in cases like this one. *See, e.g.*, ECF No. 39, Pls.' Mot. to Appoint Interim Co-Lead Counsel at 13 ("Lieff Cabraser pioneered 'no-poach' class actions"); ECF No. 590, 2/14/25 Hr'g Tr. at 6:9-22, 19:4-9 (Plaintiffs' counsel "created the practice area.").

***Second***, Plaintiffs complain about the number of econometric reports that Defendants submitted. ECF No. 605, Pls.' Mot. at 7. But Plaintiffs have known since December—when they agreed to the current schedule—who Defendants' experts would be and that all four are economists. ECF No. 572. All four experts are experienced testifiers with extensive online presences and lengthy track records.[4] At least two—Dr. Stiroh and Dr. McCrary—have previously submitted expert reports and testified in cases that Plaintiffs' counsel litigated.[5]

Plaintiffs cite several cases for the proposition that "[i]n antitrust class cases, including in no-poach cases like this one, each side typically retains one econometrics expert, as Plaintiffs did. To put forth four econometricians is an unforeseeable and, frankly, bizarre departure from the

---

[4] https://www.cornerstone.com/experts/justin-mccrary/; https://www.edgewortheconomics.com/people-dr-john-h-johnson; https://www.cornerstone.com/professionals/celeste-saravia/; https://www.nera.com/experts/s/lauren-stiroh.html?lang=en.

[5] *See In re: High-Tech Emp. Antitrust Lit.*, No. 5:11-cv-02509 (N.D. Cal.), ECF No. 716, Declaration of Christina J. Brown (attaching excerpts from deposition transcript of Dr. Stiroh (at ECF No. 716-4)); *Deslandes v. McDonald's USA, LLC, et al.*, No. 1:17-cv-04857 (N.D. Ill.), ECF No. 330, Declaration of Anne B. Shaver (of Lieff Cabraser Heimann & Bernstein, LLP, counsel for Plaintiffs in this case, attaching excerpts from the deposition transcript of Prof. McCrary (at ECF Nos. 330-5)).

A third Defendants' expert, Dr. Johnson, submitted an expert report and testified in another case that Plaintiffs' counsel litigated, albeit after Plaintiffs' counsel withdrew from the case. *Borozny et al. v. RTX Corporation, Pratt & Whitney Division, et al*, No. 3:21-cv-01657 (D. Conn.), ECF No. 970, Resp. Brief (attaching expert report of Dr. Johnson (at 970-3)).

norm." ECF No. 605, Pls.' Mot. at 7 (emphasis removed). Plaintiffs' pejoratives are misplaced. All four cases Plaintiffs cite involved bifurcated phases of expert discovery for class certification and merits. *In re Turkey Antitrust Litig.*, No. 1:19-cv-08318 (N.D. Ill.), ECF Nos. 571, 752, 1156; *In re High-Tech Employee Antitrust Litig.*, No. 5:11-cv-02509 (N.D. Cal.), ECF Nos. 120, 183, 388, 421, 547; *Seaman v. Duke Univ.*, No. 1:15-cv-00462-CCE-JLW (M.D.N.C.), ECF Nos. 67, 214; *Deslandes v. McDonald's USA, LLC*, No. 1:17-cv-04857 (N.D. Ill.), ECF Nos. 25, 263, 518, 519.

Here, by contrast, Plaintiffs insisted that the parties complete all expert discovery at once. If there had been bifurcated discovery, then likely Defendants would have served a single expert report. But the die was cast months ago when Plaintiffs prevailed in arguing for non-bifurcated expert discovery. At that time, Defendants made clear that such a schedule would require Defendants to submit simultaneously multiple reports from multiple experts regarding multiple topics. *See, e.g.*, ECF No. 191, 12/12/22 Hr'g Tr. at 29:22-24; ECF No. 525 at 9; ECF No. 545, 10/29/24 Hr'g Tr. at 9:5-18, 13:7-13.[6] Nothing has changed since December when Defendants disclosed their experts and Plaintiffs said nothing. In fact, the only new information Plaintiffs learned last week was that they would be receiving one fewer expert report than they expected. ECF No. 605, Pls.' Mot. at 6-7.

Having successfully obtained the expert discovery schedule they desired, Plaintiffs cannot now complain about the number of expert reports they received.

---

[6] One reason Defendants submitted four expert reports is that DaVita and USPI each submitted separate merits expert reports, from Dr. Stiroh and Dr. Saravia, respectively. They did so because, among other things, even though Plaintiffs allege an "overarching conspiracy" among all Defendants (ECF No. 554, ¶ 105), there is no evidence whatsoever of any overarching conspiracy, nor of any conspiracy between DaVita and USPI. Plaintiffs' experts analyze separate, bilateral conspiracies between DaVita and SCA, on the one hand, and between SCA and USPI, on the other. Dr. Stiroh and Dr. Saravia therefore analyze issues specific to DaVita and USPI, respectively, and specific to the alleged agreements to which they were parties.

***Third***, Plaintiffs complain about the tight deadlines under the expert discovery schedule. ECF No. 605, Pls.' Mot. at 4-7. But, Plaintiffs agreed to that schedule in November. Last October, Plaintiffs represented to Judge Harjani that they preferred a speedy expert discovery schedule because they were eager to move this case to trial. ECF No. 545, 10/29/24 Hr'g Tr. at 14:16-24, 16:24-25. Judge Harjani obliged Plaintiffs. *Id.* at 31:22-32:1. On November 8, 2024, the parties agreed upon, and jointly presented, a detailed expert discovery schedule. ECF Nos. 548, 549. On December 20, 2024, the parties then agreed upon, and jointly presented, an expert deposition schedule. ECF Nos. 572, 574. If Plaintiffs believed the agreed upon deadlines were too tight, then they should not have agreed to those deadlines.

***Fourth***, notwithstanding all of these issues, Defendants demonstrated flexibility and offered to reschedule three of their four experts' depositions and to extend the subsequent deadlines by approximately two weeks. ECF No. 605, Pls.' Mot. at 9-10. A chart reflecting the original schedule and Defendants' proposed compromise is included here:

| Event | Original Schedule | Defendants' Proposal |
|---|---|---|
| Defendants' deadline to serve their Rule 26(a)(2) reports | 4/16/25 (completed) | 4/16/25 (completed) |
| McCrary Deposition | 4/29/25 | 4/29/25 |
| Stiroh Deposition | 5/2/25 | 5/29/25 |
| Johnson Deposition | 5/7/25 | 5/22/25 |
| Saravia Deposition | 5/9/25 | 5/13/25 |
| Plaintiffs' deadline to depose Defendants' experts | 5/9/25 | 5/30/25 |
| Plaintiffs' deadline to serve rebuttal expert reports—limited to responding to Defendants' expert opinions | 5/30/25 | 6/13/25 |
| Defendants' deadline to depose Plaintiffs' rebuttal experts | 6/30/25 | 7/18/25 |
| Defendants' deadline to serve rebuttal expert reports—limited to responding to Plaintiffs' rebuttal opinions | 7/11/25 | 7/31/25 |

| | | |
|---|---|---|
| Plaintiffs' deadline to depose Defendants' rebuttal experts | 7/31/25 | 8/20/25[7] |
| Plaintiffs' deadline to move for class certification and all parties' deadline to file *Daubert* motions | 9/15/25 | 9/15/25 (unchanged) |

Dissatisfied with Defendants' attempt at a reasonable compromise, Plaintiffs invent the notion that Dr. McCrary "is Defendants' primary and most important econometric expert." ECF No. 605, Pls.' Mot. at 6. He is not, and Defendants never told Plaintiffs he is. Lane Decl., ¶ 12. All of Defendants' experts are important. Still, Plaintiffs accuse Defendants of "engineer[ing] [a] prejudicial trap" when scheduling Dr. McCrary's deposition. *Id.* at 7. The "prejudicial trap" is entirely of Plaintiffs' invention.

Plaintiffs represent that they "have been asking for a later date for Dr. McCrary's deposition since December 2024, and Defendants have refused." ECF 605, Pl. Mot., at 10. That is false. Back in December, when the parties exchanged deposition dates, Defendants initially proposed April 22, 2025, for Dr. McCrary's deposition. ECF No. 605-2, Harvey Ex. A. Plaintiffs then asked if April 29 was available, and Defendants made that date work. *Id.* In other words, Dr. McCrary's deposition is scheduled for the date Plaintiffs requested and Plaintiffs never asked to change it until last week.

No date for Dr. McCrary's deposition was going to be perfect. Because Plaintiffs' counsel did not wish to take a deposition the first week after receiving Defendants' expert reports (*see* Harvey Ex. A), the parties had to schedule four expert depositions within two weeks: April 28 through May 2 and May 5 through May 9. The parties scheduled two depositions during the first week and two during the second. ECF No. 572.

---

[7] While Defendants hoped to propose a reasonable compromise that would avoid extending the close of expert discovery, which would require a separate motion to Judge Harjani (*see* ECF No. 536), Defendants have been unable to do so in light of scheduling conflicts and the need to still allow all parties reasonable timeframes for their respective expert deadlines.

The discussions were neither hostile nor difficult. Defendants came away with the belief that the parties worked together cooperatively to schedule depositions. Months later, Plaintiffs accuse Defendants of gamesmanship. But the only gamesmanship is from Plaintiffs. They waited until Defendants timely submitted all of their expert reports.[8] Then, they approached Defendants, asking to extend depositions without any right to do so. Still, Defendants made the best offer they could under the circumstances. Plaintiffs rejected that reasonable offer and filed their motion.

\*     \*     \*

Plaintiffs are not entitled to any extension. They agreed to the schedule and there has been no change in circumstances. Nevertheless, Defendants remain willing to accommodate Plaintiffs' request to push back the depositions of Dr. Saravia, Dr. Johnson, and Dr. Stiroh, to May 13, May 22, and May 29, respectively (so long as those dates still work for the experts). Unfortunately, there are insurmountable scheduling conflicts for Dr. McCrary's deposition before June 11, primarily due to Dr. McCrary's extremely limited availability and immovable conflicts for some Defendants' lead attorneys. Therefore, Defendants cannot agree to push his deposition back and keep the current expert discovery and class certification deadlines in place. Still, Defendants worked with Dr. McCrary's team to expedite the production of his backup materials three days earlier than required. ECF No. 605-3, Harvey Ex. B.

### C.     Plaintiffs Lack Good Cause To Eliminate A Bargained-For And Court-Ordered Opportunity For Defendants To Submit Additional Expert Reports

Although Plaintiffs' motion is focused primarily on extending deadlines, Plaintiffs also request a substantive modification of the schedule that would deprive Defendants of bargained-for,

---

[8] Plaintiffs represent that "Defendants agreed that it was impossible for Plaintiffs to know what extension would be appropriate until Defendants served their expert reports" and Plaintiffs and Defendants agreed that Plaintiffs would circle back with Defendants after reviewing Defendants' expert reports." ECF No. 605, Pl. Mot., at 5. That is misleading. Plaintiffs did indicate they might seek an extension, but Defendants never agreed that any extension would be appropriate. Lane Decl., ¶ 9.

court-ordered rebuttal reports. ECF No. 605, Pls.' Mot. at 8-9. The Court should deny Plaintiffs' belated and baseless request to modify the schedule.

Plaintiffs argue that Defendants were only entitled to a second round of expert reports if Defendants submitted affirmative reports in support of affirmative defenses. *Id.* at 8. Plaintiffs contend that, because Defendants did not do so, Defendants must forfeit the last round of expert reports. Plaintiffs are incorrect.

As noted above, Plaintiffs did propose to Defendants a schedule that could have accomplished what Plaintiffs describe. Plaintiffs' proposal incorporated the concept of the parties serving reports based on who had the burden of proof. Lane Exs. 1, 2, & 3. Defendants rejected that proposal. Instead, Defendants counter-proposed, and Plaintiffs accepted, the current structure, which permits each side to submit two rounds of expert reports. Lane Ex. 4 at 11/8/24 4:37 PM email from J. Ross. The Court ordered the parties' joint proposal. ECF No. 549. Nowhere does that joint proposal or the Court's order say anything about a party's burden of proof. Tellingly, Plaintiffs have no authority to cite in support of their legal argument that the second round of Defendants' expert reports "would have only applied if Defendants' [sic] served affirmative expert testimony in support of their affirmative defense." ECF No. 605, Pls.' Mot. at 8.

Plaintiffs point out that the parties' joint status report, ECF No. 548, references "opening and/or opposing" expert reports, "opposing and/or rebuttal" expert reports, and "rebuttal" expert reports. ECF No. 605, Pls.' Mot. at 3. That is true. But Plaintiffs do not explain why that phrasing leads to the conclusion that Defendants forfeit the right to submit the second round of expert reports. If that is what the parties intended, they would have spelled it out.[9] Ultimately, this Court's

---

[9] Other courts have rejected similar complaints by plaintiffs who agreed to schedules permitting defendants to serve two rounds of expert reports. *See, e.g.*, *Rothenberg v. Standard Ins. Co.*, 2012 WL 2126846, at *2 (D. Colo. June 12, 2012) ("Plaintiff's counsel contributed to, reviewed, and approved this staggered schedule outlined in the Scheduling Order—including the deadline for the parties to designate

November 9, 2024, order made clear that both Plaintiffs and Defendants would have the opportunity to serve rebuttal reports and specifically outlined the scope of those reports: Plaintiffs could serve rebuttal reports "limited to responding to Defendants' expert opinions" and Defendants could serve rebuttal reports "limited to responding to Plaintiffs' rebuttal opinions." ECF No. 549. Nothing in this Court's order was premised on whether Defendants' initial reports contained opinions on which defendants bear the burden of proof.

This issue will become critical and tangible soon. Defendants' experts outlined numerous flaws in the analyses proffered by Plaintiffs' experts, Dr. Starr and Dr. Gerhart. For example, Defendants' experts identified significant errors in the data analysis that Dr. Evan Starr performed (errors to which Dr. Starr admitted in his deposition), including that Dr. Starr failed to exclude many non-class members from his proposed class (including human resources personnel, legal personnel, and even Defendant Hayek himself). As another example, Defendants' experts also demonstrated the fundamental unreliability of Plaintiffs' experts' models and theories regarding class-wide impact and damages. To the extent Plaintiffs' experts attempt to rectify those errors or bolster their opinions in forthcoming reports (whether by new calculations, new models, or new theories), Defendants' experts must have the opportunity to consider and respond to Plaintiffs' experts' analyses. The schedule already includes an opportunity for Defendants' experts to do this. Plaintiffs offer no basis to deny Defendants' experts that opportunity.

---

rebuttal experts. . . . Although Plaintiff asserts that this schedule afforded Defendant a windfall—insofar as the staggered schedule may have permitted Defendant to make affirmative expert disclosures "responsive" to Plaintiff's prior expert disclosures, as well as Rule 26(a)(2)(D)(ii) rebuttal expert disclosures—Plaintiff's affirmative approval of this schedule undercuts her claims that the Scheduling Order's language was faulty and that she will be prejudiced if it is followed. . . . Plaintiff has not pointed to, nor can the court otherwise locate, any authority suggesting that implementing a staggered affirmative expert disclosure schedule precludes a defendant from making rebuttal expert disclosures under Rule 26(a)(2)(D)(ii).").

## IV. CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion.

Dated: April 23, 2025                              Respectfully submitted,

*/s/ Molly Moriarty Lane*

Kenneth M. Kliebard
Staci M. Holthus
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive
Chicago, IL 60606
Tel: (312) 324-1000
kenneth.kliebard@morganlewis.com
staci.holthus@morganlewis.com

Molly Moriarty Lane (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
One Market
Spear Street Tower
San Francisco, CA 94105-1596
Tel: (415) 442-1000
molly.lane@morganlewis.com

Nathan T. Shapiro (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178-0060
Tel.: (212) 309-6000
nathan.shapiro@morganlewis.com

*Attorneys for Defendant DaVita Inc.*

*/s/ Amy B. Manning*

Amy B. Manning
Angelo M. Russo
Christina M. Egan
Sarah A. Zielinski
Christopher J. Karamanos
MCGUIREWOODS LLP
77 West Wacker Drive
Suite 4100

-14-

Chicago, IL 60601-1818
(312) 849-8100
amanning@mcguirewoods.com
arusso@mcguirewoods.com
cegan@mcguirewoods.com
szielinski@mcguirewoods.com
ckaramanos@mcguirewoods.com

Joshua D. Wade (*pro hac vice*)
Andrew E. Talbot (*pro hac vice*)
MCGUIREWOODS LLP
800 E. Canal St.
Richmond, VA 23219
(804) 775-4388
jwade@mcguirewoods.com
atalbot@mcguirewoods.com

*Attorneys for Defendants Surgical Care Affiliates,*
*LLC and SCAI Holdings, LLC*

*/s/ Veronica Moyé*

Veronica Moyé (*pro hac vice*)
KING & SPALDING LLP
1185 Avenue of the Americas
34th Floor
New York, NY 10036
Tel: (212) 556-2100
vmoye@kslaw.com

Lazar P. Raynal (Bar. No. 6199215)
KING & SPALDING LLP
110 N. Wacker Drive
Suite 3800
Chicago, IL 60606
Tel: (312) 764-6947
lraynal@kslaw.com

Julia Barrett Bates (*pro hac vice*)
KING & SPALDING LLP
500 West 2nd Street
Suite 1800
Austin, Texas 78701

Tel: (512) 457-2053
jbarrett@kslaw.com

Emily Newton (*pro hac vice*)
KING & SPALDING LLP
1180 Peachtree Street, NE
Suite 1600
Atlanta, Georgia 30309
Tel: (404) 572-2745
enewton@kslaw.com

Julianne Duran (*pro hac vice*)
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 900
Washington, D.C. 20006
Tel: (202) 626-9625
jduran@kslaw.com

*Attorneys for United Surgical Partners Holdings,
Inc., United Surgical Partners International, Inc.,
and Tenet Healthcare Corporation*

*/s/ Jeffrey C. Bank*

Jeffrey C. Bank (*pro hac vice*)
Brian Joseph Smith
Jordanne M. Steiner (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI,
P.C.
1700 K Street NW, Fifth Floor
Washington, DC 20006
(212) 497-7761
Email: jbank@wsgr.com
Email: brian.smith@wsgr.com
Email: jsteiner@wsgr.com

Karen Sharp (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI,
P.C.
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94104

-16-

(415) 947-2000
Email: ksharp@wsgr.com

*Attorneys for Defendant Andrew Hayek*

*/s/ Katharine M. O'Connor*

Daniel Campbell
Jeffrey E. Stone
Katharine M. O'Connor
MCDERMOTT, WILL & EMERY LLP
444 West Lake Street, Suite 400
Chicago, IL 60605
(312) 372-2000
dcampbell@mwe.com
jstone@mwe.com
koconnor@mwe.com

*Attorneys for Defendant Kent Thiry*

## CERTIFICATE OF SERVICE

I, Kenneth M. Kliebard, an attorney, certify that a copy of the foregoing document was electronically filed on April 23, 2025, and will be served electronically via the Court's ECF Notice system upon the registered parties of record.

> */s/ Kenneth M. Kliebard*
> Kenneth M. Kliebard
>
> *Counsel for Defendant DaVita Inc.*