UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE OUTPATIENT MEDICAL CENTER EMPLOYEE ANTITRUST LITIGATION, | ) ) ) ) ) ) ) ) ) No. 21 CV 305<br><br>Magistrate Judge Young B. Kim<br><br>October 28, 2025 |

**MEMORANDUM OPINION and ORDER**

Plaintiffs Scott Keech and Allen Spradling, former senior employees of Defendants Surgical Care Affiliates, LLC and SCAI Holdings, LLC (together, "SCA"), bring this antitrust action for violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. They allege that SCA, along with Defendants United Surgical Partners International, Inc., United Surgical Partners Holding Company, Inc., DaVita Inc., and other ambulatory surgery centers and outpatient medical centers, conspired to reduce and limit the compensation and mobility of their senior-level employees. The parties completed fact and expert discovery. Defendants now claim that "rebuttal" opinions from Plaintiffs' experts, Drs. Barry Gerhart and Evan Starr, offer new opinions that should have been disclosed in their original January 2025 reports, rather than in the rebuttal reports. (R. 549.) Defendants thus seek to strike portions of those rebuttal opinions. This order addresses Defendants' request to strike portions of Dr. Gerhart's rebuttal report. For the following reasons, the motion is granted in part and denied in part:

**Background**

In January 2025, Dr. Gerhart served his expert report on Defendants. (R. 627-2, Wade Decl. ¶¶ 4, 6.) Then in April 2025, Defendants' experts—Drs. Celeste Saravia, John H. Johnson, IV, Justin McCrary, and Lauren J. Stiroh—served their responsive expert reports on Plaintiffs. (R. 627-1, Defs.' Mem. at 4.) Defendants' experts criticize many of Dr. Gerhart's opinions for failure to: identify any evidence establishing that information sharing among Defendants suppressed or facilitated a compensation suppression agreement; offer quantitative evidence or analysis of Defendants' market power or data supporting the existence of rigid wage structures that depressed compensation across all senior employees, leading to "cascading effects" on non-senior employees; and consider the relevant labor market.

Dr. Gerhart prepared and served his rebuttal expert report in June 2025, purportedly responding to Defendant experts' criticisms. That report spans 244 pages and includes 583 paragraphs. (R. 638-8.) Defendants seek to strike Paragraph Nos. 17, 74, 202-08, 234-36, 240, 241, 260, 270, 281, 305, 306, 321, 332, 425-28, and 573. They group these paragraphs into three distinct topics: (1) wage structure (¶¶ 425-28); (2) market power (¶¶ 17, 206, 234-36, 240-41, 260, 270, 281, 305-06, 321, 332, and 573); and (3) turnover rate (¶¶ 74, 202-08). Defendants argue these paragraphs should be stricken because they include new opinions that do not rebut their experts' criticisms of Dr. Gerhart's opinions and, as such, should have been disclosed in January 2025.

2

## Analysis

The court agrees with Defendants that not all of Dr. Gerhart's June 2025 opinions constitute proper rebuttal. A rebuttal expert opinion is defined as an opinion intended "to contradict, impeach, or defuse the impact" of the opposing expert's opinions. *Peals v. Terre Haute Police Dep't*, 535 F.3d 621, 630 (7th Cir. 2008) (citation omitted). Under Federal Rule of Civil Procedure 26(a)(2)(D)(ii), rebuttal opinions are limited to addressing the subject matter identified in the opposing expert's report. *See Kenall Mfg. Co. v. Cooper Lighting, LLC*, 723 F. Supp. 3d 640, 658 (N.D. Ill. 2024) (holding that "rebuttal report is proper 'so long as it relates to the same subject matter' as the report it critiques" (citation omitted)). If a rebuttal opinion does not directly address or critique the opposing expert's report, it may be deemed improper and is subject to exclusion. *See Chi. Joe's Tea Room, LLC v. Vill. of Broadview*, 94 F.4th 588, 602 (2024) ("Testimony offered only as additional support to an argument made in a case in chief, if not offered to contradict, impeach or defuse the impact of the evidence offered by an adverse party, is improper on rebuttal." (quoting *Peals*, 535 F.3d at 630)). Courts have broad discretion to strike rebuttal opinions that exceed the scope of fair rebuttal or fail to meet the requirements of Rules 26 and 37. The court considers the three topic groups Defendants identify as problematic in Dr. Gerhart's rebuttal report in turn under these standards.

A. **Wage Structure**

Defendants' motion to strike Paragraph Nos. 425 through 428 is denied. In Section VII of his original expert report, Dr. Gerhart opined that Defendants used systematized compensation structures to maintain "external equity" by "paying similar employees similarly to employees in other companies doing similar work and making similar performance contributions" and "internal equity" by "paying employees within the same company similarly to other employees within the same company doing similar work and making similar performance contributions." (R. 638-2 at 107-08.) In rendering this opinion, Dr. Gerhart relied heavily on Defendants' employment of "compensation professionals," his knowledge of the standard training compensation professionals receive and the professionals' objectives, the guidelines each Defendant had in place in terms of compensation, and how each Defendant applied those directives. He did not include any quantitative analysis to support his opinion. This alleged systemic structure is the basis for his follow-on opinion that suppressed pay among the senior employees had a cascading impact on all other class members. Defendants' experts challenge various aspects of Dr. Gerhart's wage-structure opinions and opine that Defendants did not have a rigid compensation structure.

Dr. Gerhart continues to maintain in Paragraph Nos. 425 through 428 of his rebuttal report that Defendants employed a structured pay system and uses examples and data from Defendants' experts' own reports and performs a quantitative analysis to generate a chart (Figure 1) purporting to contradict their

4

opinions. (R. 638-8 at 179.) And he uses the chart to explain graphically why Defendants' experts' opinions are not reliable. This court finds this to be proper. Whether a rebuttal report or portions thereof should be stricken as improper cannot depend on the absence of the same information in the original report. To be sure, much of the information in rebuttal opinions may be "new" in the sense that it responds to an opposing expert's opinions. It is not required that initial expert opinions anticipate and respond to every potential counter-opinion. Nor must an expert rebutting the opposing expert's opinions be the same expert who rendered the original opinions.

In short, there is no "sandbagging" here. A primary function of discovery is to learn the information each side will present as evidence at trial. Through expert discovery, Defendants now know what Plaintiffs' experts will say during Plaintiffs' case-in-chief. Defendants now know also what Plaintiffs' experts will say in their rebuttal case if Defendants' experts offer certain opinions in Defendants' case-in-chief. Defendants have fair notice and can prepare to effectively cross-examine Dr. Gerhart on his chart if he uses it during the rebuttal phase of trial.

**B.  Market Power**

Defendants' motion to strike Paragraph Nos. 17, 206, 234-36, 240-41, 260, 270, 281, 305-06, 321, 332, and 573 of Dr. Gerhart's rebuttal expert report is denied. Plaintiffs do not dispute that Dr. Gerhart did not originally render any opinions on Defendants' market power but argue that Dr. Gerhart's market-power opinions directly refute Defendants' experts' opinions that Defendants lacked the requisite

5

market power to influence the level of compensation in the relevant industry. For example, Dr. Gerhart compares Defendants' overall figures for employment and hiring in the relevant industry to the significantly lower frequency at which each Defendant is hiring employees away from the other Defendants.

In these challenged paragraphs, the court finds that Dr. Gerhart is merely attempting to refute opposing experts' opinions that Defendants did indeed enjoy sufficient market power to influence compensation levels. In doing so, Dr. Gerhart uses opposing experts' cited information to show why they are mistaken and identifies the specific opinions he seeks to contradict. While this court does not and cannot assess the weight of Dr. Gerhart's opinions, these paragraphs include proper rebuttal opinions.

**C.   Turnover Rate**

Finally, Defendants seek to strike Paragraph Nos. 74 and 202 through 208 in Dr. Gerhart's rebuttal report, in which Dr. Gerhart opines that one would expect a higher turnover rate among Defendants' employees if they did not engage in a no-poach agreement among themselves. The court agrees with Defendants that this is a new opinion that does not appear to contradict anything that Defendants' experts have offered. In this court's view, Dr. Gerhart references data Defendants' experts cite, but only to spin a new opinion. For these reasons, the motion is granted as to these paragraphs.

## Conclusion

For the foregoing reasons, Defendants' motion is granted in part and denied in part as it pertains to Dr. Gerhart's rebuttal opinions identified herein. This court strikes Paragraph Nos. 74 and 202 through 208 of Dr. Gerhart's rebuttal report but declines to strike any others.

                **ENTER:**

                _____
                **Young B. Kim**
                **United States Magistrate Judge**